# EXHIBIT 13

```
DKT NO:  X06-UWY-CV186046436-S      :  COMPLEX LITIGATION DKT

ERICA LAFFERTY
                                    :  JUDICIAL DISTRICT WATERBURY
v.
                                    :  AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES                    :  OCTOBER 20, 2021

DKT NO:  X06-UWY-CV186046437-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES


DKT NO:  X06-UWY-CV186046438-S


WILLIAM SHERLACH

v.

ALEX EMRIC JONES
```

HEARING

BEFORE THE HONORABLE BARBARA N. BELLIS, JUDGE

A P P E A R A N C E S :


    Representing the Plaintiff(s):

        ATTORNEY CHRISTOPHER MATTEI
        ATTORNEY ALINOR STERLING
        ATTORNEY MATTHEW BLUMENTHAL
        ATTORNEY SARAH STEINFELD


    Representing the Defendant(s):

        ATTORNEY JAY MARSHALL WOLMAN for defendant Alex Jones
        ATTORNEY WESLEY HORTON for Attorney Wolman
        ATTORNEY CAMERON ATKINSON for the LLC defendant's
        ATTORNEY MARIO CERAME for defendant Genesis Comm.

                        Recorded By:
                        Darlene Orsatti

                        Transcribed By:
                        Darlene Orsatti
                        Court Recording Monitor
                        400 Grand Street
                        Waterbury, CT 06702

1      THE COURT:  All right.  Good morning.  Do you

2  need a minute Attorney Wolman?

3      ATTY. WOLMAN:  No, your Honor.  Trying to just

4  change the name on the system and that doesn't seem

5  to be working, so….

6      THE COURT:  I see your name.

7      ATTY. WOLMAN:  I wanted to add Attorney Horton's

8  name.

9      ATTY. HORTON:  Yes.

10      THE COURT:  Okay.

11      ATTY. HORTON:  Good morning, your Honor.  My

12  name is Wesley Horton and I'm representing Attorney

13  Wolman on the order to show cause.

14      THE COURT:  Very well.  Is there an appearance

15  in the file?

16      ATTY. HORTON:  I filed - I fax/filed an

17  appearance on late - on Monday, but I haven't seen it

18  on the computer, so.  But we have filed it and I

19  believe the other counsel has it.  Also, your Honor,

20  I would appreciate it -

21      THE COURT:  So -

22      ATTY. HORTON:  I'm sorry.

23      THE COURT:  Why don't we just hold off?

24  Attorney Horton, I will follow through with Attorney

25  Ferraro to see if he can locate your filings.  All

26  right.  So -

27      ATTY. HORTON:  I have them in front of me.  I

1  actually did file them.  I also have a problem, your

2  Honor.  I'm only on the order to show cause and I

3  have another Court hearing at 11:30.  So, I would

4  appreciate it if I could be heard early.

5  THE COURT:  Yeah.  I don't think that's going to

6  happen, so why don't we see how we proceed.  Maybe

7  we'll be very efficient and get to that point.

8  Okay.  So this is Judge Bellis for the record

9  and we are in the case, the three consolidated cases

10  of Lafferty versus Jones, Docket No. Waterbury

11  Complex Litigation, 186046436.  I'm going to just ask

12  counsel of record to identify themselves.  I don't

13  have to have Attorney Horton re-identify himself,

14  since we already got him on the record.  And once I

15  hear just from counsel of record, I don't need anyone

16  else to identify themselves.  Then I will address the

17  media request that was made in the case.

18  So starting with plaintiff's counsel.

19  ATTY. MATTEI:  Good morning, your Honor.  This

20  is Chris Mattei on behalf of the plaintiff's.  I'm

21  joined today by my colleagues Alinor Sterling, Sarah

22  Steinfeld and Matthew Blumenthal.

23  THE COURT:  All right.  And for the defendant's.

24  ATTY. WOLMAN:  Good morning, your Honor.  This

25  is Jay Wolman of Randazza Legal Group representing

26  Alex Jones, Infowars, LLC, Infowars Help, LLC, Free

27  Speech Systems, LLC and Prison Planet T.V., LLC.  I'm

1   joined by my colleague Attorney Cameron Atkinson from

2   Pattis & Smith, who represents the four LLC

3   defendant's that I referenced.

4        THE COURT:  All righty.

5        ATTY. CERAME:  Good morning, your Honor.  Mario

6   Cerame for Genesis Communications from Brignole, Bush

7   and Lewis.

8        THE COURT:  Okay.  All right.  So I'm going to

9   ask — and good morning everyone.  I'm going to ask

10  everyone to make sure your devices are muted.  I see

11  that some of you are not muted.  I'm going to try to

12  do the same so that it's a little easier for our

13  Court Reporter to take down everything without any

14  feedback.  And I'm sure that at some point I'll

15  forget to unmute or counsel will forget to unmute,

16  and I'm sure we'll deal with that.

17       So yesterday there was a request from

18  Connecticut Public Radio to audiotape the

19  proceedings.  I know that Mr. Ferraro reached out to

20  counsel of record to see if there was any objection.

21  I think we heard from everyone except for the —

22  except from Attorney Wolman.  So did you have an

23  objection, sir?.

24       ATTY. WOLMAN:  No objection, your Honor.

25       THE COURT:  All right.  So at this point then

26  having no objection, the audiotape proceedings can

27  now begin at this point if they still wish to do so.

1       All right.  So what I thought I would do, is I

2    have an agenda of how I planned to proceed.  We'll

3    see how far we get today and then I have some items

4    that will be on the next agenda.  So I'm going to go

5    through all that first, and just sort of get everyone

6    up to speed as to how we're going to proceed.  And

7    then I'm going to do my old standby where I ask

8    counsel if there is anything that they have that's

9    ready to be adjudicated today or needs a briefing

10    schedule, so that we can do the same thing that we do

11    every time.

12       So I'm going to start with the plaintiff's

13    motion to seal and then we're going to move to the

14    defendant's motion to dismiss with respect to

15    Lafferty and the plaintiff's motion to substitute.

16    I'm then planning on hearing arguments. I'm going to

17    leave out the claim of manufacturer to trial balances

18    in the Flores issue, so that a surreply can be filed.

19    So that will be dealt with at the next hearing.  But

20    I will hear argument on the discovery issues, as it

21    relates to the Google analytics.  Discovery to social

22    media discovery.  The Clinton deposition issue, and

23    the defendant's discovery to date.

24       And then I was planning on addressing the show

25    cause hearing for Attorney Wolman.  So the next time

26    we have our status conference, which I believe is

27    November 17th, in addition to dealing with the

```
1        plaintiff's motion regarding the claim of a
2        manufactured trial balances, I'm going to direct Mr.
3        Ferraro to docket the October 12 motion to seal that
4        was filed at entry number 507.  Just give me one
5        moment.  I don't think it's 507.  So I have – just
6        one moment.  I know we have two motions to seal that
7        are going to go on the next hearing.  So I have entry
8        number 515, which was filed on October 18th that was
9        the plaintiff's motion to seal.  And I have the
10       defendant's motion to seal at entry number 510, and
11       that was filed on October 14th.  Mr. Ferraro, is
12       there a third motion to seal or are those the only
13       two motions to seal?
14            THE CLERK:  Those are the two new one's your
15       Honor.  The third is the one we're going to argue
16       today.
17            THE COURT:  Okay.  Very well.
18            ATTY. WOLMAN:  Your Honor, if I may interject.
19       Your Honor has asked us by 5 p.m. to file our
20       surreply.  I should note that there may be the case
21       that we will need to file a motion to seal relative
22       to an un-redacted version of that surreply.  And I
23       would ask because of the timing, the short timing
24       that while we can lodge a redacted version certainly
25       by 5 p.m. today, I would like to be able to lodge the
26       motion to seal on the un-redacted version by 5 p.m.
27       tomorrow.  If that's all right.
```

```
1        THE COURT:  I don't have a problem with that.

2    That's fine.  All right.  So just give me one moment.

3        THE CLERK:  Your Honor, if that gets filed sort

4    of by tomorrow, that other motion to seal, that is

5    enough time to hear that one on the 17th.

6        THE COURT:  All right.  So –

7        THE CLERK:  If you chose to do so.

8        THE COURT:  All right.  So that motion to seal,

9    if it is in fact filed, I'll instruct you to please

10   docket that for our next hearing date, which is

11   November 17th.

12       THE CLERK:  Yes, your Honor.

13       THE COURT:  Okay.  So besides what I've laid out

14   for our agenda to address today, and what I've

15   already mentioned that we're going to address next

16   time, I'm going to ask counsel as we do every time,

17   to identify anything else that counsel believes is

18   ready to be adjudicated today.  And then I'll turn to

19   anything that counsel has filed since our last status

20   conference that needs a briefing schedule.

21       So I'm going to actually start with you Attorney

22   Cerame, since you generally identify yourself last.

23   Let me let you be first this time.  Is there anything

24   sir, that I haven't mentioned that you filed that you

25   feel is ready to be adjudicated today?

26       ATTY. CERAME:  I don't believe so, your Honor.

27       THE COURT:  Thank you.  And is there anything
```

1    that you filed sir, since our last status conference

2    that needs a briefing schedule?

3        ATTY. CERAME:  No, your Honor.

4        THE COURT:  Thank you.  And I'll turn to

5    Attorney Wolman.  Same question.  Anything that I

6    haven't mentioned that you believe is ready to be

7    adjudicated today?

8        ATTY. WOLMAN:  I don't believe so your Honor.

9    Nor have we filed anything that – anticipating your

10   next question, anything that I believe requires a

11   briefing schedule at this time.

12       THE COURT:  Thank you, sir.  And then turning to

13   plaintiff's counsel.  Same two questions.  Just make

14   sure you unmute, please?

15       ATTY. MATTEI:  Yup.  Your Honor, the only motion

16   that you did not mention, but you previously

17   indicated that you were going to be prepared to

18   address sanctions to today, is the motion for

19   sanctions related to the subsidiary ledgers.  I

20   understand that you're putting off the trial balance

21   issue.  But that issue I think is ready to go as

22   well.

23       THE COURT:  Yeah.  .I am going to address the

24   issue on the subsidiary ledgers and the trial

25   balances at the next hearing.  I think I was too

26   optimistic as to what we were going to be able to do

27   today.  And I have other matters today, so we're

1    going to just do what's on the agenda for today.  But

2    those will both be on the agenda next time.

3         ATTY. MATTEI:  Very well.  The only other issue

4    is the one you've already mentioned.  Our motion to

5    seal, I supposed that needs a briefing schedule.  We

6    indicated in that motion that we don't believe the

7    continued sealing is appropriate.  And so I suspect

8    that Attorney Wolman will want to brief that, as will

9    we.

10        THE COURT:  All right.  So with respect to

11   motion to seal at number 515, which is dated October

12   18th.  Any objection from any party?  How much time

13   would you need?

14        ATTY. WOLMAN:  Our response, your Honor – this

15   is Jay Wolman for the record.  I could do two weeks

16   from today is fine.

17        THE COURT:  Okay.  So that would be – I don't

18   have a calendar close by.  Is that November 3rd, Mr.

19   Ferraro?  Do you have a calendar?

20        THE CLERK:  Yes, your Honor.  November 3rd.

21        THE COURT:  No reply.

22        ATTY. WOLMAN:  And if I may, your Honor?  I

23   should add that if Mr. Mattei or other plaintiff's

24   counsel wanted to respond to my motion with respect

25   to the Jacobson deposition that was filed under

26   seal –

27        THE COURT:  Yeah.

1          ATTY. WOLMAN: - and my anticipated motion

2      tomorrow, today, whatever, that they may want some

3      time on that as well.

4          ATTY. MATTEI:  Your Honor, regarding the -

5          THE COURT:  I'm referring to entry number 510,

6      filed on October 14th, the defendant's motion to

7      seal.  Is there any reason why we can't use that same

8      date for any objection that might be filed by any

9      party?

