# EXHIBIT 21

STATE OF CONNECTICUT

| NO.   X06-UWY-CV-18-6046436 S | : | SUPERIOR COURT |
|---|---|---|
| ERICA LAFFERTY, ET AL | : | COMPLEX LITIGATION DOCKET |
| V. | : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL | : | OCTOBER 28, 2022 |

| NO.   X06-UWY-CV-18-6046437 S | : | SUPERIOR COURT |
|---|---|---|
| WILLIAM SHERLACH | : | COMPLEX LITIGATION DOCKET |
| V. | : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL | : | OCTOBER 28, 2022 |

| NO.   X06-UWY-CV-18-6046438 S | : | SUPERIOR COURT |
|---|---|---|
| WILLIAM SHERLACH, ET AL | : | COMPLEX LITIGATION DOCKET |
| V. | : | AT WATERBURY |
| ALEX EMRIC JONES, ET AL | : | OCTOBER 28, 2022 |

## **MEMORANDUM IN OPPOSITION TO AWARD OF PUNITIVE DAMAGES**

Pending before the Court is the question of punitive damages after the jury's awarding attorneys' fees and costs as a form of common law punitive damages. The award was in addition to approximately $1 billion in compensatory damages to 15 plaintiffs for reputational harm and emotional distress. Also pending is whether, and if so, to what extent, to award punitive damages on the statutory claim asserting a violation of the Connecticut Unfair Trade Practices Act (CUTPA). For the reasons stated below, the defendants ask the Court not to award CUTPA punitive damages, and to award nominal punitive damages on the common law counts. The defendants contend

that given the size of the compensatory damages award, the nature of the case presented to the jury, and the arguments of counsel, the compensatory damages award in this case are the functional equivalent of punitive damages. The defendants incorporate the arguments made in their motion for a new trial and in their remittitur motions, also pending before the Court, in this brief. Those briefs were filed on October 21, 2022. The plaintiffs have been given until the end of November to file responsive pleadings.

The plaintiffs contend that substantial punitive damages are warranted on the grounds the defendants' conduct was, and potentially remains, reprehensible, and that Mr. Jones is recalcitrant. The request also sounds in unsupported speculation about the purported wealth of the defendants, this despite the fact that one of the defendants, Free Speech Systems, LLC, is in bankruptcy, and was in bankruptcy, at the time this case was tried. Their moving papers suggest that an award reaching potentially into the multiple trillion dollar range is appropriate, a suggestion offensive both to common sense and to due process of law.

I. **The Compensatory Damages Award Achieved The Purpose Of Punitive Damages**

The damages awards in this case are substantial and were intended to cover both past emotional distress and foreseeable emotional distress, as well as past and future reputational harm.  Both forms of damages are intangible and difficult to value. But counsel asked for more than these intangible damages: as counsel asserted in opening statements, the jury was being asked to "stop Mr. Jones." As counsel asserted in questioning of Mr. Jones: "You're going to do it again, aren't you?"[1]  At closing,

---

[1] The trial was livestreamed. The relevant portion of the cross-examination of Mr. Jones on this topic can be viewed here. https://m.youtube.com/watch?v=jmzGSZRlNJo&t=60s

counsel again suggested that the jury needed to award damages sufficient to deter Mr. Jones from speaking about the Sandy Hook Elementary School shootings, or the plaintiffs, ever again. To show the jury just how long that future might be for each plaintiff, the plaintiffs requested, and Court gave, the jury life expectancy numbers for each plaintiff in the jury charge. These arguments and this evidence were intended, in whole or in part, to encourage the jury to award a sum that would deter Mr. Jones from speaking; indeed, the sum awarded has the potential of crippling Mr. Jones' ability to operate Free Speech Systems, LLC, – the most potent form of deterrent available under civil law. Additional damages are surplusage.

The law is clear, punitive damages are warranted when misconduct rises to such a level that a civil fine that is punitive in character is required. These damages both punish and deter.

