# EXHIBIT 77

```
X06-UWY-CV18-6046436-S          :  SUPERIOR COURT

ERICA LAFFERTY                  :  COMPLEX LITIGATION DOCKET


v.                              :  AT WATERBURY, CONNECTICUT


ALEX EMERIC JONES               :  SEPTEMBER 22, 2022
-----------------------------------------------------------------
X06-UWY-CV18-6046437-S          :  SUPERIOR COURT

WILLIAM SHERLACH                :  COMPLEX LITIGATION DOCKET


v.                              :  AT WATERBURY, CONNECTICUT


ALEX EMERIC JONES               :  SEPTEMBER 22, 2022
-----------------------------------------------------------------
X06-UWY-CV18-6046438-S          :  SUPERIOR COURT

WILLIAM SHERLACH                :  COMPLEX LITIGATION DOCKET


v.                              :  AT WATERBURY, CONNECTICUT


ALEX EMERIC JONES               :  SEPTEMBER 22,2022
```
_____

           BEFORE THE HONORABLE BARBARA BELLIS, JUDGE
**VOLUME:  1 OF 4**
**WITNESS:  Alex Jones, Start 10:54:23 -End: Ongoing**

A P P E A R A N C E S :


    Representing the Plaintiffs:
        ATTORNEY CHRISTOPHER MATTEI
        ATTORNEY ALINOR STERLING
        ATTORNEY JOSHUA KOSKOFF
        ATTORNEY MATTHEW BLUMENTHAL

    Representing the Defendant:

        ATTORNEY NORMAN PATTIS



                              Recorded By:
                              Darlene Orsatti
                              Transcribed By:
                              Peggy DiVito
                              Court Recording Monitor
                              300 Grand Street
                              Waterbury, CT  06702

```
1              THE COURT:  Good morning, Marshal.  Good
2         morning, everyone.  Please be seated.
3              All right.  For the record we are in week two,
4         day seven of the Lafferty versus Jones matters.  If
5         counsel could please identify themselves for the
6         record.
7              ATTY. MATTEI:  Good morning, Your Honor.  Chris
8         Mattei on behalf of the plaintiffs, joined by Alinor
9         Sterling and Josh Koskoff.
10             ATTY. STERLING:  Good morning, Your Honor.
11             ATTY. PATTIS:  Good morning, Judge –
12             ATTY. KOSKOFF:  Good morning, Your Honor.
13             ATTY. PATTIS:  Good morning, Judge.  Norm Pattis
14        on behalf of Mr. Jones and Free Speech Systems.
15             THE COURT:  All right.
16             ATTY. PATTIS:  And Mr. Jones is present with me
17        today.
18             THE COURT:  Good morning, sir.
19             MR. JONES:  Hi.
20             THE COURT:  So I understand we just need to
21        reconfigure some seats and as soon as that happens
22        we'll get –
23             ATTY. PATTIS:  While –
24             THE COURT:  - started.
25             ATTY. PATTIS:  - that happens may we approach on
26        a brief housekeeping matter?
27             THE COURT:  Okay.
```

1       ATTY. PATTIS:  It really is housekeeping.

2       (Sidebar begins)

3       THE COURT:  You're out of K-cups?

4       ATTY. PATTIS:  You know, I can't remember – I –

5       I –

6       THE COURT:  (Indiscernible).

7       ATTY. PATTIS:  - I seem to recall the Court

8       saying it didn't want a disruption.  I – I – I've got

9       associates coming in today, are they going to be able

10      to sit ahead of the bar, even if they arrive during

11      proceedings.  They're covering various court

12      proceedings elsewhere in the state.

13      THE COURT:  Not - nobody can come or go from

14      this point forward but the one (indiscernible).

15      ATTY. PATTIS:  Okay.

16      THE COURT:  Okay.

17      ATTY. PATTIS:  And then –

18      THE COURT:  No problem.

19      ATTY. PATTIS:  - would – I'm asking for – I've

20      been called in to jury selection for a murder trial

21      in this building to – at 2:00, just how that –

22      THE COURT:  Just cut yourself in half.

23      ATTY. PATTIS:  Yeah.  No, or clone myself and

24      the jury'd be twice as happy.  I'm asking for some

25      intervention there if I can get it.  I'm – I alerted,

26      Ron.  I don't know who the new presiding Judge is

27      here –

1          THE COURT:  Can you –

2          ATTY. PATTIS:  - do you know him?

3          THE COURT:  - talk to them and see if they need

4     to talk to him?

5          THE CLEKR:  Absolutely.

6          THE COURT:  Okay.  It shouldn't be an issue.

7          ATTY. PATTIS:  Yeah, you would hope.

8          THE COURT:  Right.

9          All right.  Any other matters before we proceed?

10          ATTY. PATTIS:  Nothing from the defense, Judge.

11          ATTY. MATTEI:  No, Your Honor.

12          (Court confers with staff)

13          THE COURT:  Who is the next witness going to be,

14     Attorney Mattei?

15          ATTY. MATTEI:  Alex Jones.

16          THE COURT:  All right.  So Norm – Attorney

17     Pattis, did you want me to canvass your client about

18     the different things that we talked about or in

19     hindsight is it not necessary?  It's entirely up to

20     you.  It's entirely up to you and your client.

21          ATTY. PATTIS:  You know, I – Judge, I don't want

22     to intrude into their attorney-client privilege but

23     as your officer, we believe we are prepared to go

24     forward.  The Court indicated that it might do so and

25     I don't take a position on that, so I'll leave that

26     to the discretion of the Court.

27          THE COURT:  All right.  Well, I can just ask the

 1          client.  So, Mr. Jones, sir, there's certain areas –

 2          you can sit down that's alright.  Your attorney needs

 3          to stand when he objects but you can be seated.

 4               There's certain areas of – your attorney is well

 5          aware of as – as opposing counsel that are not going

 6          to be asked about and cannot be testified about.  And

 7          I'm more than happy to go over – it's a very short

 8          list.  And I'm more than happy to go over it with you

 9          if you want me to, but if you don't want me to that's

10          fine, too.

11               I'm simply trying to avoid any issues in front

12          of the jury, I don't want to have any unpleasantness,

13          there's no other way to put it, so that's why I'm

14          willing to do it if you want me to do – to do it, but

15          I don't have to do it.

16               MR. JONES:  Well, please do, Judge, because –

17               THE COURT:  Okay.

18               MR. JONES:  – no – no fault –

19               THE COURT:  That's enough.

20               MR. JONES:  – of my lawyers –

21               THE COURT:  That –

22               MR. JONES:  – they – they've told me about –

23               THE COURT:  – that – the yes –

24               MR. JONES:  – 20 times –

25               THE COURT:  – the yes was –

26               MR. JONES:  – but I'm confused.

27               THE COURT:  – the yes enough.

1          MR. JONES:  Yes.

2          THE COURT:  That's all I need to know.  And the

3      lawyers know not to ask you these questions, so the

4      only way there would be a problem is if you gave a

5      nonresponsive answer.

6          ATTY. KOSKOFF:  Okay.

7          THE COURT:  So if I just go over it briefly, I

8      don't think we're going to have any problem at all.

9          So the lawyers are not going to ask you about —

10     nor can you offer any testimony about the plaintiffs'

11     settlements with the former defendants, Wolfgang

12     Halbig and Cory Sklanka.  The Soto versus Bushmaster

13     case and who the plaintiff did not sue.

14         So I understand you may not agree with those

15     rulings and this is just a yes or a no answer, do you

16     understand that you may not testify on those topics?

17         MR. JONES:  Yes.

18         THE COURT:  Okay.  So there can be no testimony

19     and there's not going to be any questions, obviously,

20     regarding the maximum amount of Sandy Hook coverage

21     on your shows, or the percentage or proportion of

22     Sandy Hook coverage, yes or no, do you understand

23     that — that's not testimony that you can offer?

24     You're not going to be asked about it and you can't

25     offer it.

26         MR. JONES:  Yes.

27         THE COURT:  Good.  Okay.  You may not offer

```
 1        testimony and you're not going to be asked about
 2        whether you substantially comply, or you produced
 3        everything, or that you challenge the bases for the
 4        default ruling.  All of these issues may be the basis
 5        for an appeal but they're not going to be asked, nor
 6        can you offer that testimony.  Do you understand
 7        that?
 8             MR. JONES:  Yes.
 9             THE COURT:  Okay.  Finally, the First Amendment
10        is not an issue in this hearing in damages, no one is
11        going to ask you about the First Amendment.  This is
12        not the appropriate forum for you - you to offer that
13        testimony.  Do you understand that, sir?
14             MR. JONES:  Yes.
15             THE COURT:  All right.  Is there anything that
16        prevents you from understanding what we just talked
17        about?
18             MR. JONES:  I understand, as long as they don't
19        ask those questions.
20             THE COURT:  Right.  They're not going to ask you
21        those questions, if they did - I mean, they're
22        officers of the court and they understand the
23        rulings, so they're not going to ask you those -
24             MR. JONES:  I understand.
25             THE COURT:  - questions.  Do you need - I'm
26        happy to give you some time to speak with Attorney
27        Pattis regarding these issues.
```

```
 1            Do you need a little more time, Attorney Pattis,
 2       do you want a little more time?
 3            ATTY. PATTIS:  No.  But just as a convention to
 4       avoid speaking objections, if I think a question
 5       calls for that may I just alert the Court by
 6       objection, motion in limine and get that – rather
 7       than getting a speaking objection?
 8            THE COURT:  I don't see why not.
 9            Attorney Mattei?
10            ATTY. PATTIS:  Rather than saying relevance that
11       would be more apt, it seems to me.
12            ATTY. MATTEI:  Sorry, Your Honor, I – I didn't
13       hear all of what Attorney Pattis said.  I apologize.
14            THE COURT:  Can you repeat that?
15            ATTY. PATTIS:  My understanding is the Court is
16       precluding asking questions about these topics and
17       offering testimony about them.  If I believe that my
18       adversary asks a question that is improper, given the
19       motion in limine, I'd like to alert the Court simply
20       by saying objection, motion in limine, to avoid a
21       speaking objection.
22            THE COURT:  All right.  On the topics that we
23       just went through –
24            ATTY. PATTIS:  Yes.
25            THE COURT:  - you're referring to.
26            ATTY. PATTIS:  And to avoid –
27            THE COURT:  Sure.
```

1        ATTY. PATTIS:  - back and forth.

2        THE COURT:  Yes.

3        Attorney Mattei?

4        ATTY. MATTEI:  That's fine, Your Honor.

5        THE COURT:  Here we go.  All right.  Are we

6    ready for your jury or do you need a minute, folks?

