# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| In re<br><br>Alexander E. Jones,<br><br>     Debtor, | Bankruptcy<br>Case No. 22-33553 (CML)<br><br>Chapter 11 |
| David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, Robert Parker, and Richard M. Coan, as Chapter 7 Trustee for the Estate of Erica Lafferty,<br><br>     Plaintiffs,<br><br>     v.<br><br>Alexander E. Jones and Free Speech Systems, LLC,<br><br>     Defendants. | Adv. Pro. No.: 23-03037 (CML) |

# REPLY MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................................1

ARGUMENT ...............................................................................................................................2

I.      Jones's "Additional Facts" Are Inappropriate and Irrelevant ...........................................2

II.     Jones Misstates Applicable Procedural Standards ..............................................................3

III.    The Connecticut Court's Damages Findings Collaterally Estop Jones from Relitigating Willful and Malicious Injury ............................................................................4

IV.    The Connecticut Jury Verdict, Default Judgment, and Record Collaterally Estop Jones from Relitigating Willful and Malicious Injury ......................................................9

V.     Jones's Attacks on the Connecticut Judgment Can Only Be Made in Connecticut ..........13

VI.    Even if the Damages Findings, Verdict, and Default Were Not Preclusive, The Record from the Connecticut Action Independently Confirms Willful and Malicious Injury ................................................................................................................18

CONCLUSION ..........................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Cas. & Sur. Co.* v. *Jones*,
  220 Conn. 285 (1991) ..................................................................................................3

*Bartenwerfer* v. *Buckley*,
  143 S. Ct. 665 (2023) ..................................................................................................4

*BMW of North America, Inc.* v. *Gore*,
  517 U.S. 559 (1996) ..................................................................................................16

*In re Bradley*,
  466 B.R. 582 (B.A.P. 1st Cir. 2012)..........................................................................10

*Buckeye Indus., Inc.* v. *Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*,
  587 F.2d 231 (5th Cir. 1979) ....................................................................................14

*In re Church*,
  69 B.R. 425 (Bankr. N.D. Tex. 1987) .......................................................................17

*Cumberland Farms, Inc.* v. *Town of Groton*,
  808 A.2d 1107 (Conn. 2002)......................................................................................15

*In re Dang*,
  560 B.R. 287 (S.D. Tex. 2016)...................................................................................10

*Dowling* v. *Finley Assocs.*,
  727 A.2d 1245 (Conn. 1999).......................................................................................5

*Filosi* v. *Elec. Boat Corp.*,
  193 A.3d 33 (Conn. 2018)........................................................................................6, 7

*In re Gober*,
  100 F.3d 1195 (5th Cir. 1996) ....................................................................................4

*Grogan* v. *Garner*,
  498 U.S. 279 (1991) ..................................................................................................17

*In re Hill*,
  265 B.R. 270 (Bankr. M.D. Fla. 2001).......................................................................10

*In re Huizar*,
  609 B.R. 482 (Bankr. W.D. Tex. 2019) ......................................................................6

*Kawaauhau* v. *Geiger*,
    523 U.S. 57 (1998) .................................................................................................. 13

*Kremer* v. *Chemical Construction Corp.*,
    456 U.S. 461 (1982) ................................................................................................. 15

*Lafferty* v. *Jones*,
    2021 WL 5911541 (Conn. Super. Ct. Nov. 18, 2021)............................................ 13

*Lafferty* v. *Jones*,
    2022 WL 18110184 (Conn. Super. Ct. Nov. 10, 2022).......................................... 17

*Lewis* v. *Green*,
    101 F. App'x 446 (5th Cir. 2004)........................................................................... 15

*Lexington Ins. Co.* v. *ACE Am. Ins. Co.*,
    2014 WL 3406512 (S.D. Tex. July 7, 2014) ............................................................ 8

*In re Limbaugh*,
    155 B.R 952 (Bankr. N.D. Tex. 1993). .................................................................... 7

*In re Mahadevan*,
    617 F. Supp. 3d 654 (S.D. Tex. 2022)............................................................... 8, 18

*Matsushita Elec. Indus. Co.* v. *Epstein*,
    516 U.S. 367 (1996) ................................................................................................. 15

*In re McGurk*,
    2018 WL 1632896 .................................................................................................... 9

*Miller* v. *Lewis*,
    391 B.R. 380 (E.D. Tex. 2008)................................................................................ 18

*Pacific Mutual Life Insurance Co.* v. *Haslip*,
    499 U.S. 1 (1991) ..................................................................................................... 17

*Parsons Steel, Inc. v. First Alabama Bank*,
    474 U.S. 518 (1986) ................................................................................................. 13

*In re Quinlivan*,
    434 F.3d 314 (5th Cir. 2005) .................................................................................... 4

*In re Rabalais*,
    496 F. App'x 498 (5th Cir. 2012)..............................................................2, 7, 14, 15

*In re Rabalais*,
    2012 WL 42101 (Bank. S.D. Tex. Jan. 9, 2012) ................................................3, 11

*In re Reitnauser*,
    152 F.3d 341 (5th Cir. 1998) ................................................................. 14

*In re Rossman*,
    2019 WL 3330781 (Bankr. D. Conn. July 24, 2019 ...................................... 8

*Sellers* v. *Work Force One, Inc.*,
    886 A.2d 850 (Conn. App. Ct. 2005) ........................................................ 7

*In re Sheppard*,
    686 F. App'x 289 (5th Cir. 2017) ............................................................ 14

*Smith* v. *Snyder*,
    839 A.2d 589 (Conn. 2004) .................................................................. 12

*Solon* v. *Slater*,
    345 Conn. 794 (2023) ..................................................................... 3, 8

*Stuart* v. *Stuart*,
    996 A.2d 259 (Conn. 2010) ................................................................... 8

*Ulbrich* v. *Groth*,
    78 A.3d 76 (Conn. 2013) ..................................................................... 5

**Statutes**

28 U.S.C. § 1738 ........................................................................ 2, 13, 15

## PRELIMINARY STATEMENT

The Connecticut court's explicit factual findings, made after five years of contested litigation, that Jones engaged in a "cruel, persistent course of conduct" that was "intentional," "malicious," "wanton," "heinous" and "certain to cause harm" requires the entry of summary judgment.  Jones cannot contest those findings in this proceeding, and they are dispositive.  Even if those findings were not dispositive, which they are, the Connecticut jury verdict and default judgment independently preclude Jones from relitigating whether the injuries he inflicted upon Plaintiffs were willful and malicious.  And even if none of the factual findings or rulings from Connecticut were binding on Jones (and they all are), independent review of the record confirms that Jones's willful and malicious conduct gave rise to the debt at issue.