10         ATTY. MATTEI:  That's fine, Judge.

11         THE COURT:  Okay.  So November 3, 2021.  No

12     reply.  All right.  And if there is a third motion to

13     seal that is filed by Attorney Wolman, we'll follow

14     that same deadline.  Okay.  Anything else from you

15     Attorney Wolman on anything that either needs a

16     briefing schedule is ready that I haven't mentioned?

17         ATTY. WOLMAN:  No, your Honor, and I apologize

18     for the oversight.

19         THE COURT:  Not a problem.  Okay.  So we'll

20     first take up the plaintiff's motion for seal —

21     motion to seal at requesting other relief.  That's at

22     entry number 455.  I have the defendant's objection,

23     at number 503, and I have the plaintiff's reply at

24     509.  So first, let me just find for the record, that

25     the matter was properly docketed and the public was

26     properly notified on the Judicial Branch Website in a

27     timely manner.

1     And if anyone is – wishes to address the Court

2     on the motion to seal, would you please identify

3     yourself at this time?  All right.  Having heard no

4     response.  I'll start with the movant whenever you're

5     ready.  I'm not sure who's arguing it.  Attorney

6     Mattei?

7     ATTY. MATTEI:  Yes, your Honor, I'll take this.

8     Thank you, Judge.  As you know, the Court, I believe

9     since our filing of the motion has ordered us to

10    produce certain documents to the defendant's, covered

11    by this motion pursuant to a designation under the

12    protective order as highly confidential, attorney's

13    eyes only.  As a result of that ruling, we think it's

14    even more clear now that the defendant's motion in

15    which they publically disclosed contents of documents

16    that they were not entitled to have at that time, be

17    sealed.  Because it relates to information and

18    material that this Court has already determined

19    deserves protection under the protective order.  So

20    that's number one.

21    We also want the Court  to make clear in its

22    order today, that not only does the designation of

23.   those documents as highly confidential attorney's

24    eyes only apply to documents that the defendant's

25    properly received in discovery from us, but applies

26    to any documents that they improperly obtained from

27    Mr. Halbig.

1          We presume that those documents are identical,

2     although the defense to date has refused to provide

3     us with the documents that Mr. Halbig provided to

4     them.  So we think that the Courts determination that

5     these documents are deserving of protection, should

6     be dispositive on this issue, and that the

7     defendant's public filing, unnecessary public filing

8     in which they described the documents themselves.

9     Which at that time they were not entitled to have.

10    And which we believe they improperly obtained.  And

11    in which they described at least to some degree the

12    contents of those documents, that that should be

13    sealed as well.

14          THE COURT:  Thank you.  Attorney Wolman.

15          ATTY. WOLMAN:  Sorry, your Honor.  Thank you.

16    Plaintiff's confused issues, simply pled.  What Mr.

17    Halbig sent is not what – is not produced in

18    discovery.  What plaintiff's will produce to us is

19    something that is being produced in discovery and can

20    be protected by the protective order.  These are two

21    separate issues.  And I of course want to address one

22    quick thing.  On the notice itself, they haven't

23    identified a single thing that we disclosed as to the

24    contents of it.  May have identified who the parties

25    to a document are.  That is not disclosing the

26    contents of anything.  So I take issue with any

27    accusation regarding that.

```
 1          Similarly, we did not obtain these improperly.
 2     No more so than Woodward and Bernstein obtained
 3     information from Deep throat improperly, or the New
 4     York Times obtained the Pentagon papers improperly.
 5     What a third party - because Mr. Halbig is now a
 6     third party to this litigation, because the
 7     plaintiff's withdrew their claims against him.  A
 8     third party to this litigation provided documents to
 9     us.
10          Whether or not he violated an agreement in doing
11     so, that's between him and the parties to the
12     agreement.  And if they - plaintiff's want to take
13     action against him, that may be their prerogative.
14     But that does not hamstring us.  We cannot be tied
15     down.  The media cannot be tied down when a third
16     party, and The Supreme Court is clear on this, a
17     third party provides us information.  Because the -
18     and this is even carved out of the protective order
19     that we agreed to.
20          We would not have agreed to a protective order
21     that did not have this carved out, because these were
22     documents we lawfully obtained.  We didn't steal
23     them.  We didn't coerce them at the end of a gun.  We
24     lawfully obtained them from a third party.  We didn't
25     hack into any system.  He chose of his own volition
26     to provide them to us.  And we gave notice to the
27     Court, because we thought that that
```

1    was – and to plaintiffs because that was appropriate

2    considering the issues about –

3        THE COURT:  I'm going to interrupt you for a

4    second, Attorney Wolman and just – I have a question.

5    I thought I understood that the protective order that

6    you had proposed to the Court and that the Court

7    ultimately adopted dealt with not only discovery from

8    the parties, but it dealt with discovery that was

9    obtained from third parties.  And as my recollection

10    serves, this disclosure or the documents were

11    obtained either in connection with or at around the

12    time Mr. Halbig was being deposed.  So I understand

13    he was a party and he's no longer a party, but

14    doesn't – you're in the middle of discovery, you were

15    taking his deposition, doesn't your protective order

16    deal with discovery materials that are obtained

17    during discovery?

18        ATTY. WOLMAN:  This was not obtained during

19    discovery, your Honor.  In fact, a motion for a

20    commission to take his deposition was either pending

21    or had been adjudicated, but no subpoena had issued

22    to Mr. Halbig at that time.  So this cannot be said

23    to come through in discovery when he was not the

24    subject of – of the discovery –

25        THE COURT:  That doesn't answer my question.

26    Doesn't your protective order encompass materials

27    that were obtained in connection with discovery?  I

1    understand you're saying this was not discovery.  He

2    was a former party, it wasn't formally in connection

3    with the deposition.  But my question is, doesn't the

4    protective order deal with documents that are

5    obtained during the discovery process?

6         ATTY. WOLMAN:  By that logic, your Honor –

7         THE COURT:  I'm just asking.  It's a yes or no.

8    I'm not asking – it's yes or no. You proposed the

9    protective order, you filed one.

10        ATTY. WOLMAN:  It is not in the discovery

11   process.  Is says in discovery.  That is the issue

12   here.  We can look at the language of the protective

13   order, but if Connecticut Public Radio, which is

14   listening in today, if they provided us documents

15   right now, that would not be in discovery.  If

16   President Biden provided us with documents right now,

17   that would not be in discovery.  Merely because there

18   is a lawsuit, does not mean that anytime a third

19   party to that lawsuit provides a litigant with a

20   document, that it is in discovery.

21        Mr. Halbig was not the subject of a subpoena.

22   He did not respond to a subpoena in providing us with

23   those documents,.therefore they were not provided in

24   discovery.  And your Honor even made clear in her

25   last sanctions order, that to provide something in

26   discovery means it has to be served on all parties.

27   It wasn't served on the plaintiff's.  It wasn't

1   served on - actually it wasn't served - it was served

2   on Mr. Cerame, I should note.  But - and it was

3   emailed to him.  It was not a discovery request.

4   This is not in discovery any more so than if

5   President Biden right now gave us some information or

6   if Governor Lamont gave us some information.

7        THE COURT:  When did you file your motion for

8   commission to take Mr. Halbig's deposition?

9        ATTY. WOLMAN:  I do not know that offhand, your

10   Honor.

11        THE COURT:  Take your time.

12        ATTY. WOLMAN:  That was filed July 7th, your

13   Honor.  No - wait, that's the plaintiffs' response.

14   Sorry. Looking for it.  Might have been June 28th.

15   Yes, it was June 28th, your Honor.

16        THE COURT:  All right.  Just give me one moment,

17   please.  So I'm just taking a look at that, and it

18   looks like in that motion for commission - so that

19   was filed June 28th, it looks like by Attorney

20   Pattis' office.  When did you obtain the materials?

21   Just out of curiosity.  I thought you put it in some

22   filing.

23        ATTY. WOLMAN:  It was after that date, your

24   Honor.

25        THE COURT:  All right.  So the motion for

26   commission that was filed with the Court on June

27   28th, and that asked for permission to take the

1    deposition about the settlement paid, and so forth.

2    So you set – not you, but the defendant's set forth

3    the reason they wanted to take the depositions and

4    that they wanted to ask Mr. Halbig about the

5    settlement, the releases, the payments, and then

6    you – they took the – Attorney Pattis' office took

7    the somewhat unusual step maybe of actually sending a

8    copy of that motion for commission to Mr. Halbig.  It

9    looks like it was sent to his email address and that

10   it was to be mailed to his home address.

11       So you know, that – in my mind when you look at

12   that, that's a motion that's filed with the Court.

13   That's certified, emailed and sent to Mr. Halbig, who

14   was a defendant and so now you've got him involved in

15   the discovery process.  So I understand what you're

16   saying that the subpoena had not been served, but

17   that's – and I accept your word on that.  I have no

18   reason to doubt it.  But I can tell by looking at the

19   motion that Mr. Halbig was served with this discovery

20   request and then you got the material subsequently.

21   So it's a little murky in my mind.  It's not as clear

22   cut maybe as you're making it sound.  But continue

23   because I did interrupt you.

24       ATTY. WOLMAN:  And certainly if your Honor is

25   thinking that it's murky, then murkiness should be

26   resolved on the favor of the First Amendment here,

27   not to – and not issue and order a gag order, because

1    that's what the plaintiffs are requesting.  A gag

2    order in a prior restraint, which is fully

3    un-constitutional and we should not view murkiness as

4    an excuse to violate the First Amendment.

5        If it's clear that it was produced in response

6    to a subpoena, fine.  It was not.  No subpoena had

7    been served.  Mr. Halbig was given notice of a

8    request for a commission.  I think that should be

9    commendable and that actually be practiced.  I think

10    we should amend the Practice Book to require that a

11    copy be - of a motion for commission to be mailed

12    upon a punitive deponent.

13        So that they can respond here rather than later

14    and deal with the subpoena as need be.  And a motion

15    to quash and whatever other state that winds up to

16    being.  But here he had no obligation to do

17    something.  The Court - you know, a subpoena compels

18    somebody to produce documents under penalty of

19    contempt power.  This Courts contempt power or

20    whatever, a local Court's contempt power.  He had no

21    obligation to produce it.  The Court can issue orders

22    sanctioning any litigant who does not produce a

23    discover - a document in discovery when they are

24    compelled in a request for production.

25        That is a document produced under the aegis of

26    the proper discovery process.  Mr. Halbig did not

27    respond to a document request under the Practice

1    Book.  There was none pending.  There was no subpoena

2    pending that he chose and thought that maybe this

3    would obviate anything.  I don't know.  That's his

4    decision.  But whatever's lurking in his mind, if he

5    chose to violate the protective order – I'm sorry,

6    the confidentiality order, that confidentiality

7    provision that was up to him as well.  You know, one

8    would think that he would have been filed a

9    protective order because it's confidential.  He

10    didn't.  That is not somebody who is responding in

11    discovery would act.  They would file a motion for

12    protective order to make sure.  But he did not.

13        THE COURT:  Attorney Wolman, what are we talking

14    about?  I had previously designated the releases as

15    highly confidential under the protective order.

16        ATTY. WOLMAN:  Your Honor designated the

17    plaintiff's production of the –

18        THE COURT:  I understand that, but you're not

19    letting me finish my question.

20        ATTY. WOLMAN:  Oh, I heard a pause.

21        THE COURT:  That's all right.  Well, I'm just

22    catching my breath.  So since the Court had already

23    designated the releases as highly confidential, what

24    are we talking about?  I don't want to sit here and

25    waste everybody's time.  What are we talking about

26    besides releases?  I mean, is this an academic

27    exercise so that we can discuss the First Amendment.

1    I'm just trying to understand this because that order

2    is in place, and let's all be clear.  All that does

3    is give the documents that obtained during discovery

4    a status that then just requires anyone who wants to

5    use the documents in the file to file a motion.  It

6    doesn't mean that the documents can never be filed.

7    It's just a status that one the side or the other can

8    challenge, and which may or may not end up getting

9    filed with the Court.

10        So my question is, what are you talking about

11   besides releases?  In my experience, you have a

12   withdrawal and you have a release.  Those are the

13   settlement documents in a case.  The withdrawal is a

14   public record, it's in the file, and the releases are

15   already designated.  So what is it that we're talking

16   about?