> While compensatory damages are intended to redress the concrete loss that a plaintiff has suffered by reason of the defendant's wrongful conduct, punitive damages … operate as private fines intended to punish the defendant and to deter future wrongdoing. *In re Simon II Litigation*, 407 F.3d 125, 135-36 (2d Cir. 2005) (citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001) (internal quotations omitted). Punitive damages are awarded for the purpose of deterrence and retribution. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). Accordingly, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id*. at 419.

*Gragg v. Int'l Mgmt. Group (UKL), Inc*, 2009 U.D. Dist. LEXIS 35736., *10.

There were no "concrete" losses here. That is not to suggest that the harm the plaintiffs claim is insignificant. It is simply to say that compensation for that harm in the context of the arguments of counsel and the evidence presented makes it impossible to distinguish "concrete less" and those additional damages necessary to serve the twin purposes of punishment and deterrence.

To the degree that the compensatory damages in this case were intended to cover the future conduct of Mr. Jones and were designed to deter him, these damages mirror one purpose of punitive damages: deterrence. As such, an additional award of punitive damages would be duplicative. Indeed, arguments about future emotional harm and the deterrent value of a large money damages award converged in such a manner as to permit the amount of punitive damages to appear in camouflage under the guise of compensatory damages.

To the degree that the award is both substantial and unprecedented, it is by its very nature punitive, another purpose of punitive damages. Few defendants alive could pay damages of this sum. Indeed, most defendants would be driven into bankruptcy, their livelihood destroyed, and their future transformed into the bleak prospect of a judgment debtor saddled for decades with a debt that cannot be satisfied. To regard this as anything other than punishment would be unjust.

The jury was presented with no evidence about the net worth of the defendants. The only evidence of finances came in the form of leading questions put to Free Speech System, LLC's, corporate representative, who adopted the suggestion of counsel that the company had revenue of somewhere between $100 million and $1 billion during a relevant time period. No evidence was offered, or suggested, about whether this was a gross or net sum. No evidence was offered as to the costs of goods sold, the expenses necessary to operate such a business, and what, if any, profits the defendants made at any time during the trial, this despite the fact that the plaintiffs had disclosed a financial expert. The trial court ruled in limine that the jury could not learn that Free Speech Systems, LLC, was in bankruptcy. There simply is nothing other than speculative suggestions in this record as to the wealth of either defendant – other than snippets of

evidence of gross receipts on isolated days, passing reference to travel on a private jet, and other essentially anecdotal evidence.

## II. If The Court Determines That Punitive Damages Should Nonetheless Be Awarded, Then Those Damages Should Be Limited To Common Law Punitive Damages, And No CUTPA Punitive Damages Should Be Awarded

The jury awarded common law punitive damages of attorneys' and costs. It was not asked to consider the question of CUTPA punitive damages arising under Connecticut General Statutes Section 42-110g(aA). That latter question is one the legislature has left to the discretion of the trial court. In this case, given the amount of attorneys' fees at issue – the measure of common law punitive damages -- no award of CUTPA punitive damages is appropriate or just.

Our Supreme Court has rejected arguments that CUTPA punitive damages should be limited to attorneys' fees on the grounds that had the legislature intended to impose such a limitation, it would have done so. *Ulbrich v. Groth*, 310 Conn. 375, 454 (2013). Even so, our Court recognizes the limitations that due process places on the award of such damages:

> We are persuaded … that in determining whether a punitive damages award pursuant to § 42-110g (a) is so excessive as to constitute an abuse of discretion, the court should consider the factors that the court in *Exxon Shipping Co.*[*v. Baker*, 554 U.S. 471 (2008)] discussed. These include the "degrees of relative blameworthiness," i.e., whether the defendant's conduct was reckless, intentional or malicious; *Exxon Shipping Co. v. Baker*, supra, 554 U.S. 493; whether the defendant's "[a]ction [was] taken or omitted in order to augment profit"; id., 494; see also id., 503 (some courts consider whether wrongful conduct was profitable to defendant); whether the wrongdoing was hard to detect; id., 494; whether the injury and compensatory damages were small, providing a low incentive to bring the action; id.; and whether the award will deter the defendant and others from similar conduct, without financially destroying the defendant. Id., 504; see also *State Farm Mutual Automobile*. *Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003) (when determining whether punitive damages award comports with constitutional due process principles, courts should consider "[1] the degree of reprehensibility of the