7        ATTY. MATTEI:  Your Honor, may I have just one

8    moment, please?

9        THE COURT:  Take your –

10       ATTY. MATTEI:  I –

11       THE COURT:  - time.

12       ATTY. MATTEI:  - apologize.  Your Honor, may we

13    have a sidebar, please?  I apologize.

14       THE COURT:  Okay.  Two even before the first

15    witness.

16    **(Sidebar begins)**

17       A VOICE:  (Indiscernible).

18       THE COURT:  The what?

19       ATTY. MATTEI:  Okay.  So as fate would have it

20    this is the first morning in which we were having

21    tech problems, which I have – (indiscernible).

22       THE COURT:  So – (indiscernible).

23       ATTY. MATTEI:  For whatever reason, we're not

24    getting our – the – the WIFI thing we've had, conked

25    out this morning.  We have a replacement at the

26    hotel, I can't show any exhibits until we get it.

27       ATTY. PATTIS:  We will give you access to our.

1      John and I –
2          ATTY. MATTEI:  These are (indiscernible) –
3          ATTY. PATTIS:  - (indiscernible) – until you've
4      got it solved.
5          ATTY. MATTEI:  - these are older –
6          ATTY. PATTIS:  Older ones.  Okay.
7          THE COURT:  We want to get started and I have
8      (indiscernible) –
9          ATTY. MATTEI:  I have – (indiscernible) – I
10     have – (indiscernible) -
11         THE COURT:  I'll take a recess now –
12         ATTY. MATTEI:  Can we just – I apologize.
13         THE COURT:  Sure.  Listen it happens.  And maybe
14     in the meantime, Norm, you can talk to whoever -
15     (indiscernible) –
16         ATTY. PATTIS:  (Indiscernible).
17         ATTY. MATTEI:  Twenty minutes.  Twenty minutes,
18     we've got to run back to the hotel and come back.
19         THE COURT:  And you – (indiscernible).
20         THE CLERK:  The WIFI (indiscernible).
21         THE COURT:  Okay.  Okay.  So you'll let Ron know
22     as soon as possible.
23         ATTY. PATTIS:  No, this needs to occur.
24         THE COURT:  The good news is that I bought a
25     Keurig in for the jury and they're very happy.  So
26     now they can drink coffee.
27         Okay.  So as soon as you know, let Ron know and

1    we'll get started.  Okay.

2        ATTY. MATTEI:  So we're going to go out to that

3    conference room and –

4        ATTY. PATTIS:  Yeah.

5        THE COURT:  Oh, how is – how has it been working

6    out with lunches –

7        ATTY. PATTIS:  Today is –

8        THE COURT:  – you had –

9        ATTY. PATTIS:  – today is the first day, it's

10   gonna be our maiden voyage on that.  We've not had

11   occasion to try it yet.

12       THE COURT:  Okay.  Would it be –

13   (indiscernible).

14       ATTY. MATTEI:  It's been great.  Thank you.

15       THE COURT:  I just wanted – I meant to ask Ron.

16       **(Sidebar ends)**

17       THE COURT:  All right.  So we are going to deal

18   with some technical WIFI issues and as soon as they

19   are resolved we will begin.  So we will take a short

20   recess.

21       (Court recesses and reconvenes)

22       THE COURT:  Okay.  Anything else before I bring

23   out the panel?

24       ATTY. STERLING:  Yes, Your Honor, we had another

25   issue we wanted to raise before we get started.  With

26   regard to Court's canvass of Mr. Jones –

27       THE COURT:  Yes.

1          ATTY. STERLING:  - there were some in limine

2     rulings that the Court did not cover.

3          THE COURT:  That is true.

4          ATTY. STERLING:  And so, we wanted to make sure

5     that the Court was aware of that.

6          THE COURT:  I am.  Did you speak with Attorney

7     Pattis to see if there's anything that should be

8     added by agreement?

9          ATTY. STERLING:  I did speak with Attorney

10     Pattis about the issues that - that the Court had

11     omitted from our perspective -

12          THE COURT:  Yes.

13          ATTY. STERLING:  - you know, I leave it to

14     Attorney Pattis -

15          THE COURT:  All right.

16          ATTY. STERLING:  - again, as the -

17          THE COURT:  Do you want -

18          ATTY. STERLING:  - Court did initially.

19          THE COURT:  - to just tell me what the issues

20     are?

21          ATTY. STERLING:  So the issues that were

22     admitted - sorry - omitted are the PQPR ruling that

23     there can be no evidence or argument that PQPR is a

24     separate entity from Free Speech Systems.  The -

25          THE COURT:  Well that question won't be asked,

26     so I - I thought that was such a minor thing.

27          ATTY. STERLING:  Your Honor, I - it's certainly

1     not my intent to ask those questions.

2          THE COURT:  So I would just say that if there's

3     a nonresponsive answer that makes that statement,

4     I'll just instruct the jury accordingly.

5          ATTY. STERLING:  Your Honor –

6          THE COURT:  Okay?

7          ATTY. STERLING:  Okay.  There – there's –

8          THE COURT:  All right.  Attorney Pattis, does

9     that make sense to you, or do you – would you prefer

10    that I canvass Mr. Jones?  Up to you, it's your call.

11         ATTY. PATTIS:  It – it – I leave it to the

12    Court's discretion.  My view is if we're going to do

13    part, we should do the whole, and having done part we

14    should do the whole.

15         THE COURT:  Okay.  So, Mr. Jones, I've entered a

16    ruling that there can be –

17         ATTY. STERLING:  Your Honor –

18         THE COURT:  – you're not going –

19         ATTY. STERLING:  I'm so sorry to interrupt the

20    Court.   Before we do that there – there are some

21    other issues, so may I give the Court my list and –

22         THE COURT:  I was just going to do one by one,

23    so I don't –

24         ATTY. STERLING:  Okay.

25         THE COURT:  – forget.

26         So, Mr. Jones, there was a ruling that I entered

27    that there can be no evidence and so you won't be

1     questioned along the lines of PQPR and Free Speech

2     Systems being separate entities.  So you can't

3     offer – you can't say that essentially.  You're not

4     going to be asked it, so there would be no reason for

5     you to say that.  I know you may not agree, but do

6     you understand that you're not permitted to do so?

7          MR. JONES:  Yes.

8          THE COURT:  Okay.  Next issue?

9          ATTY. STERLING:  The next issues is no evidence

10    or argument that Mr. Jones did not profit from Sandy

11    Hook coverage.

12         THE COURT:  Okay.  So, sir, I made that ruling

13    as well.  No one is going to ask you that question,

14    so you can't just out of the blue say well I didn't

15    profit.  Again, I understand you may not agree with

16    that ruling but that is the ruling for the – at least

17    at this trial level, do –

18         MR. JONES:  I understand.

19         THE COURT:  – understand, sir?

20         Yes, sir.  Next?

21         ATTY. STERLING:  And the last issue is that

22    there should be no evidence or argument that

23    Mr. Jones – it would be unfair to hold him

24    accountable in damages in this case because of his

25    deplatforming because of the Texas verdict or because

26    of his bankruptcy.

27         THE COURT:  All right.  Well, that wasn't a

1    ruling that I entered, so if that – if any of the

2    questions are asked, I assume that – that would just

3    be objected to.  And if the –

4         ATTY. STERLING:  Your – Your Honor, we believe

5    that as the law of the case has developed the – you

6    know, that – that has been a ruling of the Court.

7    And also that that was actually part of the motion in

8    limine ruling.  That's been our –

9         THE COURT:  Right.

10        ATTY. STERLING:  - understanding.

11        THE COURT:  Let me ask you, Attorney Pattis, do

12   you see any questions that are going to be asked that

13   would elicit an answer about bankruptcy?

14        ATTY. PATTIS:  Well, I – I'm not asking for a

15   proffer on the – the cross but – in Part 2, no.  I

16   mean, obviously –

17        THE COURT:  I – I didn't hear you, sir.  I'm

18   sorry.

19        ATTY. PATTIS:  I'm not asking for a proffer on

20   the scope of the cross, so it's hard to know.  My

21   view is – well, you know my view of the case, we've

22   argued it for days here.  It's possible that that

23   could hap – I don't know how Mr. Jones will construe

24   the questions that Attorney Mattei asks.