In his opposition ("Opp."), Jones cannot dispute the Connecticut court's explicit findings nor dispute that such findings would ordinarily warrant a determination of non-dischargeability.  To the extent he addresses the trial court's damages opinion (the "Damages Opinion") at all, he argues that, in another reality, the Connecticut court *could have* entered judgment against Jones without such findings.  That is inaccurate and irrelevant.  The Connecticut court held, over Jones's argument, that Jones's conduct demonstrated "the *highest degree of reprehensibility and blameworthiness*"  because it was "*intentional and malicious*" and *not* merely "reckless."  Where such factual determinations are clearly made, collateral estoppel precludes the losing party from relitigating those factual findings.

Jones also cannot dispute, except by mischaracterization or omission, the five-year proceedings in Connecticut, including: the 394-paragraph complaint that extensively alleges willful and malicious conduct; Jones's appearance and vigorous defense of the action; the years of discovery orders, warnings, and intermediate sanction rulings that ultimately ended in his default for willful and persistent noncompliance and litigation abuse; the four-week damages trial where

he was represented by counsel and testified; and the resulting jury verdict and the Damages Opinion. This record refutes Jones's strained contentions that his intent and the objective likelihood he would cause harm were not "actually litigated."

The remainder of Jones's brief is an improper collateral attack asking this Court to overrule the Connecticut Judgment because, in Jones's view, the Connecticut proceeding was "unfair," "skew[ed]," and "unconstitutional." Jones cannot point to a single bankruptcy court that has *ever* rejected a state court judgment on such grounds, likely because his arguments are foreclosed by the Full Faith and Credit clause of the U.S. Constitution. Indeed, the Fifth Circuit has rejected identical arguments in non-dischargeability cases, explaining that "federal courts lack jurisdiction to entertain collateral attacks on state court judgments," and that such "attacks" must be "raised on appeal in the [state] court system, not before a federal bankruptcy court." *In re Rabalais*, 496 F. App'x 498, 500 (5th Cir. 2012) (quotations omitted). Jones's specious arguments must be pursued in his direct appeal.

This Court cannot ignore the factual findings from the Connecticut Action—findings that were echoed in the wholly independent Texas Action, which Jones also believes was "unfair" and "unconstitutional." (23-ap-3035, Dkt. 32 at 2.) Rather than two separate state courts each independently making fundamental error against the same defendant, the far simpler explanation is that Jones's conduct was—quite plainly—intentional and malicious. Plaintiffs' motion should be granted.

## ARGUMENT

### I.   Jones's "Additional Facts" Are Inappropriate and Irrelevant

Jones's brief begins with "additional facts" about his conduct, Opp. ¶¶ 5–20, and a supporting declaration, Dkt. 61-1, that are intended to contest the Connecticut court's findings. This effort fundamentally misunderstands collateral estoppel, which applies to "issues and facts"

2

resolved "*in the prior proceeding.*"  *Solon* v. *Slater*, 345 Conn. 794, 823–25 & n.15 (2023) (emphasis added).  Jones's intent to harm, and the objective certainty that his conduct would harm others, were decided in the Connecticut proceeding, and Jones cannot relitigate them here.

Jones's Declaration is particularly inappropriate because the parties *stipulated* that this motion "*will be focused on the effect of the state court records*—that Jones is precluded from litigating the state court findings and that the state court records (which form the basis for those findings) entitle the Texas and Connecticut Plaintiffs to summary judgment on their claims." (Dkt. 40 ¶ 7 (emphasis added).)  This provision—which Jones's counsel requested, and this Court so-ordered—forecloses consideration of Jones's Declaration.

## II.   Jones Misstates Applicable Procedural Standards

Jones misconstrues the procedural standard.  He argues that "summary judgment is generally ill-suited for resolving cases involving allegations of intent."  (Opp. ¶ 21.)  But the summary judgment issue presented here is not whether there are material questions *of fact* regarding "allegations of intent," but whether there are material questions about the *legal application* of collateral estoppel to the clear factual findings in the Connecticut action.  *See In re Rabalais*, 2012 WL 42101, at *2 (Bank. S.D. Tex. Jan. 9, 2012) (where creditor seeks summary judgment in non-dischargeability proceeding based on a state court judgment, "there are no genuine factual issues").  Indeed, the Connecticut Supreme Court has repeatedly held that determinations of intent are precisely the kinds of "issues and facts" that are subject to collateral estoppel.  *See, e.g. Solon*, 345 Conn. at 822 (prior determination of testator's intent foreclosed plaintiff from relitigating testator's intent in a later proceeding); *Aetna Cas. & Sur. Co.* v. *Jones*, 596 A.2d 414, 422 (Conn. 1991) (finding of intent in criminal trial foreclosed relitigation of intent in subsequent insurance proceedings).

Jones also argues that courts evaluating collateral estoppel based on default judgments

must presume that the judgment was "rendered on the narrowest possible grounds." (Opp. ¶ 26.)
This legal proposition—apparently pulled from thin air—is unsupported by any case that Jones
cites. It is also inconsistent with Connecticut and federal authority applying collateral estoppel to
default judgments, *particularly* to disciplinary defaults like the one here. *Infra* § IV; *In re Gober*,
100 F.3d 1195, 1205–06 (5th Cir. 1996) (debtor's pre-default misconduct "bolster[s] our
conclusion that the bankruptcy and district courts properly afforded collateral estoppel effect to
the judgment.").