17        ATTY. WOLMAN:  Your Honor, the releases as

18   provided by Mr. Halbig are not designated.  That is

19   the issue.  The First Amendment is never academic.

20   If your Honor says right now that these are – that

21   what Mr. Halbig previously gave is attorney –

22        THE COURT:  Mr. Wolman – Mr. Wolman, I –

23        ATTY. WOLMAN:  May I –

24        THE COURT:  I thought that and I can look up my

25   order.  I thought that I actually ruled in your favor

26   on the production on the releases.  I believe that I

27   overruled the plaintiff's objections, ruled in your

1    favor and said that the releases, I thought for the

2    four former parties, which had include Halbig had to

3    be produced, but they would be designated as highly

4    confidential.  If you don't agree with that then

5    we'll pause and I'll go look up.  There's a lot of

6    orders in this case, and I can go look up the order.

7    Is that not your understanding?

8         ATTY. WOLMAN:  Your Honor ordered that the

9    plaintiff's produce the releases as AEO.  Your Honor

10   did not order that what Mr. Halbig gave us, for all I

11   know –

12        THE COURT:  No, no.

13        ATTY. WOLMAN:  – not going to produce the same

14   documents –

15        THE COURT:  But – Mr. Wolman –

16        ATTY. WOLMAN:  – as they hear them.

17        THE COURT:  Mr. Wolman, this is really not

18   complicated and this is a yes or a no.  It doesn't

19   call for any argument.  It's a yes or a no or I don't

20   know, your Honor.  Okay.  Which is a valid response

21   if that's the proper answer.  Did I not previously

22   rule in your favor, require the plaintiff's to

23   produce the four – the releases as to the four former

24   parties and then designate them as highly

25   confidential, including the Halbig release?  Wasn't

26   the Halbig release – weren't the plaintiff's

27   obligated to produce a copy of that to you?  Didn't I

1    rule in your favor, yes or no?

2        ATTY. WOLMAN:  As to the plaintiff's producing

3    it, yes.

4        THE COURT:  Okay.

5        ATTY. WOLMAN:  Your Honor did not discuss what

6    Mr. Halbig produced to us.

7        THE COURT:  Okay.  So I have already designated

8    that release as highly confidential.  The Halbig

9    release.  I am not going to change that ruling.

10   That's the ruling that stands.  I will not change it

11   and that's the ruling and you'll do what you need to

12   do.  What I'm simply trying to find out, is whether

13   there are other documents, because – and I don't know

14   what we're talking about here, in my mind settlement

15   documents are a withdrawal and release and maybe a

16   copy of a check.

17       So is there anything else that I have to concern

18   myself with here or are we just talking about a

19   release?

20       ATTY. WOLMAN:  I mean, Mr. Halbig sends us lots

21   of emails.  There was – you know – I don't know what

22   the plaintiff's would be concerned with.  Mr. Halbig

23   sent us some communications with his own counsel, a

24   Mr. Beatty.

25       ATTY. MATTEI:  Your Honor, may I just be heard?

26       THE COURT:  Well, I want – I interrupted

27   Attorney Wolman, so I just want to give him an

1    opportunity to finish up since I interrupted him, and

2    then I'll give you an opportunity to respond, since

3    it's your motion.

4        ATTY. WOLMAN:  I mean, arguably Mr. Halbig's

5    email made reference to the nature of the settlement

6    that was being proposed, and his aversion to wanting

7    to enter into it at all.

8        THE COURT:  Okay.  Anything further before I

9    give the floor back to Attorney Mattei.

10       ATTY. CERAME:  Your Honor, I should like to be

11   heard before Attorney Mattei, just in response

12   briefly?

13       THE COURT:  I just want to make sure Attorney

14   Wolman's done, Attorney Cerame.

15       ATTY. WOLMAN:  Your Honor, treating what a third

16   party provides as AEO is not the same as what the

17   plaintiff's provide.  Under your Honor's order, this

18   is now a brand new order.  And even though there is a

19   process for changing that designation, even three

20   seconds of a gag order is still unconstitutional.

21   And that's what this does.

22       THE COURT:  All right.  Attorney Cerame.

23       ATTY. CERAME:  Just briefly, your Honor.  Just a

24   couple of points.  There was the characterizations

25   made by Attorney Mattei that we have – that there was

26   an improper – the materials were improperly obtained.

27   As I understand it, these materials were also sent to

1     us.   I believe personally that they got caught in our

2     Spam filter, and I have not seen these materials.

3          But nonetheless, ostensibly they were sent to

4     us.   I take the issue with the characterization that

5     we improperly obtained them.   That may have been a

6     rhetorical flourish, I'm not sure.   But to whatever

7     extent there was not a need to make that in the

8     record.   And I think that's - it may be relevant as

9     to analysis that we may have received it.   And I just

10    wanted to make those points, your Honor.   That's all

11    I have to say.

12         THE COURT:   Attorney Mattei.

13         ATTY. MATTEI:   Your Honor, Attorney Wolman is -

14    made the argument that because these were produced by

15    Mr. Halbig, they weren't produced in discovery.   The

16    context here is important.   A week after the Court

17    ruled that they were not entitled to inquire of Mr.

18    Halbig or obtain documents relating to settlement

19    from him, they then received these documents from Mr.

20    Halbig.

21         And you point out, Judge, that although we don't

22    know, that very well may have been prompted by them

23    sending Mr. Halbig the motion for commission, and any

24    other communication's they may have had, which we

25    don't know.   But what's clear is that they were

26    attempting to obtain these documents from Mr. Halbig

27    in discovery, the Court precluded them from doing

1  that, and they then obtained them anyway.  So the

2  idea that these were not exchanged or provided in

3  discovery, doesn't make much sense.

4      And I also want to respond to this claim that

5  Mr. Wolman is a member of the media.  And that

6  precluding him from distributing documents obtained

7  in discovery, is a prior restraint.  Mr. Wolman is

8  not a member of the media.  He is a lawyer

9  representing a litigant before this Court, who is

10  bound by this Courts protective orders.  And simply

11  because he's in possession of an identical copy of a

12  document, that this Court has already determined is

13  deserving of protection, does not mean that can – or

14  his client, can disseminate that document, simply

15  because it's a copy, to the media as they've

16  indicated in their pleadings they want to do.  For

17  the purpose we claim, of attempting to taint the jury

18  pool.

19      So from our prospective, this is the Courts

20  entry or protective order and determination that

21  these documents are covered by, and under a highly

22  confidential designation, isn't a prior restraint on

23  anybody.  It is an order entered essentially by

24  agreement with the defense to be bound by it.  And it

25  doesn't matter whether or not they obtain the

26  document from Mr. Halbig, which we believe was

27  perhaps not pursuant to formal discovery, but

1    certainly within the discovery process, or from us.

2    It's the same document, it's deserving of protection,

3    and that should be maintained.

4        THE COURT:  All right.  So I am going to deny

5    the motion to seal.  I'm also going to deny the

6    plaintiff's request for a Court order designated –

7    designating that all the settlement materials and

8    information be treated as highly confidential.

9        However, my prior order that the releases are

10   designated as highly confidential remains in effect.

11   So with respect to any releases that the parties

12   obtained they are designated as highly confidential

13   and that order remains in effect.  All right.  So now

14   I'm going to turn to the defendant's motion to

15   dismiss with respect to the Lafferty claim.  That is

16   at entry number 445.  I have the plaintiff's

17   objection that is at entry number 462.  And I have

18   the defendant's reply that is at number 477.  I am

19   also going to take up in conjunction with the motion

20   to dismiss, the plaintiff's motion to substitute,

21   which is at 459 and 460.  The defendant's objection,

22   which is at 501. The plaintiff's reply, which is 513.

23        Ordinarily there is no right to oral argument on

24   a motion to substitute, but in light of the pending

25   motion to dismiss, I am going to allow argument on

26   the motion to substitute, as well as the motion to

27   dismiss.  And I think it makes the most sense to

1 start with the movant on the motion to dismiss.  And

2 I think the substitution and the dismissal can be

3 dealt with the same time in the argument, then I will

4 have the plaintiff's response and then the

5 defendant's will have an opportunity to reply.

6  So I just want to make Attorney Cerame, because

7 I never want to forget you.  I didn't see you had any

8 filings with respect to the Lafferty motion to

9 dismiss, and I don't see that you formally joined in

10 it.  Did you?

11  ATTY. CERAME:  I did not.  Your Honor, I don't

12 think I have anything clever or particularly nuance

13 to add beyond what Attorney Wolman's already said.  I

14 have discussed the issue with him, but, truly - I -

15 there are very intelligent people writing here, and I

16 do not have anything particular to add.

17  THE COURT:  All right.  And then what about the

18 motion to substitute?  Did you want to weigh in on

19 that motion at the appropriate time?

20  ATTY. CERAME:  Nothing beyond what Attorney

21 Wolman has said.  I - he's really - he's briefed the

22 issue much more thoroughly than I could have.

23  THE COURT:  All right.  So then I will not worry

24 about forgetting you in the argument, with the

25 understanding that you are opting out.  And I will

26 start with Attorney Wolman, who will address his

27 motion to dismiss and the plaintiff's motion to

1      substitute.  Whenever you're ready, sir.

2          ATTY. WOLMAN:  Thank you, your Honor.  With

3      respect to Erica Lafferty.  We brought this issue to

4      the Courts attention back in May.  At the same time

5      we did with respect to Mr. Richmond.  The late Mr.

6      Richmond.  And at that time the Court in viewing a

7      similar motion to dismiss and motion to substitute,

8      viewed it as - she permitted the substitution for the

9      purpose of withdrawing the claim.  There is no

10     functional difference here.  Ms. Lafferty has not

11     been a real party and interest since December of

12     2018.  She did not inform the Court.  We learned

13     about her bankruptcy by happenstance while doing a

14     pacer search, as I customarily do in discovery of

15     litigants.  And at that time we also learned that

16     nominally the claims had sold back to her, committing

17     a fraud in the bankruptcy court, which has since been

18     reversed.

19         But at all times because that sale was voided,

20     the trustee, Mr. Coan has been the real party and

21     interest continuously through today from December of

22     2018.  And what we have here is - and I should note.

23     There's an argument first raised in the plaintiff's

24     reply on the substitution motion.  That I think

25     should come into bearing.

26         Which is, that because Ms. Lafferty claimed a

27     partial exemption in the matter, under section 522,

1      that somehow she remained a real party in interest.

2      While that is an interesting argument to make, she's

3      still then saying that Mr. Coan should be

4      substituted, which then doesn't make sense either

5      way.  They can't have it both ways.  That was a reply

6      in support of substituting Mr. Coan.  She's been

7      saying no, she's really the real party in interest.

8      No.  Mr. Coan has been.  And while they look to one

9      case, one Superior Court case, I would say that the

10     Court should defer to what the U.S. Bankruptcy Court

11     for the District of Connecticut has stated.

12          In the matter of In Re: Xiao, X-I-A-O, 2016

13     Bankruptcy in Lexus 4121.  Judge Tancredi noted that

14     when a timely objection, that is to a claim of

15     exemption is lodged, and we have done so, however the

16     assets claimed as exempt remain property of the

17     estate, unless and until the objection is overruled.

18     It could not be more clear that that.  And he cites

19     to the Eastern District of New York.  He cites to the

20     Tenth Circuit Bankruptcy Appellate Panel, which that

21     decision was affirmed.  That is what the Court should

22     look to, a decision of the Bankruptcy Court as to who

23     actually remains the real party in interest.

24          You know, Ms. Lafferty may prevail in the issue

25     regarding the claimed exemption.  The Court has - the

26     Bankruptcy Court has actually deferred action on that

27     case, pending the outcome of this - of that issue,

1       pending the outcome of this case.  And so what we

2       have is a matter where the assets remain property of

3       the bankruptcy estate even today.  They remained

4       property of the bankruptcy estate even when that bill

5       of sale had purportedly issued because that bill of

6       sale of void.  The Bankruptcy Court declared that in

7       void, therefore it has zero regal effect.  So since

8       that time she is not the real party in interest.