defendant's misconduct; [2] the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and [3] the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases"); *Vasbinder v. Scott*, 976 F.2d 118, 121 (2d Cir. 1992) ("because neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute a windfall to the individual litigant" [internal quotation marks omitted]). Of these factors, the reprehensibility of a defendant's conduct is the most important. *State Farm Mutual Automobile Ins. Co. v. Campbell*, supra, 419. Reprehensibility is determined by "considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident." Id.

*Ulbrich v. Groth*, 310 Conn. 376, 454-456 (2013).

In this case, the plaintiffs' objectives are clearly to "financially destroy the defendants," a factor that is expressly prohibited as a proper function of punitive damages. *Exxon*, 554 at 504; *State Farm*, 538 U.S. 418. However eye-catching and newsworthy it was to suggest, as the plaintiffs did in their papers, that an award of punitive damages as high as $2.75 trillion might be appropriate -- (mulitiplying the number of social media impressions testified to by Mr. Watts – 550,000,000 -- times $5000, a per occurrence fine upheld previously in a CUTPA punitive damages context) – the result is simply absurd and promotes scorn for the law.

The jury's award of attorneys' fees, as argued below, infra., could be as high as almost $320 million dollars, yielding a total award of nearly $1.3 billion dollars.[2] There is no lawful purpose to an award in excess of that sum. To suggest, as the plaintiffs do, that Mr. Jones's recalcitrance justifies even more misses an essential point: The verdict as rendered is so high it creates a situation of impossibility for the defendants: They will

---

[2] At this point, the defendants are without any basis to estimate what the claimed costs will be. Counsel for both parties are continuing their efforts to arrive at a set of stipulations that will yield an efficient determination of that sum.

never be able to pay the judgment as it is. There is no incentive even to try to achieve the impossible.  Pling more on changes nothing. If anything, it lends a patina of dark irony to this case: Mr. Jones was saddled with a debt impossible to pay – it won't silence him, it will simply encourage him, and his followers, to wonder whether justice was done in this case, a factor that would further hold the plaintiffs out to potential scorn by those who follow Mr. Jones.

### III.     The Punitive Damages Award For Common Law Damages Should Be Limited To What Due Process Requires

Without waiving his objection to an award of more than nominal attorneys' fees notwithstanding the jury's verdict, the defendants concede that the Court could award fees consistent with the contingency fees reflected in the plaintiffs' retainer agreements. In this case, attorneys' fees could be as high as almost $320 million, assuming that the plaintiffs signed retainer agreements with their counsel agreeing to such a one-third contingency fee and that the necessary waiver of fee caps were signed. Three hundred and thirty-plus million dollars in attorneys' fees is extraordinary and would, in any other circumstance, be unreasonable.

If the purpose of punitive damages is to assure "full compensation" for the plaintiff, then the logic is inescapable – punitive damages in the amount of attorneys' fees may be appropriate. There simply isn't a case assessing common law punitive damages in case involving emotional distress and reputational damages of nearly $1 billion to illustrate what a reviewing court might regard as the upper limit of what is reasonable.

Our Supreme Court has provided guidance on the purpose of an award of attorneys' fees.

> [W]hen viewed in light of the ever-rising costs of litigation, our rule does in effect provide for some element of punishment and deterrence in addition to the compensation of the victim. Thus, in limiting punitive damage awards to the costs of litigation less taxable costs, our rule fulfills the salutary purpose of fully compensating a victim for the harm inflicted on him while avoiding the potential for injustice which may result from the exercise of unfettered discretion by a jury." *Waterbury Petroleum Products, Inc.* v. *Canaan Oil & Fuel Co.*, 193 Conn. 208, 237-38, 477 A.2d 988 (1984); see also *Miller* v. *Drouin*, 183 Conn. 189, 190, 438 A.2d 863 (1981); *Doroszka* v. *Lavine*, 111 Conn. 575, 578, 150 A. 692 (1930).