25        THE COURT:  All right.

26        ATTY. PATTIS:  We've not salted – we're not

27   attempting to salt the record here.  So if the Court

1    has concerns, or my adversary has concerns, I'll

2    leave it to the Court's discretion about –

3         THE COURT:  Right.

4         ATTY. PATTIS:  - how to deal with it.

5         THE COURT:  I'm just trying to figure out a

6    scenario why bankruptcy should come up in this court,

7    can – can – can either of you think of a scenario?

8         ATTY. MATTEI:  No.

9         ATTY. PATTIS:  I – I don't know what the

10   questions they're –

11        THE COURT:  All right.

12        ATTY. PATTIS:  - that they're going to ask, so

13   it, you know –

14        THE COURT:  Well, you'll – and both sides this

15   applies to – if there is an issue the objection's

16   just going to be motion in limine.  I can't think of

17   a possible reason that the bankruptcy should come

18   up – be improper.  So I would say Mr. Jones that

19   you're not to testify with respect to your bankruptcy

20   proceedings and you're not going to be asked.  Okay,

21   sir?  I understand you don't agree with it but that

22   is just the Court's order.

23        MR. JONES:  I understand.

24        THE COURT:  Okay.  Very well.

25        ATTY. STERLING:  Your Honor, the Texas verdict

26   is another concern and the last is the deplatforming.

27        THE COURT:  All right.  So let's talk about the

1      Texas verdict.  Anything that you wanted to add –

2           ATTY. PATTIS:  No.

3           THE COURT:  - about that?  I – I can't see any

4      reason that that would be admissible evidence in this

5      court, so I would not allow that question.

6           And, Mr. Jones, that's not something that you're

7      going to be able to talk about because it would not

8      be proper in this case at this level.  Okay.

9           MR. JONES:  I understand.

10           THE COURT:  And then the deplatforming, Attorney

11      Pattis, did you want to address the platforming

12      issue.  This is a hearing in damages.

13           ATTY. PATTIS:  No.

14           THE COURT:  Okay.  So the deplatforming issue is

15      not an issue, sir, for this jury to address.

16           MR. JONES:  I understand.

17           THE COURT:  All right.  So again, they're not –

18      no one's going to ask you if – if the question's

19      asked, you'll hear an objection, motion in limine

20      ruling or something like that.  You're not to mention

21      the deplatforming.  All right.

22           So I would appreciate it if – if there is any

23      concern that a question is going to elicit any of the

24      testimony that I've just addressed with Mr. Jones

25      that we follow what Attorney Pattis says and just,

26      you know, say something along the lines of objection,

27      motion in limine.  All right.

1       And sir, if there – and I assume there will be

2       because there have been objections throughout the

3       trial so far, but I'm sure your attorney has told you

4       if someone makes such an objection just don't answer

5       and let me deal with it.  Okay?

6       All right.  Can we get our jury now they've

7       been – they got here early, so I'd like to get

8       started.

9       ATTY. MATTEI:  Please, Judge.

10      THE COURT:  Okay.  And while we're waiting to

11      bring out the panel, as I try to remember to say

12      everyday in accordance with judicial branch policy

13      only the specific individuals or entities that were

14      authored – authorized to record, or photograph, or

15      video may do so.  Anyone who does so without

16      permission, will have their device or devices

17      confiscated and will be removed from the courtroom,

18      so please make sure we abide by that rule.

19      And also, if you haven't already done so, turn

20      off your Apple watches and phones – or at least put

21      them to vibrate.  I've – I've done that myself.

22      Good morning.  Good morning.  Good morning, on –

23      A VOICE:  It's gorgeous.

24      THE COURT:  – this rainy day today.  I think

25      it's our first day of bad weather.

26      Welcome back, everyone.  Good morning.

27      Ron is handing out your notebooks.  Please be

1          seated.  Make yourselves comfortable.

2              Counsel stipulate that the entire panel has

3      here?

4              ATTY. MATTEI:  Yes, Your Honor.

5              ATTY. PATTIS:  I do.

6              THE COURT:  All right. And Ron I asked and there

7      were no notes with any jury conduct issues and I'll

8      just try to remind you every day.  If and when

9      something comes up, please make sure you follow that

10     procedure.  I want to thank you for your patience

11     this morning.  I know you were actually all here

12     early, but we had some technical equipment issues

13     that we had to deal with.  But I guess it was a good

14     day that you got your coffee machine in there so.

15             A VOICE:  Thank you.

16             THE COURT:  I thought that might come in handy.

17      You're very welcome.

18             All right.  Attorney Pattie when – Pat – Mattie,

19     whenever you're ready, please.

20             ATTY. MATTEI:  Thank you, Your Honor.

21             And good morning.  The plaintiffs call Alex

22     Jones.

23             THE COURT:  Very well.  Mr. Jones.

24             Just watch the cords and your step when you come

25     up.  Remain standing.

26

27



1    A L E X A N D E R    E.    J O N E S,

2         Austin, Texas having been duly sworn, is examined and

3         testifies as follows:

4              THE CLERK:  Thank you.  Please be seated.  Would

5         you please state your name, slowly spelling your last

6         name for the record and the town in which you live.

7              THE WITNESS:  Starting with my last name?

8              THE CLERK:  Just state your name and spell your

9         last name –

10             THE WITNESS:  Okay.

11             THE CLERK:  - for the record.

12             THE WITNESS:  Alexander E. Jones, J-o-n-e-s.

13             THE COURT:  And your town?

14             THE WITNESS:  Austin, Texas.

15             THE COURT:  All right.  Sir, there's water there

16        in that pitcher –

17             THE WITNESS:  Okay.  Thank you.

18             THE COURT:  - you can help yourself.  If you

19        want a bottle of water I'm sure you can –

20             THE WITNESS:  Thank you.

21             THE COURT:  Just let Mr. Jones get situated.

22             THE CLERK:  Hold on.

23             THE WITNESS:  Thanks.

24             THE COURT:  You may inquire.

25             ATTY. MATTEI:  Thank you, Your Honor.

26   DIRECT EXAINATION BY ATTY. MATTEI:

27    Q   Mr. Jones, you're here pursuant to a subpoena today,

1   is that correct?

2   A   Yes.

3   Q   You were deposed in Connecticut earlier this year and

4   at that time I arranged to have a subpoena served on you to

5   assure that you would appear at this trial.  Correct?

6   A   I believe so.

7   Q   And you could come to this courtroom at any time

8   since we've started if you wanted to.  Correct?

9   A   Yes.

10  Q   Right.  In fact, you know where the courthouse is

11  because you've given press conferences right outside this

12  courthouse yesterday and the day before.  Correct?

13  A   Yes.

14  Q   But this is the first time you've been in the

15  courtroom.  Yes?

16  A   Yes.

17  Q   This is the first time you've been other oath in –

18  A   Yes.

19  Q   – this case?  Right?

20      And you understand the families that I represent

21  brought this case against you about four years ago.

22  A   Yes.

23  Q   To seek justice from this jury for what you did to

24  them, correct, you understand that's why we're here?

25  A   I understand they sued me, yes.

26  Q   Right.  And this is an important case, you understand

27  that?

```
 1     A    I mean that's an opinion.

 2     Q    Okay.  It's – you don't think this is an important

 3   case?  That's a yes or no, sir.

 4     A    It's not – I don't really think –

 5     Q    That's a yes –

 6     A    – it is a –

 7     Q    – or no.

 8     A    – case.  I don't think it is a case.

 9     Q    Okay.  We're gonna – there's gonna be a lot of this

10   today and –

11              ATTY. PATTIS:  Objection, Judge.

12              THE COURT:  All right.  So, let me – let – let's

13         iron out the wrinkles now.  If you can answer the

14         question with a yes or a no, Mr. Jones, answer it

15         with a yes or a no.  And if you don't know the

16         answer, you can say don't know the answer.  And, of

17         course, if there's an objection, you'll just wait for

18         me to rule on the objection.

19              THE WITNESS:  Okay.

20   BY ATTY. MATTEI:

21     Q    This is an important case, isn't it, Mr. Jones?

22     A    I think this is historic.

23     Q    Mr. Jones, the Judge gave you an instruction –

24              ATTY. PATTIS:  Objection.  Judge to –

25              ATTY. MATTEI:  – to answer the question –

26              ATTY. PATTIS:  Objection.  It's –

27              ATTY. MATTEI:  – yes or no –
```

1        ATTY. PATTIS:  - for the Court -

2        THE COURT:  So I - I would - I'll -

3        ATTY. MATTEI:  Should we do it again?

4        THE COURT:  - do this.

5        So the question, Mr. Jones, is is it an

6    important case.  And the answers that you can give

7    are yes, no or I don't know.

8        THE WITNESS:  Yes.

9  BY ATTY. MATTEI:

10   Q    You can understand why it would be very important to

11  the families I've referenced.  Correct?

12   A    Yes.

13   Q    But it's also important to you, isn't it?

14   A    Yes.

15   Q    Because you've been using this case as a marketing

16  opportunity over the past couple of weeks, haven't you?

17   A    No.

18   Q    Mr. Jones, you created a new website on Inforwar.com

19  called Kangaroo Court, just so your followers can watch this

20  case, haven't you?

21   A    That's not a website.

22   Q    What would you call a webpage on Inforwars.com?

23   A    It's a page.

24   Q    Okay, a page.  Thank you, for that correction.

25        There's a webpage on Inforwars.com that you've titled

26  Kangaroo Court, so your followers can - can watch this

27  happening here.  Right?