Finally, Jones cites an opinion from the 1980s for the proposition that "exceptions to
discharge in bankruptcy are to be narrowly construed in favor of the Defendant." (Opp. ¶ 21.)
More recent decisions confirm that this principle "cannot be used to overcome the plain language
of the Bankruptcy Code," *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005), nor to "artificially
narrow [the] ordinary meaning" of Section 523, *Bartenwerfer* v. *Buckley*, 143 S. Ct. 665, 673
(2023). Jones ignores the extensive case law cited in Plaintiffs' opening brief granting summary
judgment for creditors on non-dischargeability grounds in substantially similar circumstances.
(Br. 19–20, 23–24, 26–27, 30.)

III.   **The Connecticut Court's Damages Findings Collaterally Estop Jones from
       Relitigating Willful and Malicious Injury**

The Connecticut court, in its Damages Opinion, surveyed the entire record of the
Connecticut Action and made specific factual findings about Jones's intent, including that his
"cruel, persistent course of conduct" was not merely "reckless," but instead that his decade-long
"target[ing]" of Plaintiffs was "certain to cause harm," "intentional and malicious," and therefore
established "the highest degree of reprehensibility and blameworthiness." (Br. 17 (citing SUMF
¶ 43).) These determinations are dispositive.

Jones's attempts to sidestep these findings must be rejected because they ignore the reality

4

of the Connecticut record and basic principles of Connecticut collateral estoppel law.

**First**, although Jones *concedes* that these findings "conjure up the 'objective substantial certainty of harm' criteria under § 523(a)(6)," Jones nonetheless argues that this issue was not "necessarily decided" in the court's Damages Opinion because CUTPA punitive damages can *theoretically* be awarded based on a finding of recklessness. (Opp. ¶¶ 43–45.) Jones contends that "if a judgment does not specify the issue on which it was based, collateral estoppel does not preclude subsequent litigation," and cites *Dowling* v. *Finley Assocs.*, 727 A.2d 1245, 1252 (Conn. 1999)—a case involving judgment based on a *general jury verdict*. (Opp. ¶ 25.)

But the Connecticut court *did* "specify the issue on which its decision was based." Jones argued that *no* CUTPA punitive damages should be awarded. (*See e.g.*, SUMF ¶ 38; Sterling Ex. 21, at 9.) The court was thus required to determine whether CUTPA punitive damages should be awarded and, if so, in what amount. Under Connecticut law, "the reprehensibility of a defendant's conduct" is "the most important" consideration in this analysis. *Ulbrich* v. *Groth*, 78 A.3d 76, 127 (Conn. 2013). In assessing the reprehensibility of Jones' conduct, the Connecticut court found that Jones's conduct was "intentional," "malicious," "deprav[ed]," "cruel," "certain to cause harm," and *not* merely "reckless." (SUMF ¶ 43.) As a result, the court concluded that Jones's conduct constituted "the *highest degree of reprehensibility*," and awarded $150 million in CUTPA punitive damages. (SUMF ¶¶ 43, 47.) These determinations were explicit and essential to the CUTPA punitive damages ruling.

The opinion in *World Wrestling Entertainment, Inc.* v. *THQ, Inc.*—which Jones does not distinguish—is on point. 2008 WL 4307568 (Conn. Super. Ct. Aug. 29, 2008). There, WWE argued that collateral estoppel did not apply to a prior court's dismissal of its RICO claims on statute of limitations grounds because the court had *also* dismissed the RICO claims on the

independent and sufficient ground of a "lack of RICO injury." *Id.* at *5. The court rejected this argument because "there is no doubt that the [prior] court decided the facts against WWE on the statute of limitations issues," and "[s]uch a clear and indisputable finding makes the holding in *Dowling* inapplicable." *Id.* at *6. Here, too, the Connecticut court made a "clear and indisputable finding" that Jones's conduct was "intentional and malicious," and not "reckless." That finding is entitled to preclusive effect, regardless of whether a different court in a different reality could have awarded punitive damages based on mere recklessness or without considering the objective certainty of harm. This Court need not guess or make assumptions—the Connecticut court explicitly answered those questions. Unsurprisingly, none of the cases Jones relies upon involve a state court that made express findings of a defendant's "intentional and malicious" conduct.

Jones also asserts that the CUTPA punitive damages assessment was "not dependent" on a finding of objective certainty of harm, because "Connecticut courts consider a range of factors" to determine CUTPA punitive damages and "the Connecticut court found that every factor favored high punitive damages." (Opp. ¶¶ 44–46.) This argument misconstrues Connecticut collateral estoppel law, which looks to legal tests "as applied" by the factfinder. *Filosi* v. *Elec. Boat Corp.*, 193 A.3d 33, 47 (Conn. 2018). That the Connecticut court held that additional factors *also* favored a punitive damages award detracts neither from its determination that Jones's conduct was intentional and malicious and objectively certain to cause harm, nor that this finding was the court's "most important consideration" in applying the test. (SUMF ¶ 42.)

**Second**, Jones argues that whether his conduct was "willful and malicious" was not "actually litigated" in the Connecticut case (Opp. ¶ 47)—an astonishing contention, given five years of hotly disputed litigation; the default judgment; the four-week trial and jury verdict; and the trial court's explicit findings on those exact issues after additional briefing from the parties.

This record easily satisfies the "actually litigated" prong.

Faced with this insurmountable record, Jones claims the proceedings were not fair because he was limited in the testimony he could give at trial.  (Opp. ¶ 55.)  Jones raises this issue in his direct appeal, *see* Brief of Defendants Alex Jones and Free Speech Systems, LLC at 4 (Issue III), 32–37, *Lafferty* v. *Jones*, No. AC 46131 (Ct. App. Ct. 2023) ("App. Br."). It is for the Connecticut Appellate Court to decide and he cannot raise it here.  *In re Rabalais*, 496 F. App'x at 500.  Jones's argument contravenes Connecticut law, under which an issue is "actually litigated" so long as it "is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Filosi*, 193 A.3d at 42.  There is no requirement that the estopped party presented all *desired* evidence in the prior action, *Sellers* v. *Work Force One, Inc.*, 886 A.2d 850, 854 (Conn. App. Ct. 2005), and Jones cites no case rejecting collateral estoppel on such grounds.