9           Now sometimes we do substitute the trustee, and

10      that is a motion pending in this court.

11          THE COURT:  Can you address what discretion in

12      your opinion the Court has with respect to the motion

13      to substitute?  Is it your position the Courts hands

14      are tied under the law?

15          ATTY. WOLMAN:  I think that just as with the

16      executrix of the Richmond Estate.  We're facing a

17      situation here where the trustee has known he is the

18      real party in interest for years.  For years.  And

19      has chosen not to prosecute.  We should not be

20      rewarding his nonfeasance with now all of a sudden

21      letting him into the case well after significant

22      discovery has been taken.  That would be prejudicial,

23      your Honor.  Just as it was that your Honor felt that

24      Mr. Richmond's claim should be withdrawn because

25      the – presumably the late date at substitution has

26      being sought.  This is even later for an even longer

27      period of time.  There is no excuse.

1      Mr. Coan tried to make sure that we did not know

2  what was going on the Bankruptcy Administration.  He

3  didn't appear in this case, despite the fact that

4  plaintiff's firm had been hired years ago and

5  retained through an order of the Bankruptcy Court to

6  prosecute the case in the name of Ms. Lafferty.  That

7  was the purpose of that order.  Ms. Lafferty herself

8  sought that order – and assented to it rather.  The

9  trustee is the one who, I should note, moved for it

10  if I recall.  But she did not object to that.

11      THE COURT:  Attorney Wolman, what of the fact

12  that the case did not remain dormant during the time

13  that the trustee was not named as a party in this

14  case?  What significance under the law is that?

15      ATTY. WOLMAN:  Well, I mean there has been

16  certain amounts of dormancy at least in this court,

17  where months went by when we were in the Supreme

18  Court of Connecticut.  There were months that went by

19  when we were in the District Court –

20      THE COURT:  Well, what I meant by dormancy, I

21  don't mean when you removed it to Federal Court,

22  where obviously it would be improper for this Court

23  to do anything, nor do I mean, I believe I had

24  granted your stay.  I don't know if you filed it or

25  if Attorney Pattis.  So I'm not talking about that as

26  dormancy.  In my mind dormancy is when there can be

27  activity on a case and nobody's prosecuting their

1    claim.

2         Given - I can't - I would be hard pressed to

3    find certainly not another case on my docket, but I'd

4    be hard pressed to find another case that's

5    prosecuted and defended as vigorously as this case.

6    So I don't see besides when we were not permitted

7    under the law to have any activity in the case, I

8    don't see that this case was ever dormant for

9    probably a day.  And I'm just wondering how

10   significant is that under the law.

11        ATTY. WOLMAN:  Well, I think that we should also

12   look at the fact that discovery was served in May.

13   Months before substitution was sought.  Ms. Lafferty,

14   her deposition was taken.  And the - you know, some

15   of the issues in terms of how things were

16   characterized, even with respect to the motion for

17   commission regarding Mrs. Clinton, you know,

18   related - is related to that.

19        We have severe prejudice.  We did not get to

20   issue interrogatories.  We have not been able to

21   dispose Mr. Coan as a party.  In fact he had objected

22   to his - to a subpoena to him.  He did not wish to be

23   deposed in this matter.  Or I apologize, maybe it's

24   the plaintiffs were seeking to preclude his

25   deposition.  I forget who filed that one.  Who

26   objected to that subpoena, moved to quash it.  I

27   believe that the trustee joined in it, or filed his

1     own motion.  But –

2         THE COURT:  Attorney Wolman, let me just ask

3     you.  I know that you're in the middle of

4     depositions, because I'm getting phone calls during

5     the deposition in this case.  Where's the prejudice

6     if you weren't able to take the depositions that you

7     say that you weren't able to take?  I could see you

8     would be prejudiced if trial started tomorrow and you

9     couldn't do the depositions that you wanted.  But

10    clearly you're right in the midst of depositions.  So

11    what is the prejudice that attached here, so that I

12    understand it a little better?

13        ATTY. WOLMAN:  Well, I mean, part of the problem

14    is we still haven't even gotten any production from

15    Mr. Coan.  Where the plaintiff's asked for time, Mr.

16    Coan has not asked for time, despite the Court

17    essentially ruling on that motion.  We've gotten no

18    production from him.  We haven't been propertied a

19    new date, we did not get to serve interrogatories on

20    him. That time has elapsed, and we've been litigating

21    against the wrong party for years.

22        THE COURT:  Anything further, sir?

23        ATTY..WOLMAN:  No, your Honor.

24        THE COURT:  Thank you.  Attorney Mattei, are you

25    arguing this?

26        ATTY. MATTEI:  Yes, your Honor.  Thank you.

27    Taking up the both the motion to substitute and I

1     think the motion for lack of subject matter

2     jurisdiction at that same time.  You started out with

3     the question, Judge, about whether your hands are

4     tied.  Our view, and I think the view you have

5     embraces in a couple of prior cases you've handled

6     involving similar cases, is that you do have the

7     authority to resolve a motion to substitute, prior to

8     resolving a motion to dismiss for lack of subject

9     matter jurisdiction.

10        I believe that you did that in both the

11    Dragonetti case, 2010 Westlaw 4227122, and the

12    Messiah case, which we think is similar to this one.

13    2012 Westlaw 6634817.  And I urge the Court to do

14    that here for a couple of reasons.  Number one, it's

15    our view and I think the law supports this that Ms.

16    Lafferty has been and continues to be a proper party

17    in interest, having retained a legal and pecuniary

18    interest in this matter before the Bankruptcy Court,

19    for the duration of the case.

20        She's retained the maximum exemption that she

21    can under the Bankruptcy Code in an interest in the

22    case, and that confers upon her, both standing and

23    .this Court's subject matter jurisdiction to prosecute

24    the claim in her own name.

25        With respect to Attorney Wolman's argument that

26    they've objected to that exemption, the objections

27    period for when Ms. Lafferty claimed that exemption

1    lapsed in February of 2019, I believe.  And it wasn't

2    until the Jones defendant's intervened in Ms.

3    Lafferty's bankruptcy and claiming that she owes them

4    money that they attempted to object to that exemption

5    in August of this year.  And I should note, that they

6    have not objected to Ms. Lafferty's claimed exemption

7    of her interest in this lawsuit.  What they've

8    objected to, is her claim in the Bankruptcy Court

9    that she does not yet know what the value of the

10   remaining case is.

11        And as that exemption has existed, essentially

12   throughout the entirety of this case, that property,

13   her interest, had remained within the debtor's

14   possession.  That is Ms. Lafferty's possession.  And

15   we think that the cases that are most persuasive on

16   this issue are the Fetner case, which I will cite to

17   you as soon as I can pull it up.  218 bankruptcy, 262

18   In Re: Fetner.  And also the *Post versus Latera* case,

19   which we cited to this Court.  Where a debtor retains

20   a real legal and pecuniary interest in the litigation

21   that she is bringing, and has advised the Bankruptcy

22   Court of that.  That confers upon her standing in

23   this court jurisdiction, and she has had it

24   throughout.

25        It's simply not part of the bankruptcy estate,

26   and for that principle, I would refer the Court to In

27   Re: Sheets, 69 Bankruptcy, 542.  And In Re: Bedouin,

1    which is a Connecticut Bankruptcy case, 427 BR30.

2    Explaining that exempt property is not part of the

3    bankruptcy estate.  And so she has maintained that

4    interest throughout, and as your Honor points out,

5    she has prosecuted the case diligently.

6         I do want to address Attorney Wolman's

7    disparagement of Mr. Coan.  Mr. Coan has been a, I

8    believe a 35 year veteran of the Bankruptcy Court.

9    And he, as a result of the Bankruptcy Code has

10   discretion as to whether or not to substitute on

11   behalf of the Bankruptcy Estate.  It's very clear

12   that he has discretion to do that.  Having been made

13   aware of the pendency of the matter.  Having been

14   aware of Ms. Lafferty's exemption.  Mr. Coan was

15   fully within his rights as the trustee, to continue

16   to let her proceed with it, to pursue it and to

17   prosecute it on his behalf, which he did.  And that

18   discretion is undeniably plain with the Bankruptcy

19   Regulations.

20        I also want to - sorry, Judge.

21        THE COURT:  Take your time.

22        ATTY. MATTEI:  I also want to say that the only

23   remaining question then, is whether or not Mr. Coan

24   may be substituted at this time.  Mr. Wolman

25   criticizes him for now making an effort to

26   substitute.  It's not necessary that he do so, but

27   he's doing that at this time, in part because the

1    Jones defendants have raised this issue.  Not because

2    he's under any mandate to do that.  He could continue

3    in his discretion to let Ms. Lafferty continue to

4    prosecute the case on his behalf.  But he's opted to

5    seek substitution.  Ms. Lafferty has opted for him to

6    seek substitution.  And there's no prejudice to the

7    defendant.  As you pointed out, your Honor, as a

8    result of this they still can take his deposition if

9    they wish.  They still can seek discovery from Mr.

10   Coan, if they wish, but it's not really disputed that

11   the individual who has relevant information to Ms.

12   Lafferty's claim, is Ms. Lafferty herself.  She's

13   been deposed.  She's prepared records for production.

14   She has submitted interrogatory responses.  And the

15   damages that are being claimed in this lawsuit, are

16   those that she personally experienced.

17       If the Court were to deny its subject matter

18   jurisdiction, deny Mr. Coan's ability to intervene in

19   this case, the injury would be to the Bankruptcy

20   Estate.  And the entire purpose of the Bankruptcy

21   Code is to ensure that the assets of a Bankruptcy

22   Estate are maximized.  The code is a shield for the

23   debtors' estate to maximize its value.  It's not a

24   sword to be used by parties in litigation against the

25   estate.

26       He's been aware of the claim since the

27   beginning.  He's exercised his discretion not to

1  substitute.  And the clear distinction both between

2  the events surrounding Mr. Richmond's estate, are

3  that Ms. Lafferty has retained an interest

4  throughout.  Obviously with Mr. Richmond's passing,

5  he did not retain an interest, was not capable of

6  prosecuting the matter and there was no

7  representative who had discretion to allow him to do

8  that.  That's clearly not the case here.  The

9  Bankruptcy Code's purpose is to ensure that there is

10  no end run of the bankruptcy process.  And that the

11  estate's assets are being maximized.  Here, Ms.

12  Lafferty disclosed to the Bankruptcy Court, her

13  interest in this litigation.  She maintained an

14  exemption.  The case was filed before she ever filed

15  for bankruptcy.  And there's no dispute that she was

16  the proper party in interest as of that time.

17       And so we think that the Court should follow the

18  same rational that it used in Messiah.  Conclude that

19  a substitution is appropriate, and allow the case to

20  continue.  Indeed, both the Delito case and other

21  cases expanding upon this have held that the rules of

22  standing are not to be applied or construed narrowly,

23.  so as to cut off a claim, but rather liberally,

24  particularly in the absence of any prejudice to allow

25  a claim to proceed.  So for those reasons we think

26  the motion to substitute should be granted, and we

27  think the motion to dismiss should be denied.

1          And I just want to mention one other thing.  In

2     the In Re: Xiao case, which Jay recently cited a

3     decision by Judge Tancredi, it was the trustee of the

4     bankruptcy estate that objected to the exemption that

5     the debtor was claiming.  Here, neither the trustee

6     nor any legitimate creditor has objected to that

7     exemption.  And so we're in a very different posture

8     than they were in the Xiao case.  And we're much more

9     closer to Fetner and to the Latera case.  Thank you

10    Judge.

11         ATTY. WOLMAN:  May I respond, your Honor.

12         THE COURT:  Certainly.

13         ATTY. WOLMAN:  First, that last point, our

14    clients are legitimate creditors.  Ms. Lafferty

15    herself filed amended complaint - amended schedules

16    identifying our clients as creditors.  That is why we

17    were then given an opportunity to object to the

18    claimed exemption.  For the first time Ms. Lafferty

19    did not give our clients notice, and she cannot

20    capitalize on her own malfeasants in order to then

21    use that as some kind of issue of us sitting on our

22    rights.