*Bodner v. United Servcs. Auto Ass'n*, 222 Conn. 480, 492 (1992).

> While compensatory damages are intended to redress the concrete loss that a plaintiff has suffered by reason of the defendant's wrongful conduct, punitive damages … operate as private fines intended to punish the defendant and to deter future wrongdoing." *In re Simon II Litigation*, 407 F.3d 125, 135-36 (2d Cir. 2005) (citing *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001) (internal quotations omitted). Punitive damages are awarded for the purpose of deterrence and retribution. *State Farm Mutual Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003). Accordingly, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *Id.* at 419.
>
> In *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2626, 171 L. Ed. 2d 570 (2008), the Court held that "[a]lthough we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, we have determined that few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process. When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." (citing *State Farm*, 538 U.S. at 425) (internal quotations omitted).

*Gragg v. Int'l Mgmt. Group (UKL), Inc*, 2009 U.D. Dist. LEXIS 35736., *10, 11.

The absence of "concrete loss" in this case makes the assessment of punitive damages troublesome, especially where deterrence was argued in the context of the claim for compensatory damages.

The defendants have no interest in attempting to stand between the plaintiffs and their counsel as to the reasonableness of the attorneys' fees counsel may recover. However, Rule 1.5 of the Rules of Professional Conduct do prohibit the recovery of unreasonable fees. "A lawyer shall not make an agreement for … an unreasonable fee." The Commentary on Rule 1.5 provides scant guidance on the upper limit of contingency fees, assuming, arguendo, that as a matter of law there is an upper limit.

> Contingent fees, like any other fees, are subject to the reasonableness standard of subsection (a) of this Rule. In determining whether a particular contingent fee is reasonable, or whether it is reasonable to charge any form of contingent fee, a lawyer must consider the factors that are relevant under the circumstances. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage allowable, or may require a lawyer to offer clients an alternative basis for the fee. Applicable law also may apply to situations other than a contingent fee, for example, government regulations regarding fees in certain tax matters. In matters where a contingent fee agreement has been signed by the client and is in accordance with General Statutes § 52-251c, the fee is presumed to be reasonable.

Commentary, Rule 1.5.

The defendants are not suggesting or alleging misconduct in the fee structure in this case. They simply note that the magnitude of the attorneys' fee award in this case could be unprecedented for a case of this sort. This court has supervisory authority over the administration of justice. The defendants suggest that Chief Disciplinary Counsel be ordered to appear at the hearing on the reasonableness of fees so as to provide the court with the benefit of his experience and expertise on the topic.

## IV.     Conclusion

The defendants request that this court deny the plaintiffs' request for CUTPA punitive damages, and limit the attorneys' fee award in the common law counts to a nominal sum, such as one dollar. The defendants as yet lack sufficient information to assess the claim for costs and reserve the right to oppose excessive costs when further information becomes available.

Dated: OCTOBER 28, 2022
Alex Jones, Free Speech Systems, LLC;

BY:/s/ Norman A. Pattis /s/
/s/ Kevin M. Smith /s/
Norman A. Pattis
Kevin M. Smith
PATTIS & SMITH, LLC
Juris No. 423934
383 Orange Street
New Haven, CT 06511
V: 203-393-3017 F: 203-393-9745
npattis@pattisandsmith.com
ksmith@pattisandsmith.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been emailed and/or mailed, this day, postage prepaid, to all counsel and pro se appearances as follows:

**For Plaintiffs:**
Alinor C. Sterling, Esq.
Christopher M. Mattei, Esq.
Matthew S. Blumenthal, Esq.
KOSKOFF KOSKOFF & BIEDER
350 Fairfield Avenue
Bridgeport, CT 06604

**For Trustee Richard M. Coan**

Eric Henzy, Esq.
ZEISLER & ZEISLER P.C.
10 MIDDLE STREET
15TH FLOOR
BRIDGEPORT, CT 06604

/s/ Norman A. Pattis /s/
Norman A. Pattis, Esq.