1    A    Yes, that's my – my opinion.

2    Q    Okay.  And why – why don't we pull up actually

3  Exhibit 5 O 4.  This is – just for the witness, please.

4  Exhibit 5 O 4, there's a screen down there for you,

5  Mr. Jones.  Do you see that?

6    A    Yes.

7    Q    Okay.  Is that the Kangaroo Court page that you've

8  had up and running?

9    A    Yes.

10            ATTY. MATTEI:  Okay.  I'd offer it, Your Honor.

11            ATTY. PATTIS:  No objection.

12            THE COURT:  All right.  It's a full exhibit.

13  BY ATTY. MATTEI:

14    Q    And you see here it – you've been clipping testimony

15  from – that's been happening in this courtroom over the last

16  couple of weeks, haven't you?

17    A    I have not been clipping, no.

18    Q    You don't do that yourself, you have your employees

19  do that.

20    A    I – I'm not even directing them.

21    Q    Oh.  Okay.  So you didn't know that this was

22  happening?

23            ATTY. PATTIS:  Objection.  Argumentative.

24            THE COURT:  Overruled.

25            THE WITNESS:  No, I've not been there and I - I

26        don't direct most of the headlines.

27  BY ATTY. MATTEI:

1    Q    They just know that this is what you want.  Right?

2         ATTY. PATTIS:  Objection.  Calls for

3         speculation.

4         THE COURT:  Overruled.

5         THE WITNESS:  I – I'm not supposed to talk about

6         the prior rulings –

7    BY ATTY. MATTEI:

8    Q    Excuse me, sir.

9    A    – so how do I answer why I think somebody's a

10   Kangaroo Court if I'm not supposed to say why I think it is?

11   Q    The question that I just asked you, sir, was whether

12   you knew whether your employees wanted to do this, whether

13   they knew that you wanted them to do this?

14        ATTY. PATTIS:  Renew my objection on

15        speculation.

16        THE COURT:  And it's the same ruling.

17        Do you understand that question, sir, or do you

18        want it played back or repeated, because I want to

19        make sure you're answering the question that's asked.

20        THE WITNESS:  I don't know – I mean, I'm sure

21        they agree with me that's why they put that headline

22        up.

23   BY ATTY. MATTEI:

24   Q    And – and right above there, as you're saying watch

25   highlights from the Alex Jones Sandy Hook kangaroo Court

26   hearings you're running an ad for Brain Force Plus.  Right?

27   A    Yes.

1   Q   Order today, right, this is – this is what you're

2   showing your audience the next generation of advance neural

3   activation and nootropics, is that correct?

4   A   Yes.

5   Q   Okay.  And how much is that going for on

6   InfowarsStore.com right now with the – with the sale?

7   A   I don't know.

8   Q   And ever since this trial started and you've been –

9   you've been calling it a – a kangaroo court yourself.

10  Right?

11  A   Yes.

12  Q   Right.  And you've called this Judge a tyrant.

13  Correct?

14  A   Yes.

15  Q   Okay.  And you actually use that word a lot with your

16  audience, you call people tyrants, don't you?

17  A   Only when they act like it.

18  Q   Okay.  And one way that you've been conveying to your

19  audience that Judge Bellis has been acting like a tyrant is

20  by showing her with lasers coming out of her eyes, right,

21  you know you did that?

22  A   I didn't direct that.  First time I saw it I was in

23  court.

24  Q   Oh, so you've been watching this.

25  A   Yeah, I've been watching.

26  Q   Okay.  You – you could have just watched from this

27  table.

1       ATTY. PATTIS:  Objection.  Argumentative.

2       THE COURT:  Sustained.

3  BY ATTY. MATTEI:

4    Q   But you've been broadcasting your show during this

5  trial, haven't you?

6    A   I have taped some of my shows.

7    Q   Let's pull up 4 77.

8       THE COURT:  Is this full exhibit?

9       ATTY. PATTIS:  Is this full?

10       ATTY. MATTEI:  This should be in already.

11       THE CLERK:  It is a full exhibit.

12       THE COURT:  And what was it, Ron, 4 70 –

13       THE CLERK:  Four seven-seven, Your Honor.

14  BY ATTY. MATTEI:

15    Q   This is the tyrant you've been telling your audience

16  about.  Right?  Yup?

17    A   I'm barred from saying why I said it, so –

18    Q   I didn't ask you why.

19    A   Oh.

20    Q   This is the tyrant you've been telling your audience

21  about.  Right?

22    A   I – I believe – I believe –

23    Q   Sir –

24       THE COURT:  So, Mr. Jones –

25       THE WITNESS:  Yes?

26       THE COURT:  – look at me.  Yes, no, or I don't

27       know.

```
 1              THE WITNESS:  I don't know.
 2   BY ATTY. MATTEI:
 3     Q    The answer is you don't know?
 4     A    About that.  I didn't make that.
 5     Q    No, no.  This is the tyrant pictured here that you've
 6   been telling your audience about.  Right?
 7     A    I thought you were asking me again about – about the
 8   image or me believing this is tyrannical.
 9     Q    No.  No –
10     A    Can you restate the question, please?
11     Q    Sure.  I'll say – I'll restate it for the third time
12   for you.
13              ATTY. PATTIS:  Objection to the comments.  Move
14         to strike.
15   HY ATTY. MATTEI:
16     Q    This is –
17              THE COURT:  Overruled.
18              ATTY. PATTIS:  Can we have an – okay.  Thank
19         you.
20   BY ATTY. MATTEI:
21     Q    This picture right here that's Judge Bellis.
22   Correct?
23     A    Yes.
24     Q    Lasers coming out of her eyes.  Correct?
25     A    Yes.
26     Q    That's who you've been referring to as a tyrant to
27   your audience.  Correct?
```

```
 1      A    Yes.

 2      Q    Okay.  And you refer to tyrants to your audience a

 3 lot.  Right?

 4      A    Some.

 5      Q    Right.

 6      A    Tyrants are people who are going to oppress others

 7 and strip them of their freedoms.  Correct?

 8      A    That's a common definition.

 9      Q    Right.  And you not just called Judge Bellis a

10 tyrant, but you said that this whole thing what's happening

11 here is part of a plot, isn't it?

12           ATTY. PATTIS:  Objection, motion in limine.

13           THE WITNESS:  No, not the whole thing –

14           ATTY. PATTIS:  Objection –

15           THE WITNESS:  – I didn't say –

16           ATTY. PATTIS:  – motion in limine.

17           THE COURT:  So – can I have that question again?

18           ATTY. MATTEI:  Yeah.  I think what I asked –

19           THE COURT:  Don't – don't answer.  I just want

20       to hear it.

21           THE WITNESS:  I understand.  I understand.

22           THE COURT:  Thank you.

23           ATTY. MATTEI:  What you've been telling your

24       audience is that this whole thing is part of a plot,

25       I believe is what I asked.

26           ATTY. PATTIS:  Objection, motion in limine.

27       Politics.
```

1        ATTY. MATTEI:  That's a yes or no.

2        THE COURT:  It's a yes, no, or I don't know,

3    sir, so over –

4        ATTY. PATTIS:  I thought there – I thought –

5        Withdrawn.

6        May we approach, briefly?

7        THE COURT:  Yes.  Certainly.

8        **(Sidebar begins)**

9        ATTY. PATTIS:  He's gonna talk about – if – if

10    this goes on he'll (indiscernible) and everything

11    else.  And I thought that – I thought that politics,

12    you know, was out of –

13        THE COURT:  (Indiscernible)

14        ATTY. PATTIS:  He thinks this is a highly

15    orchestrated by – (indiscernible) – I don't think

16    that – the trial reflects the effort of the hearing

17    of tyrants, to silence him including you Judge,

18    Hillary Clinton and others.  And by asking this

19    question, the door is being opened.

20        THE COURT:  (Indiscernible).

21        ATTY. MATTEI:  I say that is part of the plot.

22        ATTY. PATTIS:  Yeah, that's –

23        THE COURT:  And –

24        ATTY. PATTIS:  – that –

25        THE COURT:  – I mean –

26        ATTY. PATTIS:  – that'll – that's the door.

27        THE COURT:  (Indiscernible).

```
 1              (Sidebar ends)

 2   BY ATTY. MATTEI:

 3      Q    And he hasn't – well, let me back up.

 4              ATTY. PATTIS:  I didn't hear the question,

 5         Judge.

 6              ATTY. MATTEI:  I haven't asked one yet.

 7   BY ATTY. MATTEI:

 8      Q    It hasn't just been this way you've been depicting

 9   the tyrant, let me show you Exhibit 4 77.

10              ATTY. MATTEI:  Just a – is this 4 77?

11              One moment.

12   BY ATTY. MATTEI:

13      Q    You also have displayed Judge Bellis engulfed in

14   flames, haven't you, to your audience?

15      A    No.  One of my crew made that.  They make thousands

16   of images.

17      Q    Thousands of images.

18              THE COURT:  Just one second.  Is this a full

19         exhibit?

20              THE CLERK:  No, it's not, Your Honor.

21              ATTY. MATTEI:  Pull it down.  Pull it down.

22         Pull it down.

23              I'd offer it.  He just –

24              ATTY. PATTIS:  No objection, Judge.  I forgot

25         the number.

26              ATTY. MATTEI:  Four sixty-one.

27              ATTY. PATTIS:  Four six nine?
```

```
 1                    ATTY. MATTEI:  One.

 2                    ATTY. PATTIS:  Thank you.

 3                    THE COURT:  Do you have a bench copy?

 4      BY ATTY. MATTEI:

 5       Q   And that's Judge Bellis on the right there, isn't it?

 6       A   Yes.

 7       Q   Engulfed in flames.

 8       A   Mm-hmm.

 9       Q   And –

10       A   And that's a –

11       Q   I didn't ask you who the other person was.

12       A   That's okay.

13       Q   That's another judge.  Right?

14                    ATTY. PATTIS:  Objection, motion in limine.

15                    THE WITNESS:  That's not what I was gonna say.

16                    ATTY. PATTIS:  Objection, motion in limine.

17                    THE WITNESS:  That's –

18                    THE COURT:  What –

19                    THE WITNESS:  - that's another producer's –

20                    ATTY. MATTEI:  There's no question –

21                    THE WITNESS:  - report.

22                    ATTY. MATTEI:  - pending.

23                    THE COURT:  So Miss – Mr. Jones, because your

24           attorney stood up and objected, so remember when

25           there's an objection –

26                    ATTY. MATTEI:  I'll withdraw it.

27                    THE COURT:  - you –
```