Indeed, the cases that Jones *does* cite—*In re Limbaugh*, 155 B.R. 952 (Bankr. N.D. Tex. 1993), and *In re Huizar*, 609 B.R. 482 (Bankr. W.D. Tex. 2019)—undercut his position.  Both cases held that debtors *were estopped* from relitigating Section 523(a)(6) issues because the debtor's liability was determined by default and plaintiffs were then "required to establish through evidence that the degree and type of Defendant's misconduct warranted punitive damages" in a damages trial. *Limbaugh*, 155 B.R. at 958; *Huizar*, 609 B.R. at 491. That is what happened here. Br. 12–13, 21–22.

**Third**, Jones argues that the factual findings in the punitive damages award were "a mere continuation of the Default Judgment."  (Opp. ¶ 57.)  That the default determined certain factual predicates does not affect the analysis here, as disciplinary sanctions are particularly well-suited for the application of collateral estoppel.  *Infra* § IV.  Moreover, Jones misquotes the trial court as saying that "punitive damages" were "established by virtue of the defaults"; the trial court *actually*

said that "the *material allegations of the complaints*" were "established by virtue of the defaults." (Sterling Ex. 22 at 39.)  Jones omits the court's subsequent statements, which make clear that it relied on the full record (including trial evidence) and not just the default judgment.  The very next sentence—which Jones omits—refutes the premise of his argument: "In support of their claim for CUTPA punitive damages, the plaintiffs, in their briefs, support each *Ulbrich* factor with <u>specific citations to the record</u>."  (Sterling Ex. 22 at 39.)

**Fourth**, Jones argues that issue preclusion cannot apply where "the party invoking collateral estoppel has a heavier burden in the second action than the first."  (Opp. ¶ 24.)  This argument fails because the burden in both proceedings is the same.  *Compare In re Mahadevan*, 617 F. Supp. 3d 654, 661 (S.D. Tex. 2022) (a creditor "bears the burden of proving the elements of § 523(a)(6) by a preponderance of the evidence"), *with Stuart* v. *Stuart*, 996 A.2d 259, 266 (Conn. 2010) (applying "preponderance of evidence standard to CUTPA claim for punitive damages").

**Fifth**, Jones does not dispute that the Connecticut court's factual determinations in the Damages Opinion—i.e., that his conduct was "intentional and malicious"—applied to Jones's course of conduct underlying all of Plaintiffs' claims and not just to one claim.  (Br. 17, 22–23, 24–25.)  Accordingly, he has waived any argument that these findings do not apply to all claims (*e.g.*, IIED) arising from that course of conduct.  *See Lexington Ins. Co.* v. *ACE Am. Ins. Co.*, 2014 WL 3406512, at *22 (S.D. Tex. July 7, 2014) ("Where a party fails to respond to arguments in the opposing party's motion for summary judgment, the points are conceded.").  Moreover, under Connecticut law, "collateral estoppel precludes a party from relitigating *issues and facts*" even when claims differ.  *Solon*, 345 Conn. at 824 n.15 (citation omitted) (emphasis added); *see In re Rossman*, 2019 WL 3330781, at *5 (Bankr. D. Conn. July 24, 2019) (a determination that

a judgement based on a certain course of conduct is nondischargeable renders all claims "based on the same facts . . . likewise nondischargeable").

**IV.**     **The Connecticut Jury Verdict, Default Judgment, and Record Collaterally Estop Jones from Relitigating Willful and Malicious Injury**

Because the factual findings in the damages ruling establish that Jones's conduct was willful and malicious, they preclude all claims arising from Jones's course of conduct.  Ignoring this basic principle, Jones hypothesizes that he *could have* been found liable for defamation and IIED without a finding of intent.  Just like the trial court's damages findings, the *actual* Connecticut record defeats this hypothesis.

*First*, Jones fails to respond to the argument that his liability for violating CUTPA necessarily satisfies the "willful and malicious" standard of 523(a)(6).  *See, e.g.*, *In re McGurk*, 2018 WL 1632896, *5 (Bankr. D. Conn. Apr. 2, 2018) (holding that CUTPA violation collaterally estopped debtor from relitigating "willful and malicious injury" where state court found that "the conduct of the defendants . . . was unethical, immoral, unscrupulous and likely to cause substantial injury"); *see also* Br. 27.  He has therefore "conceded" the point.  *See Lexington*, 2014 WL 3406512, at *22.

*Second*, Jones argues his default liability for defamation and IIED are not entitled to preclusive effect because both torts *could be* satisfied by showings of recklessness or other mental states short of "intent."  (Opp. ¶¶ 31, 36.)

The jury charge, however, confirms that Jones's conduct was substantially certain to harm plaintiffs.  Jones incorrectly argues that "it is impossible to determine whether defamation *per se* is inherent in the judgment."  (Opp. ¶ 35.)  The Connecticut court *specifically instructed* the jury that Jones was liable for defamation *per se*, explaining in its discussion of defamation that "[t]he law presumes that there is injury to the [P]laintiffs' reputations."  (SUMF ¶ 28.)  This instruction

9

reflects the Connecticut court's view that Jones was liable for defamation *per se*.  (Br. 25–26.)