23         No.  The only party to sit on his rights is the

24    trustee.  Yes.  The trustee has discretion to

25    substitute.  But simply his - even if he exercises

26    his discretion and doesn't substitute, that does not

27    confer standing on the debtor.  That simply means

1 that nobody is prosecuting the case if he does not

2 substitute in.  It does not mean that the debtor has

3 the right to do so.  And it doesn't matter who filed

4 an objection - with respect to the Xiao case I cited,

5 Judge Tancredi stated the principle clearly.  And we

6 did file an objection.  We filed an objection timely

7 to the claimed exemption.  And that has not been

8 adjudicated.  And so therefore the owned proper party

9 this entire time has been the trustee and he has sat

10 on his rights and should not now be rewarded for

11 that.

12  And I should note, that Mr. Mattei

13 misrepresented the record.  There is no, so far as

14 I'm aware, notice of compliance with respect to Ms.

15 Lafferty.  She has not produced documents it this

16 matter.  She is presumably part of this rolling

17 production, but we haven't gotten anything from her.

18 And we haven't gotten anything from Mr. Coan, who is

19 not subject to the rolling production so far as we

20 are aware.

21  So as a result, I see no reason why he should

22 now having not produced documents, having not had the

23 opportunity to serve interrogatories on him, that he

24 should now at this late date be permitted to

25 substitute in.  Thank you.

26  ATTY. MATTEI:  Your Honor, in response.  First

27 of all -

```
1          THE COURT:  I generally don't go back and forth,
2     Attorney Mattei, as you know.  But since there was an
3     issue raised with regard to whether there had been
4     compliance, I think you should address that.
5          ATTY. MATTEI:  Yes.  Thank you, your Honor.
6     What I said was, that Ms. Lafferty has prepared
7     documents for production, which is accurate.  As the
8     defendant's know, because they deposed her, and
9     deposed her on the preparation she had made to
10    produce documents.  And I also said that she is
11    served interrogatories, which is true.  So I — let me
12    just leave it there.
13         I also want to say that Ms. Lafferty has not
14    conceded that Mr. Jones is a creditor of hers.  She
15    has listed in light of what the Jones defendants have
16    done to muck up her bankruptcy.  Him as a contingent
17    creditor, they filed objections as I understand it,
18    to his claim.  And Judge Manning has indicated that
19    she will not be addressing that until this matter is
20    resolved.  That's all, Judge.
21         THE COURT:  All right.  So I am going to deny
22    the motion to dismiss, having granted the motion to
23    substitute, and I will issue something in writing.
24    And I just want to say, that I would consider any
25    appropriate motion to modify from the defendant's or
26    really from any of the parties, if additional time is
27    needed to conduct discovery specific to that
```

```
1        plaintiff, because certainly there should be no
2        prejudice if sufficient time for the discovery is
3        permitted.
4             So what I'm going to do now in an effort to
5        accommodate Attorney Horton, because I am not going
6        to get through that hearing today, and the other
7        important matters on our agenda.  What I'm going to
8        do Attorney Horton, is sort of give a background, if
9        you would, so that you're on notice and Attorney
10       Wolman is on notice of the Courts concerns.  So I
11       will put some background statement on the record so
12       that you know what you're defending against at the
13       next hearing.
14            I haven't yet decided whether I'm going to
15       possibly, if I find it appropriate, to do a referral
16       to Disciplinary Counsel, or if I'm going to exercise
17       my jurisdiction and discretion and deal with the
18       issue myself at a hearing.  I might be leaning
19       towards dealing with the issue myself, with obviously
20       I'm very pleased to see that you're appearing for
21       Attorney Wolman.  That's a good thing.  So – and I
22       certainly want to give you enough time as well, so
23       that you know what the Court's concerns are.
24            ATTY. HORTON:  Yes.
25            THE COURT:  All right.  So – and I don't think
26       once we're done with it, there's not going to be any
27       colloquy, any further discussion, unless you had a
```

1    specific question.  Which I don't think you will.

2    And I'll plan on addressing this issue at our next

3    scheduled status conference.  Okay.  So on May 6,

4    2021, the Court having already referred prior defense

5    counsel to the Disciplinary Authorities, and

6    concerned about obstructive and dilatory practices,

7    as well as candor towards the tribunal on the part of

8    the defense, instructed all counsel in the case to

9    review the relevant sections of The Rules of

10   Professional Conduct.

11        On May 29, 2021, the Court warned Attorney

12   Wolman to refrain from invoking The Rules of

13   Professional Conduct in civil filings in this

14   lawsuit, as it is entirely inappropriate to use the

15   rules as a weapon in a civil lawsuit.  The Court

16   warned Attorney Wolman that any further such usage of

17   the rules would result in immediate action by the

18   Court, under Practice Book Section 2-45.

19        Then on June 26, 2021, Attorney Wolman was

20   warned to refrain from inappropriate commentary and

21   ad hominem criticism of the Court in court filings in

22   this case.  These are all very unusual steps for the

23   Court to take.  This brings us to the September 17,

24   2021 deposition of unrepresented witness Robert

25   Jacobson.  The deposition transcript, which has been

26   lodged with the Court at the Courts request, will be

27   marked as a Court Exhibit now, Mr. Ferraro,

1    temporarily under seal.  As I see that it contains

2    personal identifying information, and it may contain

3    other information.  And Attorney Ferraro, we will put

4    that issue on the agenda as well for our next status

5    conference.  That motion – the Courts sua sponte

6    motion to seal parts of the transcript.

7        I'm also going to instruct Mr. Ferraro to mark

8    the subpoena that was served on Mr. Jacobson as a

9    Court Exhibit.  That was filed by plaintiff's

10   counsel, also as a result of the Courts order.  And

11   we'll mark that as a Court Exhibit as well.  The

12   Court's reviewed the entire deposition transcript of

13   Mr. Jacobson.  And had the Court had that information

14   during the September 17 telephone conference that was

15   done on the record, and had the Court had any inkling

16   of the abusive questioning that was being conducted

17   by Attorney Wolman, I would have immediately,

18   immediately stopped the deposition.  And if I was

19   going to permit any further questioning of that

20   witness, it would have been done in open court with

21   the Court on the bench and present for any further

22   questioning.  But I did not, obviously have the

23   transcript in front of me as the deposition was

24   ongoing.

25       In response to Attorney Wolman's questioning of

26   Mr. Jacobson, Mr. Jacobson's response would indicate

27   that he had no documents that were responsive to the

1    plaintiff's subpoena on either his phone or on the

2    Cloud, except for the subpoena itself.  And after the

3    plaintiff objected to the request, Attorney Wolman

4    asked Mr. Jacobson to search the email on his phone

5    for the phrase Sandy Hook.  In response, Mr. Jacobson

6    asked Attorney Wolman, quote, am I legally required

7    to do so, end quote.

8         And rather than refrain from giving legal

9    advice, Attorney Wolman's response was, quote, you're

10   here and you're subpoenaed here, and you brought your

11   documents, your entire email account to the

12   deposition, end quote.  Following another objection

13   by plaintiffs' counsel, Attorney Wolman asked Mr.

14   Jacobson, quote, are you refusing my request, end

15   quote.  Referring to his request that the

16   unrepresented witness search his phone.  At which

17   time Mr. Jacobson stated that he would like to

18   consult with a lawyer.

19        Attorney Wolman then asked the witness how much

20   time do you need today to consult with a lawyer.  At

21   this point on the record with the witness there,

22   plaintiff's counsel with Attorney Wolman's okay,

23   emailed the Court Officer, Mr. Ferraro, to get the

24   Court involved to get a ruling on the issue of

25   whether the unrepresented witness needed to search

26   his phone for the documents.

27        Nonetheless, Attorney Wolman, after stating

1    that the witness had not called counsel immediately,

2    and knowing that the Court had been contacted to

3    intervene in the issue, pressured and barraged the

4    witness by asking, would you like to call a lawyer

5    right now?  Mr. Jacobson, are you going to call a

6    lawyer right now?

7        Attorney Wolman then stated that the witness had

8    a full and fair opportunity to seek counsel.  And

9    after the witness stated again that he would await

10   the Courts ruling on the issue, Attorney Wolman again

11   asked the witness, are you refusing to produce

12   documents pursuant to the search I have requested?

13       The transcript that's been marked as a Court

14   Exhibit, shows that Attorney Wolman continued to

15   pressure and harass the witness, who stated over and

16   over again that he was waiting for the Courts ruling.

17   Attorney Wolman asked the witness several times what

18   the witness was doing himself to seek Court

19   intervention.  While Attorney Wolman already knew

20   that Court intervention had been requested by the

21   lawyers, who had access to the Court.

22       This behavior concerns the Court, and that is

23   part of what Attorney Wolman is answering to.  So

24   this witness, like most witnesses, did not have a

25   lawyer on standby.  He testified in response to

26   Attorney Wolman's questioning, that he didn't bring a

27   lawyer to the deposition because he could not afford

1    one.  Nor did this unrepresented witness have any

2    method of seeking Court intervention on his own in

3    the middle of the deposition.  The Court is also

4    concerned with Attorney Wolman's legally erroneous

5    and response to the witness's question, as to whether

6    the witness was legally required to search his phone.

7        There was no Court order that the Court had

8    issued, nor does the subpoena that's also been marked

9    as a Court Exhibit, require him to search his phone

10   in the middle of the deposition.  And that is simply

11   not normal deposition procedure.  It is actually

12   highly irregular.

13       In the middle of the deposition, the Court did

14   address on the record during the telephone

15   conference, the issue at hand.  And I direct the

16   clerk to make a copy of that transcript as a Court

17   Exhibit as well.  It's already contained in the file.

18   Attorney Wolman in his comments to the Court during

19   that hearing, justified his continuing to ask the

20   witness to search his phone, because the witness did

21   not himself somehow seek judicial intervention, in

22   addition to the judicial intervention that

23   plaintiffs' counsel had already set in motion, which

24   led to the hearing, and because the witness did not

25   somehow find a lawyer in the middle of the

26   deposition.

27       The Courts directive on the record at that

1    status conference, which took place in the middle of

2    the deposition, was that Attorney Wolman should file

3    a motion on the issue if he felt it was necessary.

4    And that it was not appropriate and not normal

5    deposition procedure to have a witness search a phone

6    for documents in the middle of the deposition.  That

7    is what the Courts directive was.  File a motion, if

8    you think it's necessary.  This is highly

9    inappropriate and it is not normal.  It is that

10   simple.

11        At that point the Court had not seen the

12   subpoena, which now that the Court has seen it, does

13   not show that the witness was required to produce his

14   phone at the deposition, nor had the Court seen the

15   earlier part of that deposition transcript with the

16   questioning that concerns the Court.

17        It's painfully clear to the Court now, having

18   reviewed the deposition transcript and subpoena that

19   the witness objected to searching his phone.  That he

20   wanted time to talk to a lawyer.  That he wanted the

21   Courts ruling.  And it is also painfully clear that

22   under the law, the witness was under no legal

23   obligation to search his phone.

24        When Attorney Wolman went back on the record at

25   the deposition, he immediately asked the witness if

26   he was willing to search the phone.  At no point did

27   Attorney Wolman make clear to the witness the Courts

1    directive, that it was inappropriate and not normal

2    to have a witness in the middle of a deposition

3    fumble through a phone and search for records.

4        The Court is concerned of possible Rules of

5    Professional Conduct violations of 3.43 and 3.44. By

6    disregarding the Court's directive and by misleading

7    the witness to believe that he had a legal obligation

8    to search his phone, email's or the Cloud, when no

9    such legal obligation existed.  3.5(4), by engaging

10   in conduct intended to disrupt a deposition by

11   harassing, barraging, or pressuring the witness.

12   4.1(1), by making a false statement of material fact

13   to the witness with regard to whether the witness had

14   a legal obligation to search his phone.  And with

15   respect to his failure to info the witness of the

16   entirety of the Courts order.  4.3, by giving legal

17   advice to an unrepresented person, by virtue of his

18   response to the witnesses question of whether the

19   witness was legally required to search his phone.