 1          ATTY. MATTEI:  I'll withdraw it.

 2          THE COURT:  Okay.  Just –

 3  BY ATTY. MATTEI:

 4    Q   She had another person make –

 5          THE COURT:  – just one second –

 6          ATTY. MATTEI:  – this report –

 7          THE COURT:  One second.

 8          Just remember that when there's an objection –

 9          THE WITNESS:  Be quiet.

10          THE COURT:  Yes.  That's – that's the best way

11       to put it.  Thank you.

12          THE WITNESS:  Yes.  Thank you.

13  BY ATTY. MATTEI:

14    Q   Another – one of your employees made that, right,

15  Greg Reese?

16    A   Yes, it's – it's another producer, an independent

17  producer.  His report that was made that we later featured

18  on the site.  I first learned about it in the last court

19  case but, yes, I think it's showing that Lady Liberty's

20  being burned up by due process being erased.

21    Q   And, Mr. Jones, Greg Reese, are you saying he's not

22  an employee of yours?

23    A   He – he's a – I believe he's a contractor now.

24    Q   You pay him.  Yes?

25    A   Yes.

26    Q   Okay.  You pay him to create these video segments.

27  Right?

```
1    A   I mean, he -

2    Q   Greg Reese Reports.

3    A   - he - he independently makes what he wants.

4    Q   And you pay him for it.

5    A   Yes.

6    Q   All right.  And you pay him - you can take that

7   down - you paid him to create a little mini-documentary

8   about Bill Aldenberg, just this past week, didn't you?

9    A   I - I don't know who Bill Aldenberg is.  Oh, he's the

10  FBI guy.  I remember now.

11   Q   Yeah, so you paid him to make a little mini-

12  documentary featuring Bill Aldenberg, didn't you?

13   A   I think I saw a thumbnail for it.  I - I don't

14  believe I've watched it.

15   Q   Sometimes you aired it on your show, haven't you?

16   A   I have a film crew, I've been here.

17   Q   No. No. No.  Mr. Jones, this was last week, you were

18  in Austin last week.

19   A   Well, if we have - I don't watch the breaks, so I -

20   Q   Okay.  So what happens is when you're on your show

21  you go to break and they just show some video and you - you

22  have no knowledge of it, is that what you're saying?

23   A   I mean, I watch a lot of it but, no, I - I go eat

24  food.  I go to the bathroom.  I hadn't seen - I remember now

25  seeing an article about it or - or something about it.

26   Q   Well, this is - take a look at Exhibit 4 - 5 13,

27  Mr. Jones.  Just pull it up for Mr. Jones.
```

```
1              THE COURT:  Five twenty-three?

2              ATTY. MATTEI:  ID at this point, sir?

3              ATTY. MATTEI:  Five thirteen.

4              ATTY. PATTIS:  ID at this point, sir?

5              ATTY. MATTEI:  Yes.

6   BY ATTY. MATTEI:

7     Q   Do you have it?  Do you have it, Mr. Jones, right in

8   front of you?

9     A   Oh, I see it.

10    Q   That's it, right.  That's a still shot from Greg

11  Reese Reports?

12    A   Yes. Mm-hmm.

13    Q   Featuring Bill Aldenberg?

14    A   I - I haven't - I don't remember this report but I

15  remember this fella, I've never - I don't know who he is.

16  I've never said his name 'til I saw him up here talking

17  about me and then I - I have seen this report posted.  I

18  haven't watched it.

19    Q   Mr. Jones, you don't know if you ever said his name.

20             ATTY. PATTIS:  I'm sorry.

21             THE WITNESS:  I've never said his name 'til now.

22             ATTY. MATTEI:  You don't know that.

23             THE WITNESS:  Oh, okay.  Show us.

24  BY ATTY. MATTEI:

25    Q   Let's pull up Exhibit 50 before we get to that then.

26    A   Oh, you mean recently.

27    Q   There's -
```

```
 1              THE COURT:  Just wait –

 2              ATTY. MATTEI:  - no question, sir.

 3              THE COURT:  - just wait for the question.

 4              THE WITNESS:  Yeah.

 5              THE COURT:  Exhibit 50 – 5 0, is that full or

 6      ID?

 7              ATTY. MATTEI:  It should be.

 8              THE CLERK:  That is a full exhibit, Your Honor.

 9              ATTY. PATTIS:  It is.

10  BY ATTY. MATTEI:

11     Q   Mr. Jones, this has been introduced as a chart of all

12  of the days for which you didn't produce any videos to us,

13  in which you talked about Sandy Hook.  So let's start with

14  April 8th, 20 13, did you say bill Aldenberg's nay - name on

15  that day?

16     A   I don't believe so.  I've never – I don't remember

17  ever – I don't believe so.

18     Q   You don't know, do you?

19     A   I – I think I've said like two –

20     Q   Excuse me-

21     A   - people's names.

22     Q   - you don't know whether you said Bill Aldenberg's

23  name, do you?

24     A   From my memory, I've never seen him before 'til he

25  sued me.

26     Q   So I'm asking the –

27     A   And he said he –
```

1    Q   - question again -

2    A   - never heard of me.  I'm sorry, gentlemen.

3    Q   I'm gonna ask my question again.  Why don't we just

4  scroll through this -

5    A   Okay.

6    Q   - as we - is it your sworn testimony to this jury

7  that you never said Bill Aldenberg's name on any of these

8  days here, do you know that?

9    A   I got a pretty good memory and the first I'd heard of

10  him from my memory, is when he sued me.  I - I mean, but

11  this was over 10 years - I - I have - I mean, that's my

12  recollection.  I have never heard about him, I'm like who's

13  this FBI guy out of the West.

14    Q   So I -

15    A   No.

16    Q   - let's make it clear then, you said 10 years ago we

17  got October 4th, 2021, so I just want to know -

18    A   Oh, I may -

19    Q   Who's - whoa- whoa -

20    A   - have talked about him recently.

21    Q   - I just want to know.

22    A   Yeah.

23    Q   I just want to know -

24    A   Yeah.

25    Q   - 'cause you're under oath, this is our chance -

26          ATTY. PATTIS:  Objection, Judge.  Move -

27          ATTY. MATTEI:  - so I want to -

1          ATTY. PATTIS:  - to strike the commentary.

2     BY ATTY. MATTEI:

3        Q    I want -

4             THE COURT:  Sustained.

5     BY ATTY. MATTEI:

6        Q    - to know whether you can tell this jury under oath

7     that you never said Bill Aldenberg's name, yes or no?

8        A    Not until recently, I don't believe I ever said his

9     name.

10       Q    Yes or no?

11            ATTY. PATTIS:  Objection.  He has answered it,

12            Judge.

13            THE WITNESS:  Yeah, I think I just said his

14            name.  I think I've said his name recently.  I can't

15            remember.

16    BY ATTY. MATTEI:

17       Q    Okay.  What about before, can -

18       A    I -

19       Q    - you tell - can you tell this jury?

20       A    I don't believe I ever did.

21       Q    So you don't know, do you?

22       A    If you've got me saying it, please show me.  Refresh

23    my memory.

24       Q    Well, I'm asking you.

25       A    No, it was news to me when he sued me.  I didn't know

26    who he was.

27       Q    All right, Mr. Jones.  Well, let's pull up 5 13.

1          ATTY. MATTEI:  I'd offer it your - I don't know

2      if it's been formerly admitted, yet.  This is the

3      Greg Reese Report, so I'd offer it.

4          ATTY. PATTIS:  I don't know whether the writings

5      are going to run afoul - may I speak to Attorney

6      Mattie?

7          THE COURT:  Absolutely.

8          ATTY. MATTEI:  Do you have it in front of you?

9          ATTY. PATTIS:  I do.  I need to review the

10     writings because - in lieu of the Court's prior

11     rulings, Judge.

12         ATTY. MATTEI:  Give me one moment.

13         THE COURT:  Take your time.

14         ATTY. PATTIS:  Can we scroll down on it, please?

15         Is there more than what's displayed on the

16     screen?

17         THE COURT:  Can you scroll down for Attorney

18     Pattis?

19         ATTY. MATTEI:  That's it.

20         ATTY. PATTIS:  That's it.  If all is on the

21     screen, there's no objection if there's no text

22     accompanying it.