Indeed, Jones *agreed* that the claims sounded in defamation *per se* in his proposed jury

instructions.  (DN 991 at 2.)[1]  Moreover, Jones does not address any of Plaintiffs' cases holding

that judgments for defamation *per se* are non-dischargeable under Section 523(a)(6).  In *In re

Scarbrough*, for example, the court explained that, "in the case of defamation *per se*, the harm

caused by the words *is so obviously hurtful* that they require no proof of injury."  516 B.R. 897,

911 (W.D. Bankr. Aug. 29, 2014) (emphasis added).  The court held that debtor's liability for

defamation *per se* satisfied both the objective and subjective prongs of Section 523(a)(6) where

the debtor "disseminated the false and outrageous allegations that [plaintiffs] abused and murdered

their father," which "a reasonable person" would recognize "are substantially certain to cause

harm."  *Id.*  The same reasoning applies to Jones's liability for defamation *per se* for disseminating

"false and outrageous allegations" about Plaintiffs here.  *See id.*

    With respect to IIED, the Connecticut court charged the jury that Jones either "intended to

inflict emotional distress" or "knew or should have known that emotional distress was the likely

result of [Jones's] conduct."  (Br. 25–26.)  Jones offers no response to Plaintiffs' argument that

this charge is substantially similar to the "objective substantial certainty of harm" requirement of

Section 523(a)(6), and fails to distinguish Plaintiffs' case law holding that IIED claims "have

typically been held nondischargeable."  (Br. 27 (citing authority).)  The cases Jones cites are

inapposite because none had detailed factual findings as to the willful and malicious conduct

underlying the judgment.[2]

---

[1]   "DN" citations refer to the docket number of the *Lafferty* v. *Jones* docket.  *See* https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=UWYCV186046436S.

[2]   *See, e.g.*, *In re Dang*, 560 B.R. 287, 294 (S.D. Tex. 2016) (state court judgment for fraudulent and unconscionable behavior included no specific findings of knowledge or intent); *In re Hill*, 265 B.R. 270, 277 (Bankr. M.D. Fla. 2001) (verdict was ambiguous as to whether jury relied upon fraud, malice, or oppression when awarding IIED punitive damages); *In re Bradley*, 466 B.R. 582, 588 (B.A.P. 1st Cir. 2012) ("[I]f the California judgment were based unambiguously upon [the debtor's] subjective intent to injure [plaintiff], collateral estoppel would apply").

Nor does Jones dispute that this Court "should not rely just on the judgment itself, but should *also look to the record of the state proceeding*" in determining whether collateral estoppel is appropriate. *In re Rabalais*, 2012 WL 42101, at *4 (emphasis added); Br. 28. As discussed *infra* § VI, that record overwhelmingly confirms that Jones's conduct was willful and malicious. (Br. 32-36.)

**Third**, Jones argues that default judgment cannot satisfy the "actually litigated" requirement. But Connecticut courts have long held that a default judgment does satisfy the "actually litigated" element when the estopped party "participated" in the prior action. Jones cannot dispute his extensive participation in the Connecticut action. (*See* Br. 13, 20; SUMF ¶ 25.)

Jones acknowledges that Connecticut law enforces collateral estoppel for "default judgments rendered as a sanction for discovery violations," but he insists this rule should not apply because there is no "nexus between the discovery withheld and the issue estopped." (Opp. ¶¶ 50-51.) This argument, for which Jones offers no legal support, is factually and legally wrong. Jones was not defaulted for a mere "discovery violation." Jones engaged in extensive discovery misconduct and threatened Plaintiffs' counsel on-air, resulting in a significant sanction and a warning that further similar conduct would result in default. (SUMF ¶¶ 6–12.) Jones appealed and the Connecticut Supreme Court affirmed the sanction. (SUMF ¶ 13.) Undeterred, Jones continued to violate the protective order in a manner likely to "have a chilling effect" on witnesses, violate discovery orders, and fail to produce "critical documents." (SUMF. ¶¶ 13–22.) The court held that this constituted "a pattern of obstructive conduct that interferes with the ability of the [P]laintiffs to conduct meaningful discovery and prevents the plaintiffs from meaningfully prosecuting their claims." (SUMF ¶ 22.) The trial court also highlighted that Jones repeatedly and willfully misled it and Plaintiffs. (*See* DN 574 at 5, 9, 12, 13.)

Jones's argument also ignores substantial case law clarifying that a disciplinary default, like the one here, makes collateral estoppel *particularly appropriate* to ensure that parties are not rewarded for litigation misconduct.  (Br. 20–21 (citing cases).)  And even a "nexus" were required to apply collateral estoppel to a default judgment—and there is not—it would be satisfied here since Jones withheld evidence *directly relevant* to his intent and the objective substantial certainty that his conduct would harm plaintiffs.[3]

**Fourth**, Jones offers *no response* to plaintiffs' argument that the allegations admitted as true by virtue of the default are entitled to preclusive effect.  (Br. 28–30.)  Jones does not dispute that "the entry of default judgment conclusively establishes the facts alleged in the complaint," *Smith* v. *Snyder*, 839 A.2d 589, 598 (Conn. 2004), nor that the default judgment thus "conclusively established" material facts about his knowledge and intent, including that he "knew that [his] publications could cause the plaintiffs to suffer harassment and potential violence."  (Br. 29.)  These admitted facts independently preclude Jones from relitigating willful and malicious injury.

Instead, Jones argues that the default judgment was "of questionable legality" because the primary purpose of a discovery sanction is to ensure the other party's "rights are protected," not to "exact punishment."  (Opp. ¶ 86 (citing *Usowski* v. *Jacobson*, 836 A.2d 1167, 1174 (Conn. 2003).)  The Connecticut Supreme Court rejected a similar argument and distinguished *Usowski* when Jones appealed an earlier sanction, because, unlike here, the record in *Usowski* did not establish that "the failure to comply with the discovery orders constituted a continuing pattern of violations." *Lafferty* v. *Jones*, 379246 A.3d 429, 460 (Conn. 2020).  In any event, Jones's arguments belong in

---

[3]    Jones suggests that his "discovery violations" were limited to withholding Google analytics data.  Not so.  This was one violation among many.  And that data passes Jones's invented "nexus" test, as the court found that the withheld discovery was "critical material information that the plaintiffs needed to prove their claims."  (Br. 12.)  Indeed, Jones himself argued that this data would show the relationship between his Sandy Hook content and his profits.  Defs.' Emerg. Mot., DN 348 at 3.

the Connecticut Appellate Court, where Jones has, indeed, raised them.  *See* App. Br. at Issue I.