20   And 8.4(3), by engaging in conduct involving

21   dishonesty, fraud, deceit or misrepresentation by

22   virtue of his response to the witness's question of

23   whether the witness was legally required to.search

24   his phone.

25       So those are the Courts' concerns about possible

26   rules of professional conduct violations.  We will

27   take that up at the next hearing, now that everyone

1        is on notice of what the Courts specific concerns

2        were, and what specific rules of professional

3        conduct, the Court is concerned might have been

4        violated.  All right.

5            So Attorney Horton, you are more than welcome to

6        stay for the rest of this hearing.  I see that its

7        11:16, so we got you out just in the nick of time.

8        Okay, sir.  So we will see you at the next hearing

9        date.

10           ATTY. HORTON:  Thank you, your Honor.

11           THE COURT:  You're welcome.

12           All right.  So I now want to address the

13       discovery issues.  And I'm going to try to do it in a

14       way that makes sense to me, by sort of breaking it

15       down into different sub-categories.  So let's start

16       with the issue in the motion for the Hillary Clinton

17       deposition.  So the Court in its August 5, 2021

18       order, found that the defendant's Free Speech

19       Systems, LLC, Infowars, LLC, Infowars Health, LLC and

20       Prison Planet, LLC, willfully disregarded the Court

21       ordered procedure when filing their motion to depose

22       Hillary Clinton.

23           The Court further found that the defendant's

24       never took any corrective steps with respect to the

25       improper filing.  And the Court expressed its grave

26       concerns that their actions in the future will have a

27       chilling effect on the testimony of witnesses who

1    would be rightfully concerned that their confidential

2    information, including their psychiatric and medical

3    histories, would be made available to the public.

4        The Court indicated that it would address

5    sanctions at a future hearing, and this is that

6    hearing.  So I don't have a particular order.  I'm

7    thinking that I will start with the defendant's, then

8    hear from the plaintiff's and then return to the

9    defendants, so that the defendants have an

10   opportunity to respond.

11       ATTY. WOLMAN:  Thank you, your Honor.

12       We do take the confidentiality order very

13   seriously and have endeavored to abide it.  There was

14   during a deposition this motion filed.  And at the

15   end of the day it comes down to simply one sentence.

16   That the witness claims not to know how her legal

17   fees were being paid.  That's the only information

18   that I can see in that motion that gives rise to the

19   Courts order.  And you know, it was erroneously

20   believed that that was not subject to the

21   confidentiality order.  The witness herself was not

22   identified.

23       And while it may be a technical violation, and

24   it was not realized to be so at the time -

25       THE COURT:  So do you admit now that it was a

26   violation, whether it's a technical violation or not?

27       ATTY. WOLMAN:  I would say it probably fits

1    within the language of what is protected.  We had

2    concerns as to whether or not it truly was protected.

3    The Court has weighed in.

4    THE COURT:  So let me ask you Attorney Wolman.

5    Do you have any disagreement that the transcript from

6    which that information was taken and filed on the

7    motion in the middle of the deposition apparently,

8    that that transcript had been marked.  Whether you

9    agree with the designation or not, that it had been

10    marked as a protected document.

11    ATTY. WOLMAN:  Yes, it had, your Honor.  And I

12    would also ask that the Court to – I mean, make sure,

13    you know, that we're disambiguating which defendants

14    are at issue.  Not all defendant –

15    THE COURT:  Well I think when I just read my

16    statement, I listed the defendants that were involved

17    in the filing of that motion.  So it's not necessary

18    to do that again.

19    ATTY. WOLMAN:  Okay.

20    THE COURT:  So tell me, because subsequent

21    argument with respect to this issue, the argument was

22    that essentially the protective order, there was no

23    basis for granting the protective order, and the

24    designation was not proper, and so be it.

25    I haven't – where do I see a filing anywhere that

26    corrects what happened or that says this was a

27    mistake?  Or a technical violation?  Or whatever your

1      position is?

2          I'm not saying I agree with it or not.  But,

3      what I saw instead, the subsequent filings on this

4      issue was, Court had no basis for granting that

5      protective order, which by the way, you all filed.

6      The defendant's filed.  And it was a bad designation.

7      Why was that posture taken?

8          ATTY. WOLMAN:  Certainly I think we're entitled

9      to resist any accusation of a violation of a

10     protective order, as any litigant would be.  And

11     that's how we did – we were looking to preserve the

12     issue –

13         THE COURT:  The Court's concern – the Court's

14     concern, Attorney Wolman, is that there were several

15     itineration's of that protective order before the

16     Court granted the protective order in the early days

17     of this case.  And I believe you actually were the

18     one that filed it.  I understand there were

19     discussions with the plaintiff's.  I understand all

20     that.  But that was the protective order that you all

21     asked the Court to approve.  And that – once the

22     Court enters the order, it's a Court order, correct?

23         ATTY. WOLMAN:  Yes it is, your Honor.

24         THE COURT:  I then get argument from your side,

25     from the defendant's, essentially saying that there

26     shouldn't have been a protective order.  There was no

27     good faith basis for it.  So I'm at a loss here.  Is

1   the protective order now something that the

2   defendant's, if they disagree with the designation,

3   don't have to comply with?

4       ATTY. WOLMAN:  No, your Honor.  I think the

5   argument is a little more on the designation itself,

6   not being in good faith, and certainly that we didn't

7   appreciate that this kind of statement that doesn't

8   identify any particular witness, would be subsumed

9   within that protective order.

10      THE COURT:  Say that again?

11      ATTY. WOLMAN:  We didn't identify who it was who

12  was being deposed.  We gave no explanation –

13      THE COURT:  So, is it your –

14      ATTY. WOLMAN:  – first deposition –

15      THE COURT:  – so was the information contained

16  in that motion not information contained from the

17  deposition?

18      ATTY. WOLMAN:  It was, but that the nature of

19  the disclosure itself was not viewed as a violation

20  of that order.  That was – we did not –

21      THE COURT:  So because you didn't list the name,

22  you could take what – so if someone designates a

23  transcript as confidential, or whatever the

24  designation is, anybody in the case can file whatever

25  they want as long as they don't give the name of the

26  deponent?

27      ATTY. WOLMAN:  That as a general – as long as

1    you're not saying who it is, what it is, you know, I

2    think that is – makes it readily identifiable.

3          THE COURT:  So –

4          ATTY. WOLMAN:  Who it is –

5          THE COURT:  So you're – so then – Attorney

6    Wolman, say psychiatric records are produced.  You

7    can just white-out the name of the plaintiff or the

8    patient, and you can – you can put that out there

9    because it doesn't identify the person?

10         ATTY. WOLMAN:  No, your Honor.  But I think we

11   can say that three plaintiff's claim anxiety, seven

12   plaintiff's claim PTSD.  Whatever the numbers may

13   wind up being.  Six plaintiffs have gone to – or some

14   plaintiffs have gone to this particular out of state

15   doctor, and therefore we need a commission to take

16   his or her deposition.

17         We're not identifying who the plaintiffs are,

18   but you have to set forth a reason, and we're not

19   saying anybody's particular information.  Nobody can

20   say which of the multitude of plaintiffs it is.  It's

21   presenting generalized information.  And that was not

22   understood as to what we had agreed on.  And that the

23   designation –. it was not realized that this would –

24   that type of thing would be viewed as a violation of

25   the protective order.  If your Honor is saying that

26   it is, we will certainly abide that order from here

27   on out.

1       THE COURT:  Well I'm concerned – it doesn't seem

2    complicated to me, it actually seems extremely basic.

3    But I'm very concerned.  So as I understand it, the

4    parties are in the middle of a deposition.

5    Deposition testimony is elicited.  In the middle of

6    the deposition, information from that deposition is

7    used, and in the middle of the deposition a motion is

8    filed with information from that deposition.

9        It's pretty rare in my mind to see.  I mean, I'm

10   not sure I've ever seen someone in the middle of a

11   deposition use information from that deposition,

12   while it's still ongoing, and immediately file a

13   motion.  So that was a little unusual.  But I'm just

14   struggling.  I'm not sure that the defendant's

15   understand their obligations under the Court order,

16   that if a deposition transcript is designated by one,

17   two, three; or all the parties, that the information

18   from that deposition cannot be used in the manner

19   that it was used.  And I'm hearing things that

20   concern me.

21       So now your position is we can use, despite the

22   Courts order, we can use information contained – that

23   was elicited in the deposition, as long as we don't

24   identify.  So for example, for example, for example

25   and tell me if I'm wrong.  So if the plaintiff's – if

26   you designated a deposition of one of the defendant's

27   as confidential until you all figured out what

1  portions would be confidential or not, for the

2  purposes of discovery.  And the plaintiff's elicited

3  deposition testimony that one of the defendant's,

4  doesn't matter which one, let's say Prison Planet

5  T.V., LLC.  It really doesn't matter.  But they gross

6  85 billion dollars a year in advertising revenue.

7  The – or is it your position then that the

8  plaintiff's would then be able to put that in a

9  motion, even though you've designated the transcript

10  as confidential?  That one of the defendant's grosses

11  85 billion dollars a year in advertising revenue, as

12  long as they don't say that it was Prison Plant T.V.,

13  LLC because it doesn't identify them?  It could be

14  any of the defendant's?

15  ATTY. WOLMAN:  Well, certainly it would be a

16  fact by case by case scenario, because we've

17  certainly represented that none of the defendant's,

18  except for Free Speech Systems, is the revenue

19  generating entity, because that produces Infowars.

20  So certainly if that were to come in, unless of

21  course somehow it's thought up as being Genesis

22  Communications.  This – with respect to the issue

23  here, it did not directly identify any identifiable

24  witness, whereas that kind of example might.

25  We appreciate your Honor's elaboration of how

26  the order is to be interpreted moving forward.  And

27  we'll abide that.  And we will go forward with that

1    understanding that this is how things are to be

2    treated.  It was not understood that way at the time

3    the commission motion was filed.  And because now

4    that your Honor has clarified, this is how we're

5    going to do it going forward, we are certainly –

6        THE COURT:  All right.  So Attorney Wolman,

7    let's just step back for a bit, if you would?  Let's

8    pull up the protective order that was in effect at

9    the time.  The protective order that you filed.  And

10   point me to the paragraph's that I need to look at,

11   that you now say that it wasn't clear to you that you

12   could apparently use portions of a deposition

13   transcript where the deposition had been marked

14   confidential by a party.  So tell me, the protective

15   order was filed when?

16       ATTY. WOLMAN:  Sorry, what's the entry number,

17   your Honor?

18       THE COURT:  I don't know.  You filed –

19       ATTY. MATTEI:  185.

20       THE COURT:  What is it?

21       ATTY. MATTEI:  185.

22       THE COURT:  All right.  So I'm going to go to

23   the number 185.  That is the proposed order that you

24   actually filed on February 22, 2019, that I granted

25   on that same day.  This was your document, not mine.

26   And tell me the provision that you're suggesting now,

27   you needed further clarification from the Court.

1       And just before we get to that.  Attorney

2    Wolman, just so that we're all on the same page.

3    When - let's say you marked during discovery, let's

4    say that you marked a document as confidential.  And

5    let's say that Attorney Mattei for the plaintiff

6    disagreed with your designation.  What is the

7    procedure that he would follow to challenge the

8    designation?

9        ATTY. WOLMAN:  That would be following the

10   deposition and opportunity to meet and confer.

11       THE COURT:  And then if you met and conferred,

12   and he - and you stood by your designation that

13   that's confidential, but he wanted to use that

14   information in a court filing.  What is he to do

15   then?

16       ATTY. WOLMAN:  He's supposed to file it under

17   seal, or at least seek a sealing.  I don't believe

18   the plaintiff's had done that consistently throughout

19   this case, however.

20       THE COURT:  Just - just let's stick to what the

21   question is.  What's the procedure?  Go ahead.

22       ATTY. WOLMAN:  That one would file that

23   redacted.  File an un-redacted under seal

24   conditionally.

25       THE COURT:  And then the Court makes the

26   determination of whether - of what should happen,

27   correct?