23         ATTY. MATTEI:  We'll offer it, Your Honor.

24         THE COURT:  All right.  Full exhibit.

25 BY ATTY. MATTEI:

26   Q   So this is your webpage, Banned.video.  You ran this

27 video last week to see your Alex Jones' Kangaroo Court,

```
 1   watch day 1.  Right?

 2      A   My – my crew posted this.

 3      Q   Mr. Jones, your – you own 100 percent of –

 4      A   Yes.

 5      Q   – Free Speech Systems.  Right?

 6      A   Mm-hmm.

 7      Q   You're in charge.  Right?

 8      A   I'm here – I guess.

 9      Q   Okay.

10      A   You were asking if I posted and I didn't post it.

11   Physically, I didn't make it.

12      Q   Let's – let's pull on – and the – the title of the

13   video is FBI Sues Alex Jones to Destroy First Amendment.

14   Right?

15      A   Yes.

16      Q   Okay.  You know the FBI hasn't sued you, you know

17   that.  Right?

18      A   I mean, I – I think that's a point of view.

19      Q   Excuse me –

20      A   I actually agree with that.

21      Q   – Mr. Jones – oh, you – you agree, the FBI is a

22   plaintiff in this that sued you here that's what you want to

23   tell this jury?

24      A   I mean, he's an FBI agent and he's up here in his

25   capacity and when he – when he got asked –

26      Q   Excuse me, Mr. Jones –

27      A   Mm-hmm.
```

1   Q   - I asked you whether it's your testimony that the

2   FBI is a plaintiff in this case, is that your testimony?

3   A   I mean, I - I think this is a deep state situation,

4   yeah.

5   Q   Okay.  Mr. Jones, you understand what' I'm asking -

6        ATTY. PATTIS:  Objection.  Move to strike the

7        commentary and badgering.

8        THE COURT:  All right.  So how about if we just

9        get an answer to the question.

10       Mr. Jones, we're going to - the question is is

11       the FBI a plaintiff in this case, yes, no, or I don't

12       know.

13       THE WITNESS:  I mean, I don't think officially

14       they are.

15  BY ATTY. MATTEI:

16   Q   But this is what you tell your audience here.  Right?

17       Did you see any Bill Aldenberg's testimony?

18       ATTY. PATTIS:  Objection.  Compound.

19       ATTY. MATTEI:  You did.

20       ATTY. PATTIS:  This is what you tell your

21       audience.  Did you see the testimony.

22       THE COURT:  Sustained.  So can we break the

23       question down?

24  BY ATTY. MATTEI:

25   Q   But that's what you told your audience.

26       ATTY. PATTIS:  Which one, Judge.  That's a -

27  BY ATTY. MATTEI:

1    Q   That the FBI –

2            ATTY. PATTIS:  – compound –

3    BY ATTY. MATTEI:

4    Q   – had sued you.  Right?

5    A   No, that's the headline of another person from a –

6    may but –

7    Q   And this video right here, I don't know if you can

8    see it, just as of September 15th had a hundred and ninety-

9    thousand views didn't it?

10   A   Yes.

11   Q   And you heard – you said you watched special –

12   Mr. Aldenberg's testimony?

13   A   I watched quite a bit.

14   Q   You heard him describe the threats he'd received?

15   A   Yes.

16   Q   You heard him described the harassing he'd received?

17   A   Yes.

18   Q   You heard him describe years of feeling insecure as a

19   result of the army that you sicced on him?

20           ATTY. PATTIS:  Objection, Judge.  Move to strike

21       that.

22           THE COURT:  Sustained.

23           ATTY. PATTIS:  And –

24           THE WITNESS:  And he –

25           ATTY. PATTIS:  – were you planning –

26           THE WITNESS:  – said I never –

27           ATTY. PATTIS:  – on striking that?

```
 1              THE WITNESS:  - even said his name.

 2              ATTY. PATTIS:  The jury is to disregard –

 3              THE COURT:  (Indiscernible).

 4              THE WITNESS:  I never did – know, yes.

 5              THE COURT:  So, Mr. Jones, your attorney

 6         objected –

 7              THE WITNESS:  I'm sorry.

 8              THE COURT:  No.  No.  Let me finish speaking.  I

 9         sustained his objection and you answered it anyway.

10         He won and you kept going.  Just - so why don't you

11         take a break, drink cold water –

12              THE WITNESS:  Okay.

13              THE COURT:  - take – take a breath and just

14         remember when Attorney Pattis objects, just – I think

15         in your words that you'll be quiet.

16              THE WITNESS:  Thank you.

17              THE COURT:  Then I'll rule –

18              THE WITNESS:  Right.

19              THE COURT:  - and he won.

20              THE WITNESS:  I'll slow down.

21              THE COURT:  Okay.  How's that, Attorney Pattis?

22              ATTY. PATTIS:  And then may the jury be asked to

23         formally disregard the comments of counsel.

24              THE COURT:  So ordered.

25    BY ATTY. MATTEI:

26       Q   And after all of that you still chose to put Bill

27    Aldenberg's face up in front of –
```

```
 1              ATTY. PATTIS:  Objection.

 2              ATTY. MATTEI:  - your audience -

 3              ATTY. PATTIS:  Assumes facts -

 4              ATTY. MATTEI:  - of hundreds and -

 5              ATTY. PATTIS:  - not in evidence.

 6              ATTY. MATTEI:  - millions.  Correct?

 7              ATTY. PATTIS:  Assumes a fact not in evidence.

 8              THE COURT:  Overruled.

 9              THE WITNESS:  No, I did not direct Greg Reese to

10         make those, but I think it's a good report.

11   BY ATTY. MATTEI:

12     Q   Okay.  So when you did become aware of it, you didn't

13   take it down, did you?

14     A   No, I stand by the report.

15     Q   Very good.

16     A   Even the line of people watched it.

17              THE COURT:  Just wait for the next question,

18         sir, please.

19   BY ATTY. MATTEI:

20     Q   So after Bill Aldenberg and after Judge Bellis, who's

21   next, Mr. Jones?

22              ATTY. PATTIS:  Objection.

23              THE COURT:  Sustained.

24              THE WITNESS:  I mean, I guess if somebody's -

25              ATTY. PATTIS:  Objection.

26              THE WITNESS:  - on national TV -

27              Oh, I'm sorry.
```

```
 1              THE COURT:  Again, no - Mr. Jones -
 2              THE WITNESS:  Mm-hmm.
 3              THE COURT:  - again, your lawyer jumped up and I
 4         sustained it before and you still answered.
 5              THE WITNESS:  Okay.  I - I'm not hearing him.
 6         The - the guy - I -
 7              THE COURT:  Can you be louder?  I never thought
 8         I would say this, Attorney Pattis -
 9              THE WITNESS:  Well, I - I -
10              ATTY. PATTIS:  Yes, Judge, I could be louder.
11         How's that?
12              THE WITNESS:  The secret is I have serious
13         hearing damage.
14              THE COURT:  Okay.  So -
15              THE WITNESS:  I need a new hearing aid, so -
16              THE COURT:  So your client cannot hear, so -
17              THE WITNESS:  Sorry, Judge.  I seriously can't
18         hear anymore.
19    BY ATTY. MATTEI:
20       Q   So let's pull up just for the witness, Exhibit 5 12.
21              THE COURT:  One more time.
22              ATTY. MATTEI:  Five twelve.
23    BY ATTY. MATTEI:
24       Q   Take a look at the screen next to you.  That's the
25    win page for Band.video, your video page.  Right?
26       A   Yes.
27              ATTY. MATTEI:  I'd offer it, Your Honor.
```

 1              ATTY. PATTIS:  May I have one moment, Judge?

 2              THE COURT:  Take - take your time.

 3              ATTY. PATTIS:  No objection.

 4              THE COURT:  All right.  That's a full exhibit.

 5  BY ATTY. MATTEI:

 6     Q   So if anybody goes to your Band.video page right now,

 7  right now the first thing they can do is buy high quality

 8  storable food from you because it's back in stock.  Correct?

 9     A   Yes.

10              ATTY. PATTIS:  Objection to the form.  They can

11         do many things first.

12              THE COURT:  Overruled.

13  BY ATTY. MATTEI:

14     Q   And - and then if they want, they can go to your Alex

15  Jone's Kangaroo Court, watch channel there.  Right?

16     A   Yes.

17     Q   Okay.  They can click on the video that you gave

18  yesterday outside this courthouse while Erica Lafferty was

19  testifying.  Right?

20     A   I don't - I don't know that.

21     Q   That's not you yesterday?

22     A   I didn't know -

23              ATTY. PATTIS:  Objection.  Compound video -

24              THE COURT:  Overruled.

25              ATTY. PATTIS:  - testifying.

26  BY ATTY. MATTEI:

27     Q   That's you yesterday.  Right?

1      A    Yes.

2      Q    You gave that press conference, what about 2:00?

3      A    I – I don't understand the question.

4      Q    You don't understand the quest –

5      A    Yes, I gave a press conference.

6      Q    Yeah, it was around 2:00.  Right?

7      A    I believe so.

8      Q    Do you know who was testifying at that time?

9      A    No.

10     Q    Okay.

11     A    I was called here by you at 2 and then you said you

12   didn't need me.

13     Q    No, you were not, sir.  So maybe you want to talk to

14   your lawyer about that.

15              ATTY. PATTIS:  Objection to the colloquy and –

16              THE COURT:  All right.

17              ATTY. PATTIS:  - move to strike, Judge.  I'm not

18        in the case.

19              THE COURT:  All right.  So, Mr. Jones, I think

20        you offered testimony and there was no question

21        pending, so it's best not to do that.