*Finally*, Jones relies heavily on the Supreme Court's decision in *Kawaauhau* v. *Geiger*, 523 U.S. 57, 59–62 (1998), in which the Court explained that Section 523(a)(6) does not apply when "an act is intentional, but injury is unintended," such as where "a medical malpractice judgment [was] attributable to negligent or reckless conduct."  That case has no bearing here, where the Damages Opinion, overwhelmingly supported by the record, held that Jones's conduct was *not* negligent or reckless, but instead willful and malicious and certain to harm Plaintiffs. Jones's framing of *Kawaauhau* ignores the Fifth Circuit's clear articulation of Section 523(a)(6), which does not require subjective intent but can instead be satisfied by an objective substantial certainty of harm.  (Br. 32–36.)

## V.  Jones's Attacks on the Connecticut Judgment Can Only Be Made in Connecticut

The remainder of Jones's brief consists of improper collateral attacks on the Connecticut Judgment.  Under the Full Faith and Credit Clause of the U.S. Constitution, "a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc.* v. *First Alabama Bank*, 474 U.S. 518, 523 (1986).  Jones's attacks violate this bedrock constitutional principle, Opp. ¶ 59, and this Court should reject them.

*First*, Jones asks this Court to review whether the Connecticut Judgment violated the First Amendment, improperly using Jones's new Declaration to reframe his intent.  (Opp. ¶¶ 68, 71-73.) Jones previously raised First Amendment arguments in Connecticut, where he moved to strike (i.e., dismiss) Plaintiffs' complaint.  The court rejected Jones's argument, holding that because Plaintiffs alleged actual malice, the First Amendment did not foreclose Plaintiffs' claims. *See Lafferty* v. *Jones*, 2021 WL 5911541, at *4 (Conn. Super. Ct. Nov. 18, 2021).

Jones's constitutional arguments must be raised on appeal in Connecticut, not here.  The Fifth Circuit's opinion in *In re Rabalais* is dispositive.  There, a bankruptcy court granted summary

judgment on collateral estoppel grounds and held that a state court debt was nondischargeable

under Section 523(a).  On appeal, the debtor attacked the state court decision.  The Fifth Circuit

held:

> Even assuming, arguendo, that the California court erred . . . the bankruptcy court
> correctly concluded that it could not revisit that [decision].  Generally speaking,
> bankruptcy courts may not sit as appellate courts and revisit the merits of state court
> decisions.  Under the *Rooker–Feldman* doctrine, federal courts "lack jurisdiction to
> entertain collateral attacks on state court judgments."  A state court judgment is
> "attacked" when the losing party in a state court action seeks "what in substance
> would be appellate review of the state judgment."   Rabalais's "attack" on the
> California court's decision-making ought to have been raised on appeal in the
> California court system, not before a federal bankruptcy court.  Like the bankruptcy
> court, we lack the authority to review the decision of the California court.

496 F. App'x at 500 (citations omitted); *see also In re Sheppard*, 686 F. App'x 289 (5th Cir. 2017)

(Mem.) (debtor appealing non-dischargeability ruling "cannot challenge the validity of the state

court default judgment in this bankruptcy proceeding); *In re Reitnauser*, 152 F.3d 341, 344

(5th Cir. 1998) (holding that district court reviewing bankruptcy decision improperly assessed the

legitimacy of the state court judgment against the debtor).  Indeed, a case that Jones repeatedly

invokes—*Huizar* (Opp. ¶¶ 54, 58–59)—explicitly *rejected* the constitutional argument Jones

raises here.  609 B.R. at 496–97.  The bankruptcy court there rejected a debtor's argument that a

"state court judgment is void as unconstitutional restraint on Defendant's guaranteed free speech

rights and under the First and Fourteenth Amendments of the U.S. Constitution," holding that if

"Defendant believes the basis of a foreign judgment . . . is somehow unconstitutional[,] the proper

venue for that argument is in the North Carolina court system, not in this one." *Id.* at 495–96.  The

same reasoning prohibits this Court from entertaining Jones's "attack" on the Connecticut

Judgment.

Jones argues that an exception to this black-letter rule exists for purported constitutional

violations.  (Opp. ¶¶ 59–60.)  But he cites *no* case that has *ever* upheld a collateral attack on such

grounds.  Instead, Jones relies on a single-Justice *dissent* in *Matsushita Elec. Indus. Co.* v. *Epstein*, 516 U.S. 367, 395 (1996) (Ginsburg, J., dissenting), for the proposition that "whether to grant full faith and credit to a state court judgment is determined independently of the judgment."  *Id.* (citing *Kremer* v. *Chemical Construction Corp.*, 456 U.S. 461, 482 (1982)).  But Justice Ginsberg's dissent and the *Kremer* decision concerned the wholly separate and hypothetical issue of judgments that purportedly violate the Fourteenth Amendment's procedural due process requirements, and *neither opinion* determined that a state court judgment was invalid or otherwise not entitled to full faith and credit.  *Matsushita*, 516 U.S. at 386–87, 399; *Kremer*, 456 U.S. at 481, 485.  Jones raises no procedural due process claims here.

Moreover, notwithstanding Jones's purported exception, the Fifth Circuit has repeatedly applied collateral estoppel to preclude substantive constitutional challenges.  *See, e.g.*, *Lewis* v. *Green*, 101 F. App'x 446 (5th Cir. 2004) (affirming dismissal of constitutional claim under the "doctrines of collateral estoppel and res judicata"); *Buckeye Indus., Inc.* v. *Sec'y of Lab., Occupational Safety & Health Rev. Comm'n*, 587 F.2d 231, 233 (5th Cir. 1979).

**Second**, Jones argues this Court should ignore the Connecticut court's factual findings because of "concerns" about the "quality, extent, or fairness of the prior proceeding."  (Opp. ¶ 78.)  Jones should raise such "fairness" concerns on direct appeal, "not before a federal bankruptcy court."  *Rabalais*, 496 F. App'x at 500.