1      ATTY. WOLMAN:  Yes.

2      THE COURT:  Right.  We did that, did we not, on

3  record in the - with respect to your clients?  I

4  think we spent a good solid hour on the record.  I

5  sealed some items.  You withdrew some items.  And I

6  didn't seal some items.  So that was sort of like a

7  challenge, correct, to the designation.

8      ATTY. WOLMAN:  That - well, no, that wasn't a

9  challenge to the designation.  That was as to the

10  issue of sealing.  But we did not do that, for

11  example, with respect to a reply memorandum that was

12  filed un-redacted.

13      THE COURT:  I just want to make sure that

14  there's no concern.  That you have a mechanism and

15  that you understand the mechanism that if - that if a

16  document is designated as confidential or highly

17  confidential, that the procedure that is in place is

18  followed.  I just want to make sure that everyone is

19  on the same page with that so we don't have any

20  problems.

21      So you have a meet and confer.  Then if the

22  document is a document that needs to be filed in a

23  court filing, it's filed under seal.  It's lodged,

24  and then the Court addresses it.  And it either

25  remains - it either can get filed under seal or it's

26  not filed under seal.

27      ATTY. WOLMAN:  Right.  It's hard to point to a

1    specific portion, and certainly I can't - I was not

2    the filing attorney of that motion.  I was busy

3    taking the deposition, your Honor.  But, you know,

4    just in the aggregate, it's unclear that it applied

5    to representations regarding an unnamed witness.

6        THE COURT:  Let's direct ourselves back - I'm

7    still on the protective order.  I pulled it up and

8    I'm just waiting for you, because I don't want any

9    more problems in the future.  So direct me, since I

10   have your document up, direct me to the relevant

11   provision on documents that are designated as

12   confidential.  So when a deposition transcript is

13   designated as confidential or highly confidential,

14   what are you permitted or not permitted to do with

15   that transcript?

16       ATTY. WOLMAN:  Well, paragraph 14-A and 14-B

17   talks about designation of the transcript as

18   confidential information.  It doesn't say what

19   constitutes the confidential information.  It just -

20       THE COURT:  Well, no.  Attorney Wolman, listen

21   to me.  You're - I want - I'm not asking what

22   constitutes confidential information.  This is really

23   not complicated and you're making it more

24   complicated.  A party designates a document, rightly

25   or wrongly, they exercise their right under this

26   protective order to designate a document.

27       We're not addressing as whether anyone agrees or

1      disagrees with the designation.  But once the

2      designation is made to a deposition transcript,

3      whether you agree with it or not, how is that

4      deposition transcript treated?  And that's what I

5      want you to show me in this protective order.

6           ATTY. WOLMAN:  Well the transcript is treated

7      for that time period until the designation is

8      challenged as confidential information, your Honor.

9           THE COURT:  And what paragraph am I looking at,

10     if you can?

11          ATTY. WOLMAN:  Fourteen A and B, your Honor.

12          THE COURT:  Just give me one moment, please.

13     And then 15 maybe, no one may attend or review the

14     transcripts of the portions of any depositions, at

15     which confidential information is shown or discussed,

16     other than persons authorized to receive access to

17     confidential information?

18          ATTY. WOLMAN:  Yes, your Honor.

19          THE COURT:  All right.  So it seems clear to me

20     that if, again, this is the document that you filed

21     and you asked the Court to approve.  It seems clear

22     to me that re-reviewing those paragraphs, it's a

23     pretty straight forward document that if a party

24     exercises its right to designate a document, or a

25     transcript in whole or in part as confidential,

26     there's a process that is to be followed.  And part

27     of that process does not include taking portions of

1    the confidential document and doing anything with it,

2    besides the limited things that are allowed in this

3    protective order.  So would it not include, for

4    example, posting on a website or filing it on the

5    internet in the court file?  Do you agree with that?

6        ATTY. WOLMAN:  I agree.  And it looks like the

7    motion was filed where it was attempted to strip away

8    the confidential information part of that where it

9    did not identify a witness, and but appears that the

10   Court is viewing the – what is confidential and how

11   it's treated broader.  And so we will abide that

12   going forward certainly.

13       THE COURT:  Just give me one moment.  And

14   looking at motion for commission to take Hillary

15   Clinton's deposition that was filed on July 1, 2021,

16   apparently in the middle of the deposition of the

17   lead plaintiff, what portion of – you can just read

18   it to me, because I don't have the transcript of the

19   lead plaintiff.  But, read to me right from that

20   motion what portions in your mind were taken from the

21   confidentially designated deposition.

22       ATTY. WOLMAN:  Certainly your Honor.  There's

23   one sentence.  Everything else is based upon a matter

24   of public record.  So, there's only one sentence.

25   The witness claimed not to know her legal fees were

26   being paid.

27       THE COURT:  Okay.  Thank you.  Anything further?

1    ATTY. WOLMAN:  When someone says refusing to

2    answer, I don't believe is a statement of confident -

3    it's confidential information itself.  So the

4    preceding sentence.  So, no, it would just be that

5    one sentence.

6    THE COURT:  So Attorney Wolman, where did the

7    information come from that a plaintiff has refused to

8    answer the questions?

9    ATTY. WOLMAN:  Well, that's information that -

10   THE COURT:  Some of -

11   ATTY. WOLMAN:  - that's saying - I apologize for

12   interjecting.  Please?

13   THE COURT:  If it - if it came from a transcript

14   that was marked as confidential, then why isn't that

15   confidential?  I don't know.  I wasn't at the

16   deposition, and I don't have the deposition

17   transcript.  But if at the deposition the witness

18   refused to answer a certain line of inquiry, and that

19   was at a deposition where the transcript was marked

20   highly confidential, how could that information be

21   gleaned anywhere else?

22   ATTY. WOLMAN:  I mean, your Honor, it is a

23   little difficult here because we've also called the

24   Court in the middle of confidential depositions.  And

25   the Court has posted transcripts of those colloquies

26   without any form of sealing.  This is - it's an

27   unusual circumstance, but we're talking about

1    questions and non-responses.  I don't think is

2    information that we're dealing with.

3         THE COURT:  So the sentence on advice of

4    counsel, at least one plaintiff has refused to answer

5    how so many of the clients all ended up represented

6    by the same firm.  That was not information that was

7    gleaned from the deposition that we're talking about.

8         ATTY. WOLMAN:  It's not information gleaned from

9    the deponent.  It's an argument of counsel that is

10   not any of the information that it would be subject

11   to the protective order.  The questions and non-

12   answers that just – we were talking to the Court

13   about can we make inquiry as to the settlements.  Can

14   we ask a witness about that, and we were before the

15   Court and there was no effort made to seal anything.

16        THE COURT:  Attorney Wolman, I apologize because

17   it really might be me not understanding what you're

18   saying.  But the sentence that I just recited that

19   refers to how many clients all ended up represented

20   by the same firm.  That was not information that was

21   taken from the confidential transcript?

22        ATTY. WOLMAN:  At that point no transcript had

23.  been prepared, certainly by the –

24        THE COURT:  Attorney Wolman, you're really

25   splitting hairs here and it concerns me that you

26   don't understand what your obligations are under the

27   protective order.  That's why I'm going through this

1    exercise.

2         ATTY. WOLMAN:  Okay.  It's our understanding –

3         THE COURT:  You know what I can do?  I can have,

4    if you can't give me a straight answer, I can have

5    you lodge a copy of the deposition transcript,

6    because I can read.  I can read what this motion that

7    was filed by Attorney Pattis says, then I look at the

8    deposition transcript and I could see if that was

9    contained in there.  I – this is a straight question,

10   and I expect a straight answer.  Unless you don't the

11   answer, which I accept.  If you don't know the answer

12   to something, if you do not know whether that

13   question was asked at that deposition, that's okay

14   with me.

15         Then I will ask someone else if they know, or

16   I'll have the transcript lodged with the Court.  And

17   I can read and I can figure it out.  This is not –

18   I'm not looking for argument on it.  It's just a very

19   simple question that I just can't get a straight

20   answer to.  So you represented to me, and I accept

21   your representation because you're a Commissioner of

22   the Court and you have a duty of candor to the Court.

23   I asked this simple question of what in this motion

24   was taken from the deposition.  Okay.  And you gave

25   me the one sentence.

26         And now we're talking about this other sentence,

27   and since I wasn't at the deposition and I don't

1    presently have a copy of the transcript, I'm asking

2    you the question.  And the question was, the

3    sentence, the preceding sentence on advice of counsel

4    at least one plaintiff has refused to answer how so

5    many of the client's all ended up represented by the

6    same firm.  My question is, at the deposition that

7    we're talking about, was that question asked, the

8    question, how many clients ended up represented by

9    the same firm?  It's a yes or a no, or an I don't

10   know.

11        ATTY. WOLMAN:  I believe it was asked.  I don't

12   have the transcript in front of me.  But again, it's

13   a question as to whether or not the confidential

14   information is what the witness testifies to, rather

15   than the question and non - arguments of counsel and

16   non-responses.  Because we haven't treated it that

17   way throughout this case, when we called the Court

18   during depositions designated confidential.  So

19   questions and non-responses have not been treated

20   that way.

21        THE COURT:  Anything further?

22        ATTY. WOLMAN:  No, your Honor.

23        THE COURT:  Thank you.  Who's arguing in

24   opposition?

25        ATTY. MATTEI:  I am, your Honor.

26        THE COURT:  When you're ready.

27        ATTY. MATTEI:  Well, I have to say, I am more

1    alarmed now than I was before the argument.  Because

2    what I've just heard is counsel for Alex Jones say,

3    that prior to the very middle of this hearing, he

4    thought it would have been acceptable to disseminate

5    to the world, personal, highly sensitive information

6    about my client's, so long as he didn't identify them

7    by name.

8        There is no reading of the protective order that

9    would permit that.  Any material, whether it's a

10    document or a deposition transcript that is

11    designated as confidential, and any information

12    derived from that confidential information, is

13    protected, period.  The protective order doesn't

14    speak in terms of, well, if you don't identify the

15    person by name, it applies specifically to

16    information.

17        And what happened here, we're in the very first

18    deposition of the very first plaintiff.  In the

19    middle of the deposition after our clients had been

20    made aware that their information was protected by a

21    protective order and that the Court had the authority

22    to do that and enforce it.  They disseminate to the

23    public, information that is clearly and unequivocally

24    and undeniably drawn from the deposition testimony

25    itself.

26        And I sat here during this last colloquy, Judge,

27    where you're trying to get Attorney Wolman to simply

1    admit that the statement in their motion for a

2    commission, quote, on advice of counsel, at least one

3    plaintiff has refused to answer how many of the

4    clients all ended up represented by the same firm.

5    He refused to admit that that statement was drawn

6    from the deposition, when of course that's the only

7    place it could have been drawn from.  It's the first

8    deposition.  They're claiming the plaintiff refused

9    to answer.  A refusal to answer, I guess in Attorney

10   Wolman's tortured reading isn't actually information.

11   Perhaps it doesn't even count as an answer itself.

12       When they're asked, as they were, and I'm happy

13   to provide the transcript and Attorney Wolman knows

14   this, although he won't admit it to the Court, they

15   were asked – the plaintiff was asked repeatedly, are

16   you refusing to answer the question?

17       And the witness responded.  I'm refusing to

18   answer that question on the advice of counsel.

19   Precisely what counsel with the Jones defendant's put

20   in their motion.  And yet we're told by Attorney

21   Wolman that that does not count as confidential

22   information.  And so we are left to wonder what else

23   the Jones defendants may unreasonably later claim was

24   unclear about the protective order.

25       And I want to go back to the context here,

26   because as troubling as it was that they were

27   essentially laying in weight during the first

1    deposition, to disclose confidential information.

2    The context here matters.  This is the first

3    deposition of the first plaintiff, in which

4    undoubtedly highly sensitive information concerning

5    their lives, their medical history, their mental

6    health history, issues relating to damages; issues

7    relating to their deceased children are going to be

8    discussed.  The most highly sensitive and personal of

9    information.  And in that first deposition, they

10   choose to go public with information that our clients

11   had every reasonable expectation would be protected.