22              THE WITNESS:  Yes, ma'am.

23              THE COURT:  Okay.

24              ATTY. PATTIS:  Judge, may we approach briefly.

25        Sidebar?

26              ATTY. MATTEI:  I don't –

27              ATTY. PATTIS:  I'm gonna –

```
 1        ATTY. MATTEI:  - Your Honor, I'd like -

 2        ATTY. PATTIS:  - to ask -

 3        ATTY. MATTEI:  - to move on.

 4        ATTY. PATTIS:  - for relief from the Court based

 5   on a - a problem -

 6        THE COURT:  All right.  I'll -

 7        ATTY. PATTIS:  - from yesterday.

 8        THE COURT:  - I'll see counsel in a sidebar.

 9        (Sidebar begins)

10        ATTY. PATTIS:  We were warned about contempt and

11   he's trying to put me in the case with these snide

12   comments and it - I don't think you should tolerate

13   it.

14        Mr. Jones said something that was untrue about

15   when he was to -

16        THE COURT:  (Indiscernible).

17        ATTY. PATTIS:  - appear yesterday.

18        THE COURT:  Would you like me - would you like

19   me to say something to correct because what he said

20   was untrue, he admitted - (indiscernible) -

21        ATTY. PATTIS:  No, I want you to admonish

22   counsel.  I am not in the case and I'm not gonna be

23   put in the case, or I'll get on the stand.

24        THE COURT:  Well, let's - let's not put Attorney

25   Pattis in the case.  Do you want me to say anything

26   to the jury about which of the - indiscernible.

27        ATTY. PATTIS:  I - I - I'd welcome you to say
```

1          that what he just said is not accurate.

2                 ATTY. MATTEI:  I don't know –

3                 ATTY. PATTIS:  – I didn't tell him be here at

4          2:00.

5                 Here's the deal.  At one point early in the day

6          he said I made him available at 2 – early in the day

7          you alerted him, now, I don't know when I got to him.

8          I just don't know – I did know that I –

9                 ATTY. MATTEI:  (Indiscernible).

10                ATTY. PATTIS:  – asked him to – Chris before you

11         start –

12                THE COURT:  What do you want me to tell the

13         jury, just so we can move on –

14                ATTY. PATTIS:  Just let's just move on.

15                THE COURT:  – because this –

16                ATTY. PATTIS:  – I just don't want to be

17         sniped –

18                THE COURT:  Okay.

19                ATTY. PATTIS:  – I don't want the sniping

20         directed at me.

21                THE COURT:  Okay.

22                **(Sidebar stops)**

23  BY ATTY. MATTEI:

24     Q   Would you can pull that back up.

25         And then down here is Greg Reese, that's you – your

26  contractor?

27     A   Yes.

1    Q    Okay.  So anybody comse to this stand-up video page

2    they've got you up top, Alex Jones, they can see anything

3    they want there, right, of your shows?

4    A    Yes.

5    Q    You got the War Room with Owen Schroyer, he's the guy

6    that comes on after you.  Right?

7    A    Yes.

8    Q    American Journal that's the gentleman that comes on

9    before you, those are your three live broadcasts each day.

10   Yes?

11   A    Yes, Chris.

12   Q    Okay.  You can back out of that.

13            THE COURT:  I tend to run a pretty formal

14        courtroom, Mr. Jones, which is why I call you

15        Mr. Jones.  So Attorney Mattie and Attorney Pattis.

16            THE WITNESS:  Attorney Mattie.

17            THE COURT:  Yes.

18   BY ATTY. MATTEI:

19   Q    Have you been telling your audience, Mr. Jones, this

20   week and last that this is a kangaroo court that Judge

21   Bellis is a tyrant, is part of a plot, because you don't

22   want your audience to know what's really happening, isn't

23   that correct?

24   A    No.

25            ATTY. PATTIS:  Objection, motion in limine.

26        Opening –

27            THE COURT:  All right.

```
 1              ATTY. PATTIS:  - a door.
 2              ATTY. MATTEI:  Your Honor, I don't think I'm
 3         opening any door.
 4              THE COURT:  All right.  So I think you can
 5         answer that question, sir, but just remember the
 6         issues that are off limits.
 7  BY ATTY. MATTEI:
 8     Q   Because your credibility, sir, is the most important
 9  thing with your audience, isn't it?
10              THE WITNESS:  How do I answer a question,
11         Your Honor, that I've been barred from answering
12         under orders of the Court?
13              THE COURT:  All right.  Sir, the question is
14         your credibility is the most important thing to you,
15         is that a question that you can -
16              ATTY. MATTEI:  The most important thing for -
17         with your audience.
18              THE WITNESS:  No.
19  BY ATTY. MATTEI:
20     Q   Correct?
21     A   My most important -
22     Q   It's not.  Okay.  No.  Your credibility's not your
23  most important thing.
24     A   It's crushing the -
25     Q   Okay.
26     A   - globalists.
27  BY ATTY. MATTEI:
```

1    Q    Crushing globalists.

2         And you tell your audience that they need to keep

3    letting you crush those globalists for the sake of their own

4    families.  Right?

5              ATTY. PATTIS:  Objection, Judge, motion in

6         limine.  Door opening.

7              ATTY. MATTEI:  Maybe I'm misunderstanding, but I

8         don't think that there's –

9              THE COURT:  I'm going to excuse the jury at this

10        point for five minutes, so that we can work out this

11        issue.  Okay.  So just be patient with us, as you've

12        been all along.

13             (Jury exits)

14             ATTY. MATTEI:  Maybe we should excuse –

15             ATTY. PATTIS:  He's the client, I think he's got

16        a right –

17             THE COURT:  Well, he's –

18             ATTY. MATTEI:  Oh, that's fine.

19             THE COURT:  – a party.

20             ATTY. PATTIS:  – to be here.

21             ATTY. MATTEI:  That's fine.

22             THE COURT:  So let me – I'm not sure I

23        understand.  Attorney Pattis might be right and I may

24        just not be getting it.  So what – why don't we

25        explore it a little bit and just –

26             ATTY. PATTIS:  My objection was as –

27             THE COURT:  Well, I want to get the question

1    again and a line of questioning and - and see what

2    the concerns -

3         ATTY. PATTIS:  I - I recall it, Judge, but if

4    you want - heard it back -

5         THE COURT:  No.  No.  No.

6         ATTY. PATTIS:   - you know, Attorney Mattei

7    inquired of Mr. Jones whether his credibility was his

8    most in - important attribute.  He said it wasn't.

9    Then Mr. Jones offered crushing globalists was, which

10   was nonresponsive.

11        However, Mr. Mattei adopted the nonresponsive

12   answer in his next question and asked about crushing

13   the globalists.  Mr. Jones would testify that he

14   believes that this trial is part of a plot to silence

15   him funded by the names I'm prohibited to utter in

16   the jury's present - presence and we've had extended

17   argument about that.

18        So I'm simply alerting the Court that in my view

19   if we're gonna have a consistent law of the case and

20   Attorney Mattei's gonna adopt that comment in his

21   questioning that's opening a door that I will seek to

22   walk through.  And so the - the purpose of the

23   objection, was to alert the Court and counsel that -

24   that this -

25        THE COURT:  So I - we - we don't, Attorney

26   Mattei, we don't want to inject politics into this,

27   so what do you suggest?

1              ATTY. MATTEI:  Your Honor, I – nobody's

2         injecting politics into this.  What I'm trying to get

3         at, the question I was just about to ask Mr. Jones

4         was the fact that he tells his audience that they

5         need him to crush the globalists to support their

6         families.  I'm not getting into whatever he's talking

7         about this plot in this courtroom.  What I'm getting

8         into is the general approach he takes, which is to

9         monetize his audiences' fears and pain and misery.

10             ATTY. PATTIS:  You don't get to take half an

11        answer and adopt the one part you like and ignore the

12        par – a part you don't.  And I think there's a way to

13        ask that without opening the door.

14             ATTY. MATTEI:  There's – there's nothing about

15        Mr. Jones' relationship with his audience that has

16        anything to do with his funding this lawsuit.

17             ATTY. PATTIS:  Judge, if –

18             ATTY. MATTEI:  I mean if –

19             ATTY. PATTIS:  - he's gonna question my client's

20        motives for wanting to crush the globalists and

21        suggest it's all about a dollar that's putting what

22        he's all about right in the center of this case.

23        And you may recall, one of the questions I asked

24        Clint Watts do you know whether Mr. Jones – I didn't

25        use this term – gins the anger of the public up, or

26        is he responding to an anger that's already there.

27        Watts didn't know.

1          Mr. Jones – whatever you may think of him and

2     his conduct in Sandy Hook has beliefs about the

3     globalists.  To question those motives about him, I

4     think will entitle me as a matter of right to – to

5     respond in my rehabilitation of him.

6          THE COURT:  And – and bring up what topics,

7     though?

8          ATTY. PATTIS:  Who are these globalists?  You

9     were just – so, you know, you were told that you were

10    publishing 5 12 and 5 13 as part of an effort to rile

11    up your audience to make a buck.  You've denied that.