Jones asserts that Connecticut law may decline to apply collateral estoppel when doing so would "work an injustice" and "frustrate other social policies."  (Opp. ¶ 77 (quoting *Cumberland Farms, Inc.* v. *Town of Groton*, 808 A.2d 1107, 1117 (Conn. 2002)).)  But he cites *no case* where this rule was applied in a bankruptcy proceeding.  Instead, he relies on the inapposite *Cumberland Farms*, which declined to grant preclusive effect to the "constitutional fact-finding" of "citizen

15

volunteers" on a zoning board where doing so would "run counter to the well-established common law principle that administrative agencies lack the authority to determine constitutional questions." 808 A.2d at 1119–20.  There are no such concerns here, where the Connecticut Judgment was issued by a duly-appointed judge following five years of intense litigation culminating in a jury trial on damages.[4]

Jones also badly misconstrues the record to support his "fairness" argument, insisting he was defaulted simply for "failing to produce (sufficient[]) web traffic data in [Plaintiffs'] preferred format," all without "adequate notice of the magnitude of the sanction."  (Opp. ¶¶ 80–81.)  But Jones was subject to multiple, escalating sanctions over several years due to a pattern of bad-faith litigation misconduct.  *Supra* § III.  The Connecticut court warned Jones *no less than seven times* that continuing violations would result in a default.  (Sterling Ex. 7; DN 309.10; DN 326.10; DN 336; DN 348.10; DN 372; DN 376.10.)  And the damages amounts were assessed respectively by a jury of Jones's peers and the judge after a lengthy damages trial.  (Br. 13–14; SUMF ¶¶ 25-47.)  If anything, it would be "unfair" and "work an injustice" to permit Jones to make a mockery of the prior proceeding and reward him for his years-long litigation misconduct by allowing him to relitigate the Connecticut action here, particularly since cases involving disciplinary defaults are *particularly well-suited* to the application of collateral estoppel.  *Supra* § IV.  Jones's "fairness" argument is impossible to square with a *different court's* independent determination that Jones caused willful and malicious injury to Sandy Hook families in the Texas Action.  (*See* 23-ap-3035, Dkt. 27 at ¶¶ 4, 50–51, 57–58.)

Jones's case law is easily distinguished.  He relies principally on *BMW of North*

---

[4]   Moreover, none of the factors enumerated by the Connecticut Supreme Court suggest that this Court should apply an "exception" to the "general policy favoring" collateral estoppel.  *Cumberland Farms*, 262 Conn. at 60.  Jones identifies no legislative intent or public policy weighing against estoppel, nor argues that the "incentive" or "opportunity" to litigate these claims "differs as between the two forums."  *Id.* at 61.

*America, Inc.* v. *Gore*, 517 U.S. 559 (1996), where the Supreme Court held that a punitive damages award was "grossly excessive" because it represented a "500 to 1 ratio" between punitive and compensatory damages and because of the low level of "reprehensibility" of conduct.  *Id.* at 574-76, 583. Here, as the Connecticut court held in rejecting this argument, the punitive damages award is *less than* the compensatory award (not 500 times larger), notwithstanding that Jones's conduct reflected "the highest degree of reprehensibility and blameworthiness."  (SUMF ¶ 50.)[5]

    **Third**, Jones argues that collateral estoppel should not apply because the "bankruptcy was anticipated by the parties and the [prior] proceedings [were] skewed with the specific intention to obtain a non-dischargeable judgment."  (Opp. ¶ 90.)  Jones relies on a single case that does not support his baseless theory: *In re Church*, 69 B.R. 425 (Bankr. N.D. Tex. 1987), which articulated a novel test to assess collateral estoppel in light of uncertainty around its application in dischargeability proceedings *at that time. Id.* at 428.  The Supreme Court subsequently "clarifi[ed] that collateral estoppel principles indeed apply in discharge exception proceedings pursuant to § 523(a)."  *See Grogan* v. *Garner*, 498 U.S. 279, 285, n. 11 (1991).  Jones cites *no case* (and we are aware of none) that has *ever* applied *Church* or its test to avoid collateral estoppel.

    Even if the standard in *Church* did apply, it *supports* collateral estoppel.  The court there *applied collateral estoppel* because the claims relevant to dischargeability were "the essence of the prior state court proceedings, and the record shows that the issues were vigorously contested by the Debtor." *Church*, 69 B.R. at 432.  So too, here.  Plaintiffs alleged that Jones acted willfully and maliciously and actively litigated this issue for nearly five years over Jones's vigorous defense, and the Connecticut court agreed.  (Br. at 29; SUMF ¶ 43.)

    Jones's key example of "skew[ing]" the Connecticut case is that plaintiffs "strategically

---

[5]    The Connecticut court properly distinguished *Pacific Mutual Life Insurance Co.* v. *Haslip*, 499 U.S. 1, 23 (1991) on the same grounds.  *Lafferty* v. *Jones*, 2022 WL 18110184, at *10 (Conn. Super. Ct. Nov. 10, 2022).

dismissed their negligence claim." (Opp. ¶ 91.) But Jones *consented* to that amendment (DN 988), and cannot seek to profit by it now. *Miller* v. *Lewis*, 391 B.R. 380, 384 (E.D. Tex. 2008). Jones also cites no support for his proposition that this dismissal somehow "anticipated" bankruptcy, and does not dispute that the amendment was intended to "conform[] the pleadings to the proof for the hearing in damages" and "simplif[y] the pleadings by providing a single, uniform complaint." (DN 988.)

## VI.    Even if the Damages Findings, Verdict, and Default Were Not Preclusive, The Record from the Connecticut Action Independently Confirms Willful and Malicious Injury

For the reasons discussed above, Jones is collaterally estopped from relitigating willful and malicious injury. But even if collateral estoppel did not apply due to some perceived ambiguity in the Connecticut court's findings (none exist), the Connecticut record independently and overwhelmingly confirms that Jones's conduct satisfies both the objective and subjective prongs of Section 523(a)(6). Jones does not dispute that this Court "can look beyond the [state court] judgment and [jury] instructions to see if the evidence produced in the state-court proceedings support a finding of intent" under Section 523(a)(6). *In re Mahadevan*, 617 F. Supp. 3d 654, 665 (S.D. Tex. 2022); (quotations omitted); Br. 30–32.