12       And it occurred in the midst of a 13 hour

13   deposition.  No other deposition has lasted that

14   long.  And the reason that they did that, is to send

15   the chilling message that you've already identified

16   to future witnesses and future plaintiff's, that they

17   better be careful about discussing openly their

18   personal information, their personal details of their

19   lives, because there may be a chance that before

20   their lawyers can protect them, Jones' lawyers are

21   going to the court and put it in the pleading.

22       And we've since received information that other

23   non-party witnesses are concerned about Jones'

24   conduct and his counsels' potential retaliation for

25   providing honest testimony in this case.  So it's no

26   accident that this happened there in the first

27   deposition.  It's no accident that it happened during

1    the context of what we consider to have been an

2    abusively long deposition.  And if you ever have a

3    chance to read the entire transcript, I'm sure you

4    would agree.  It was designed to set a tone for their

5    conduct for the rest of the case.  And that's what

6    they did.  And these unconvincing pleas that somehow

7    the protective order was unclear, because number one,

8    we didn't think that it applied to information, we

9    thought it only applied to the identities of the

10   people giving information.  That's the first argument

11   we heard today.  And then number two, well if it's a

12   non-response, although that may be information, it's

13   unclear whether that's confidential information,

14   because it's a non-response.  It is, I think

15   inexcusable that our clients would give information

16   to Mr. Jones and his attorney's, when they have shown

17   such a disregard for the protective order.

18        And we would ask the Court to make a finding

19   that the conduct here was likely to lead to the

20   chilling effect that the Court has already expressed

21   it had grave concerns about.  And even more so now,

22   given counsel's refusal initially to acknowledge that

23   there had even been a violation, and then his

24   tortured answers and responses to the Courts

25   questions.

26        ATTY. WOLMAN:  your Honor, it's my — actually

27   it's my confidential —

1      ATTY. CERAME:  Your Honor –

2      THE COURT:  One moment.  One moment.  Attorney

3  Cerame.

4      ATTY. CERAME:  Yes, your Honor.  I was actually

5  present at this deposition.  I just want to correct a

6  couple of representations that were made by Attorney

7  Mattei, that I felt I need to correct the record or

8  just set something straight.

9      It was a long deposition.  It was also one where

10  I participated very actively.  I don't always do so.

11  In part because it was the first deposition.  I

12  recall that I started asking questions about 5 p.m.

13  The witness was offered repeatedly if she wanted to

14  come back another day.  She declined to do so.  So I

15  started late, right?  So I took a long time too.  I

16  had a lot of questions.  And I took a long time, and

17  I was very – for a number of reasons.  It might be

18  apparent in the transcript.  I just wanted to say

19  that.

20      For one thing in response to what Attorney

21  Mattei said here.  There were a number of – it was

22  contentious.  There was – it was unusually

23  contentious as someone coming in.  And I wanted to

24  say that too.  Some of the accusations I hear from

25  Attorney Mattei seem to be Ad hominem's, presuming to

26  derive intent.  None of this personal identifying

27  information was really – is what was discussed in any

1    of the motions.  But it was a very contentious

2    deposition, and I just wanted to note that for the

3    record, so the Court had that context of things.

4    That's all.

5         THE COURT:  Thank you.

6         ATTY. WOLMAN:  And I would ask –

7         THE COURT:  One moment.  Before I hear from

8    Attorney Wolman, I did want to ask you Attorney

9    Mattei, if there was any other portion of what was

10   designated as confidential.  Any other sentences in

11   that motion for commission on the Hillary Clinton

12   deposition that we're taken from the deposition.

13   Since I don't have the transcript.

14        ATTY. MATTEI:  There were no other sentences of

15   their motion for commission that were drawn from the

16   deposition.  We do think that including them in a

17   motion for commission for Hillary Clinton's

18   deposition and some of the other statements within

19   the motion, were designed to ostensibly identify who

20   the plaintiff was, because it's public knowledge

21   about Ms. Lafferty's involvement in Ms. Clinton's

22   campaign.  And so we think that that was essentially

23   a backdoor way to identify who the plaintiff was.

24        But the only two sentences are the ones that

25   were specifically drawn from the deposition itself,

26   are the ones that we cited in our motion.

27        THE COURT:  Thank you.  Attorney Wolman, you

1    have the floor.

2         ATTY. WOLMAN:  Your Honor, I'm not aware of any

3    backdoor way.  We could have been deposing any

4    witness.  And in fact, the only parties that have

5    disclosed who the witness was, was the plaintiff's.

6    The motion does not say it was the first deposition

7    of the first plaintiff at all - or it's the lead name

8    plaintiff, in any way, shape or form.  We haven't

9    said that in any respect, in terms of the - in that

10   motion.  That's the plaintiff's disclosure and it's

11   theirs to make.  Who says it's my disclosure - mine

12   to make that at least the question itself, not

13   necessarily the answer, or the non-answer is mine.

14        But what the question is, that's certainly my

15   information to disclose or at least - or other

16   co-counsel, as the case may be.  There is no -

17   there's nothing chilling here.  This was - I

18   understand the Court has viewed that, but we need to

19   view it in the context.  This was not the issue of

20   who saw what doctor, with what condition.  And who

21   has done what?  What's their income?  What's their

22   damages?  It's nothing of the sort.  It's a motion

23   for commission, where if the Court views it as two

24   sentences, we got the non-answer is an answer.  Okay,

25   fine.  And we'll understand that again going forward.

26        This was not - this is the first time that had

27   come up.  There have been no other breaches from our

```
 1      part since.  We've taken many depositions, and that
 2      hasn't happened in the slightest.  No one has been
 3      chilled.  This was something designed as a motion to
 4      take the commission and to the extent it was
 5      misinterpreted as to what could be revealed and what
 6      couldn't be.  We understand that and we have ever
 7      even since the motion for sanctions was filed in the
 8      immediate aftermath, we haven't done anything of the
 9      sort.
10          We've been very conservative in our approach
11      here, with the exception of discussions with the
12      Court as to questions and answers at depositions that
13      the Court needs to adjudicate.  So, we firmly respect
14      the Court's protective order.  We recognize that it's
15      an order we agreed to and it was just misunderstood
16      that -
17          THE COURT:  Attorney Wolman, just to correct
18      what you're saying.  It's an order that you filed,
19      that you submitted to the Court.  You didn't agree to
20      it.  It's not an order of the Court that you agreed
21      to.  You actually filed it.
22          ATTY. WOLMAN:  And people -
23          THE COURT:  Your office filed it and drafted it.
24      Maybe you had conversations with the plaintiff's
25      counsel.  You asked the Court to approve the order,
26      correct?
27          ATTY. WOLMAN:  I understand.  And you know,
```

1   Legislators often draft things that they don't fully

2   comprehend the implications of their own language.

3   So it can happen that an author doesn't really

4   realize that this is what's the full ramifications.

5       We've got thousands of statutes on the books,

6   where the Legislators didn't realize that they'd be

7   applied in a particular way.  But, if we're going to

8   do a textural analysis, it is what it is.  And

9   certainly we respect this is how the Court is

10  interpreting the order.  We didn't expect it would be

11  that way.

12      And now we understand that this is how it's

13  being interpreted, and we fully abided it, even once

14  the hint of a violation raised by opposing counsel

15  was made.  We've fully gone with that rigorous

16  interpretation.

17      ATTY. MATTEI:  Just a couple of points.

18      THE COURT:  Can I just you Attorney Wolman, what

19  steps when you said as soon as it was filed.  I did

20  not see any corrective steps taken by the defendant's

21  once the confidential information was filed in the

22  Hillary Clinton motion.  I did see the July 19, 2021

23  filing, which brought forth other arguments,

24  different arguments that you're making today.  So

25  today this is more of a, we were confused, we didn't

26  think that it applied to information contained in the

27  confidential depositions, as long as we didn't give

1     the name.  That's a new argument from the July 19

2     filing.

3          And the other new argument is, well, if – we

4     didn't realize that it was an objection or

5     non-responsive that we didn't realize that was

6     confidential either.  Those are different argument's

7     that you made in the – from the July 19th filing,

8     which those arguments were more along the lines were,

9     well it was a bad designation, and shouldn't have

10    been designated, and the Court had no good cause to

11    issue a protective order in the first place.  The

12    protective order that you asked the Court to grant

13    that you filed.  So do you want to address that at

14    all?

15         ATTY. WOLMAN:  Certainly, your Honor.  I believe

16    that the arguments that I've made today are subsumed

17    within the filing.  That – to the extent that there

18    was a violation, you know, this was not an

19    intentional violation.  And that goes to, again, this

20    is not what we expected it to mean.

21         THE COURT:  And when you say it wasn't

22    intentional, how was it not intentional exactly?

23         ATTY. WOLMAN:  The witness was not specifically

24    identified.  It was not meant to violate any

25    witnesses' confidentiality, but rather simply to

26    raise a generic issue with the Court as to plaintiffs

27    in general.  Not really revealing any one particular

1     witnesses confidential information.

2         THE COURT:  Attorney Cermane, anything further?

3         ATTY. CERAME:  I would note just briefly.  I

4     think that what Attorney Wolman is saying is, that

5     there was a difference of opinion about the

6     interpretation of the order.  I stay so - I don't

7     want to get anywhere near that I'll say, because it

8     is so contentious.  It seems like to me just I can

9     understand how someone might have a different

10    understanding of the order.  The parties might have a

11    different understanding of it.  That's all I have to

12    say, your Honor.

13        THE COURT:  So I do intend to impose sanctions.

14    I do think that - I reject the arguments that were

15    made in the July 19, 2021 filing by the defendant's.

16    I reject the arguments that were made today by

17    defense counsel.  I think that the arguments were

18    baseless, and I think the behavior really is

19    unconscionable.  There is no confusion.  There can be

20    no confusion about a very straight forward protective

21    order that counsel themselves filed and asked the

22    Court to approve.  And I am concerned about a

23    chilling effect on the testimony of other witnesses.

24        So we are going to leave and I may schedule

25    another court date because there's a lot of ground to

26    cover.  The next time we convene, I want to address

27    also the Google analytics documents, the social media

 1          documents and any other discovery issues.  So it may

 2          very well – and address what sanctions are going to

 3          enter, so it may very well be that we have another

 4          hearing before our hearing in November.  Because we

 5          really have quite a bit of ground to cover.

 6              Because of the concerns that I've voiced, and

 7          because of what I've heard from counsel for the Alex

 8          Jones defendant's and in part Attorney Cerame,

 9          because of your comments, I am very concerned that

10          the defendant's in this case having expressed

11          confusion of a very clear protective order, that

12          there are going to be problems in the future.  I

13          suggest strongly for your own interests, as well as

14          your client's interests, that you are err on the side

15          of the caution and seek advice from the Court if you

16          have any concerns about how to proceed.

17              So rather than just file a motion, where you're

18          concerned whether or not, given what you've said,

19          that you have any concerns that may be confidential

20          information.  That you somehow seek the Court's

21          intervention, so that you don't get yourself in a

22          situation where more damage is done.

23              So with that, we'll adjourn on this matter.

24          Thank you, counsel.

25 (The matter concluded.)

26

27

```
DKT NO:  X06-UWY-CV186046436-S      :  COMPLEX LITIGATION DKT

ERICA LAFFERTY
                                    :  JUDICIAL DISTRICT WATERBURY
v.
                                    :  AT WATERBURY, CONNECTICUT

ALEX EMRIC JONES                    :  OCTOBER 20, 2021
DKT NO:  X06-UWY-CV186046437-S

WILLIAM SHERLACH

v.

ALEX EMRIC JONES

DKT NO:  X06-UWY-CV186046438-S

WILLIAM SHERLACH

v.

ALEX EMRIC JONES
```

## C E R T I F I C A T I O N

I hereby certify the foregoing pages are a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, G.A. #4, Waterbury, Connecticut, before the Honorable Barbara Bellis, Judge, on the 20th day of October, 2021.

Dated this 21st day of October, 2021 in Waterbury, Connecticut.

_Darlene Orsatti_

Darlene Orsatti

Court Recording Monitor