12    What do you really doing, are you trying – you know,

13    what – who are these globalists, why do you think

14    this trial is part of a – an effort so sigh – you

15    know, who is the tyrant?  Why do you think the Judge

16    has behaved tyrannical?  Nobody may like the answers

17    he gives in this courtroom, but they're his answers

18    and if Attorney Mattei is –

19         THE COURT:  So hold –

20         ATTY. PATTIS:  – gonna call his credibility into

21    question on these, I think I have a right to inquire

22    about his beliefs.  And I think that the Court's been

23    pretty firm with me in the last three/four days about

24    where I can and can't go.  I – you know, and the

25    record is clear, I think I've tried to ask questions

26    within the scope of the exhibits the plaintiffs

27    offer, but they always offer something and –

1          THE COURT:  All right.

2          ATTY. PATTIS:  - then say oh we - you can't use

3     it for the purposes of defense, we -

4          THE COURT:  So -

5          ATTY. PATTIS:  - can only use it as a -

6          THE COURT:  I understand, Attorney Pattis.

7          ATTY. PATTIS:  - a sword.

8          THE COURT:  So - so if you're going to ask

9     Mr. Jones about globalists, Attorney Pattis wants to

10    elicit testimony about who the globalists are and

11    that apparently would violate my -

12         ATTY. MATTEI:  I'm not going to violate it,

13    we're not -

14         THE COURT:  Well, I believe -

15         ATTY. MATTEI:  - what I just asked Mr. Jones -

16         THE COURT:  - I think that I accept Attorney

17    Pattis' representation that it would.

18         ATTY. MATTEI:  Okay.  Well, the - the -

19         THE COURT:  Is that my understanding of what

20    you're saying, Attorney Pattis?

21         ATTY. PATTIS:  Well, I mean, obviously, I'd have

22    to get your permission to inquire but I believe that

23    this is opening the door.

24         THE COURT:  Do you -

25         ATTY. MATTEI:  If - if you accepted Attorney

26    Pattis' view here, then pretty much any question I

27    ask Mr. Jones about what he does Attorney Pattis is

1        gonna say it opens the door.  So, I don't think we -

2        asking him whether or not he's making money from

3        saying this opens the door to this, whatever it is -

4            ATTY. PATTIS:  Here's the problem with that.

5            ATTY. MATTEI:  - he wants to say.

6            ATTY. PATTIS:  That's not the question you asked

7        Mister -

8            ATTY. MATTEI:  It is.

9            ATTY. PATTIS:  - I mean it - and the record is

10       quite clear, Mr. Jones was asked a question about

11       whether his credibility was the most important thing

12       and he denied it.  And then gratuitously offered a

13       crushing the globalists was.  There were - counsel

14       had two options at that point.  It could have moved

15       to strike that answer as nonresponsive and then gone

16       on to the question he just asked you're - you're just

17       here to make a buck.  But he didn't.  He adopted the

18       answer opening the door - and that's part of a

19       pattern in this case to use the - they're -

20       they're -

21           THE COURT:  All right.

22           ATTY. PATTIS:  - they're - the - the motions in

23       limine here as a - as a sword, rather than a shield.

24       And we're entitled to swordsmanship as well and we

25       will engage in it.

26           THE COURT:  So, I think that you can inquire

27       about his monetizing his audience and making money,

1          but I think that you have to steer clear of eliciting

2          testimony that opens the door to his testifying, as

3          to who the globalists are.

4               ATTY. MATTEI:  Thank you, Your Honor.

5               THE COURT:  Do you need a minute?

6               ATTY. MATTEI:  Nope.  I'm ready.

7               THE COURT:  You're all set, Mr. Jones.

8               THE WITNESS:  Yes.

9               THE COURT:  Okay.

10              (Jury enters)

11              THE COURT:  Doing my mental count to nine.  All

12          right.  The record will reflect the entire panel has

13          returned.  Please be seated.  We all thank you for

14          your continued patience.

15              Whenever you're ready, Attorney Mattei.

16              ATTY. MATTEI:  Thank you, Your Honor.

17  BY ATTY. MATTEI:

18    Q   Mr. Jones, since this trial start – started September

19  13th, this is day seven, how much money has Free Speech

20  Systems made?

21    A   I don't keep track of it.

22    Q   You haven't been getting daily text messages with the

23  sales numbers?

24    A   No.

25    Q   Your testimony is in the last week nobody sent you

26  any text messages or the communications with the daily

27  sales?

1    A   I don't believe so.

2    Q   Okay.  Would you mind checking your phone at the

3  break?

4          ATTY. PATTIS:  Objection.

5          THE WITNESS:  I don't have my phone with me.

6  BY ATTY. MATTEI:

7    Q   Okay.  Well, when you get a chance.

8          ATTY. PATTIS:  Objection.

9  BY ATTY. MATTEI:

10    Q   You normally –

11         THE COURT:  Just –

12         ATTY. MATTEI:  - get – Oh.

13         THE COURT:  - there's an objection.

14         ATTY. PATTIS:  That's not normal discovery.

15         THE COURT:  I – I – I couldn't hear you.

16         ATTY. PATTIS:  Objection.  That's not proper.

17         ATTY. MATTEI:  Ongoing discovery obligation,

18      Your Honor.

19         THE COURT:  Well, if that is the case, Attorney

20      Pattis, I'm sure you'll deal with it at the break.

21      So we can move on.

22  BY ATTY. MATTEI:

23    Q   You normally get daily sales reports.  Right?

24    A   Sometimes I do.

25    Q   Tim Fruge sent you those?

26    A   No.

27    Q   Tim Fruge sent you those back in 20 19 and 20 20.

1    A   Yes, that's when he was employed, yes.

2    Q   Now, he is an affiliate –

3    A   Yes.

4    Q   – with you, right, he helps run this website called

5    FreeWorldAlpha.com.

6    A   Yes.

7    Q   And you have a financial interest in that, don't you?

8    A   I've – buys products from us.

9    Q   Excuse me?

10   A   Buys products from us and sells them.

11   Q   It buys products from you, you make money that way –

12   A   Mm-hmm.

13   Q   – and then they sell products on that website.

14   Right?

15   A   Yes.

16   Q   And that's – Tim Fruge's your former business

17   director.  Right?

18   A   Yes.

19   Q   And you set him up financially to do that.  Yes?

20   A   I don't believe so, no.

21   Q   You don't recall testifying in your deposition, sir,

22   that – that you funded FreeWorldOutlet initially to get him

23   off the ground?

24   A   I – can you refresh me on that testimony?

25   Q   I'm asking you right now if you recall it.

26   A   I don't remember FreeWorldOutlet that was a very

27   small site and I didn't really pay attention to it.

1    Q    Okay.  And that – did you tell the corporate rep

2  about that FreeWorldOutlet.com?

3    A    I don't remember.

4    Q    Okay.  Who is – who was the corporate rep, by the

5  way?

6    A    Brittany -

7         ATTY. PATTIS:  Objection.  Which one?  When?

8         Timing.

9  BY ATTY. MATTEI:

10    Q    The one who testified here.

11    A    Brittany Paz.

12    Q    And the – so Tim Fruge, who now helps run

13  FreeWorldOutlet.com, he used to give you daily sales

14  reports.

15    A    Sometimes, yes.

16    Q    Who – who does it now?

17    A    I've not been getting those reports.

18    Q    Okay.  Well, who does it, when you do get them?

19    A    I can go in and I can pull up a report myself, but

20  I've not been doing that because I don't – we don't –

21    Q    Mr. Jones, the question I asked you is who's doing it

22  now when you do get them, does –

23    A    Well, I'm not –

24    Q    – anybody send you – does anybody send you –

25         ATTY. PATTIS:  Objection.  He's trying to

26         answer, Judge.

27         THE WITNESS:  I'm not allowed under the Judge's

1       order to tell you about – about what happened to my

2       company.

3  BY ATTY. MATTEI:

4    Q  That's not true, Mr. Jones, what I'm asking you is

5  who sends you daily sales reports.

6         ATTY. PATTIS:  He's answered.  Asked and

7      answered several –

8         THE COURT:  I – I –

9         ATTY. PATTIS:  – times at this point.

10        THE COURT:  – didn't get the answer so, so are

11      you saying who – who was –

12        THE WITNESS:  Okay.  You're –

13        THE COURT:  – giving them.

14        THE WITNESS:  – telling me to answer the

15      question.

16        THE COURT:  All right.  So – well, I'm going to

17      excuse the jury again.  You're going to get your

18      exercise today for those of you who wear Fitbits.  So

19      just put your pads down and you'll follow Ron.

20        (Jury exits)

21

22               * * * * *

```
X06-UWY-CV18-6046436-S        :  SUPERIOR COURT

ERICA LAFFERTY                :  COMPLEX LITIGATION DOCKET


v.                            :  AT WATERBURY, CONNECTICUT


ALEX EMERIC JONES             :  SEPTEMBER 22, 2022
-----------------------------------------------------------
X06-UWY-CV18-6046437-S        :  SUPERIOR COURT

WILLIAM SHERLACH              :  COMPLEX LITIGATION DOCKET


v.                            :  AT WATERBURY, CONNECTICUT


ALEX EMERIC JONES             :  SEPTEMBER 22, 2022
-----------------------------------------------------------
X06-UWY-CV18-6046438-S        :  SUPERIOR COURT

WILLIAM SHERLACH              :  COMPLEX LITIGATION DOCKET


v.                            :  AT WATERBURY, CONNECTICUT


ALEX EMERIC JONES             :  SEPTEMBER 22,2022
```

E L E C T R O N I C

C E R T I F I C A T I O N


I hereby certify the electronic version is a true and correct transcription of the audio recording of the above-referenced case, heard in Superior Court, Judicial District of Waterbury, Waterbury, Connecticut, before the Honorable Barbara Bellis Judge, on the 22nd day of September.


Dated this 23rd day of September, 2022 in Waterbury, Connecticut.


*Peggy DiVito*
Peggy DiVito
Court Recording Monitor