The Connecticut record clearly supports the Connecticut court's conclusion that Jones's conduct was "certain to cause harm" to Plaintiffs, thus satisfying the objective prong. Jones's brief does not dispute the evidence Plaintiffs cite that Jones (i) carefully built an infrastructure designed to spread his content as far as possible, (ii) conditioned his massive audience to believe that he— and only he—would tell them the truth, (iii) disseminated lies to drive spikes in viewership, audience engagement and sales, and (iv) targeted Plaintiffs at the lowest and most vulnerable moment of their lives. (Br. 32–36.) Jones does not distinguish *any* of Plaintiffs' cases in which courts held that far less egregious conduct satisfied the objective certainty prong. (Br. 35–36.)

Nor does Jones meaningfully dispute the evidence supporting the Connecticut court's finding that Jones's conduct was "intentional and malicious," satisfying the subjective prong of Section 523(a)(6), including that Jones continued to spread his lies *after* a Sandy Hook parent told Jones's company that "[a]ccusing [Plaintiffs] of being actors" caused them "pain and suffering," and *after* the Connecticut State Attorney General published an exhaustive report of the Sandy Hook shooting refuting the lies.  (Br. § 36.)  Once more, Jones does not distinguish *any* of Plaintiffs' cases.  (Br. 38.)  Incredibly, Jones's self-serving and inadmissible Declaration *supports* Plaintiffs' argument:  Jones states that he no longer believed his Sandy Hook lies by July 2015, Dkt. 61-1 ¶ 14, but concedes that *after that date* he continued telling his audience that the "official story of Sandy Hook has more holes in it than Swiss cheese," the shooting was "phony as a three-dollar bill," and the Sandy Hook Families were "actors" whose grief was not "real."  (23-ap-3035, Dkt. 33 ¶¶ 15, 18.)

Rather than engage with Plaintiffs' arguments, Jones insists again that "summary judgment is generally ill-suited for resolving cases involving allegations of intent."  (Opp. ¶ 95.)  But this court is not assessing "allegations" of intent, but five years' worth of evidence and court opinions demonstrating Jones's intent.  *Supra* § 2.

Jones also cherry-picks a small number of statements and purports to explain why each, in isolation, "runs counter to 'willful and malicious injury.'" (Opp. ¶¶ 95–98.)  For example, Jones claims that he did not "originate the story that Sandy Hook was a staged CIA conspiracy." (Opp. ¶ 97.)  Jones fails to mention the record evidence that, just hours after the shooting, Jones published headlines saying that according to "witnesses," the shooting was a "false flag." (SUMF ¶ 62.)  And Jones does not dispute that the record establishes his lies reached a minimum of 550 million impressions on social media alone, that Infowars.com broadcast to an audience of

tens of millions each month, or that he systematically posted his content to YouTube, Twitter, and Facebook through multiple accounts.  (Br. 32–36.)

Citing nothing from the record, Jones argues that he did not "report[] as solid fact that this was a government conspiracy," but instead merely asked "open question[s]" and expressed "Sandy Hook skepticism."  (Opp. ¶¶ 96, 101.)  The record belies his contentions.  Jones repeatedly told his millions of listeners that the Sandy Hook shooting was "fake," a "fraud," and that Plaintiffs were "actors" who were "go[ing] after our guns."  (Br. 5–6, 34.)  He mocked the families for grieving and told his audience to "investigate" them.  (Br. 5–6, 18, 26.)  These facts go far beyond asking "questions" and expressing "skepticism," and support that Jones's conduct was "intentional and malicious, and certain to cause harm" to Plaintiffs.  Jones's contentions also flatly contradict his position in his Connecticut appeal, where he does not characterize his statements as "skepticism": "Immediately after the mass shooting at the Newtown Elementary School was reported on national news, Alex Jones . . . took to the airwaves to decry the shooting as a hoax. He told his viewers and listeners that the event was staged, that the children were not, in fact, dead, and that grieving parents were 'crisis actors.'" App. Br. at 8.

## **CONCLUSION**

Plaintiffs respectfully request that this Court grant their motion for summary judgment.

Dated: July 14, 2023

**CAIN & SKARNULIS PLLC**
By: */s/ Ryan E. Chapple*
Ryan E. Chapple
State Bar No. 24036354
303 Colorado Street, Suite 2850
Austin, Texas  78701
Telephone:  (512) 477-5000
Fax:  (512) 477-5011

*Counsel to the Sandy Hook Families*

**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Kyle J. Kimpler (admitted *pro hac vice*)
Christopher Hopkins (admitted *pro hac vice*)
Daniel S. Sinnreich (admitted *pro hac vice*)
Daniel A. Negless (admitted *pro hac vice*)
Briana P. Sheridan (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Fax:  (212) 757-3990

*Counsel to the Sandy Hook Families Other*
*Than Richard M. Coan, as Chapter 7 Trustee*
*for the Estate of Erica Lafferty*

**KOSKOFF KOSKOFF & BIEDER PC**
Alinor C. Sterling (admitted *pro hac vice*)
350 Fairfield Avenue
Bridgeport, Connecticut  06604
Telephone:  (203) 336-4421

*Counsel to the Sandy Hook Families Other*
*Than Richard M. Coan, as Chapter 7 Trustee*
*for the Estate of Erica Lafferty*

**ZEISLER & ZEISLER, PC**
Eric Henzy (admitted *pro hac vice*)
10 Middle Street, 15th Floor
Bridgeport, Connecticut  06604
Telephone:  (203) 368-5495

*Counsel to Richard M. Coan, as Chapter 7*
*Trustee for the Estate of Erica Lafferty*

### CERTIFICATE OF WORD COUNT

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 6,493 words.

Dated: July 14, 2023

By:     */s/ Ryan E. Chapple*
        Ryan E. Chapple

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing instrument was filed and served on all persons entitled to receive notice via operation of this Court's CM/ECF system on July 14, 2023.

*/s/ Ryan E. Chapple*
Ryan E. Chapple