# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

|  |  |
|---|---|
| In re <br><br> Alexander E. Jones, <br><br>      Debtor, | Bankruptcy <br> Case No. 22-33553 (CML) <br><br> Chapter 7 |
| David Wheeler, Francine Wheeler, Jacqueline Barden, Mark Barden, Nicole Hockley, Ian Hockley, Jennifer Hensel, Donna Soto, Carlee Soto Parisi, Carlos M. Soto, Jillian Soto-Marino, William Aldenberg, William Sherlach, Robert Parker, and Erica Ash, <br><br>      Plaintiffs, <br><br>   v. <br><br> Alexander E. Jones and Free Speech Systems, LLC, <br><br>      Defendants. | Adv. Pro. No.: 23-03037 (CML) |

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION OF THE OCTOBER 19, 2023 ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................................. 2

ARGUMENT...................................................................................................................... 5

CONCLUSION................................................................................................................... 9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Abbo*,
  168 F.3d 930 (6th Cir. 1999) ................................................................7

*Austin* v. *Kroger Texas, L.P.*,
  864 F.3d 326 (5th Cir. 2017) ................................................................6

*Cohen* v. *de la Cruz*,
  523 U.S. 213, 215, 220–21, 223 (1998)................................................6

*Gober* v. *Terra + Corp.* (*In re Gober*),
  100 F.3d 1195, 1208 (5th Cir. 1996) ................................................6, 8, 9

*Guardian Alarm Servs. Inc.* v. *Rossman (In re Rossman)*,
  2019 WL 3330781 (Bankr. D. Conn. July 24, 2019)................................8

*Hagan* v. *McNallen* (*In re McNallen*),
  62 F.3d 619 (4th Cir. 1995) ................................................................7

*Johnson* v. *Miera (In re Miera)*,
  926 F.2d 741 (8th Cir. 1991) ................................................................8

*Norton* v. *Dean (In re Dean)*,
  79 B.R. 659 (Bankr. N.D. Tex. 1987)................................................9

*Plains Seafood, Inc.* v. *Thomason (In re Thomason)*,
  2018 WL 4354376 (Bankr. N.D. Tex. Sept. 11, 2018)................................7

*Puga* v. *About Tyme Transp., Inc.*,
  2017 WL 6049244 (S.D. Tex. Feb. 21, 2017) ................................................5

*S & S Food Corp.* v. *Sherali (In re Sherali)*,
  490 B.R. 104 (Bankr. N.D. Tex. 2013)................................................7

*In re Scarborough*,
  171 F.3d 638 (8th Cir. 1999) ................................................................7

*St. Laurent* v. *Ambrose* (*In re St. Laurent*),
  991 F.2d 672 (11th Cir. 1993) ................................................................8

*Stanley* v. *Cole (In re Cole)*,
  136 B.R. 453 (Bankr. N.D. Tex. 1992)................................................9

*Stokes* v. *Ferris*,
    150 B.R. 388 (W.D. Tex. 1992)......................................................................7

*Wilson* v. *Ramirez (In re Ramirez)*,
    2012 WL 5360963 (Bankr. S.D. Tex. Oct. 31, 2012)...............................7

*Wise* v. *Peterson (In re Peterson)*,
    452 B.R. 203 (Bankr. S.D. Tex. 2011) .....................................................7

**Statutes**

Connecticut Unfair Trade Practices Act ............................................ *passim*

**Other Authorities**

Bankruptcy Rule 7054 ....................................................................................5

Federal Rule of Civil Procedure 54(b)......................................................1, 5

## PRELIMINARY STATEMENT

Plaintiffs respectfully move for reconsideration under Federal Rule of Civil Procedure 54(b) of this Court's October 19, 2023 *Memorandum Decision on Connecticut Plaintiffs' Motion for Summary Judgment Against Jones* (Dkt. 76, the "Order").  While the Court properly granted summary judgment and found that the Connecticut Judgment's[1] awards of compensatory damages and punitive damages under the Connecticut Unfair Trade Practices Act ("CUTPA") are nondischargeable, Plaintiffs request that the Court reconsider its denial of summary judgment as to the common law punitive damages claim, the only remaining issue in the case.  Since this Court's decision, when requesting leave to appeal the Order, Jones admitted that ***all*** of the damages are "inextricably intertwined" and there is "no legal principle" and "no reason" to treat common law punitive damages differently.  Perhaps mindful of this admission, in its decision denying Jones leave to appeal, the District Court referenced the different result reached by this Court on the common law punitive damages claim, and stated that this Court would be "well-served to hear and address those issues before it proceeds to trial and final resolution."  Plaintiffs respectfully submit that this Court should reconsider its prior Order and grant summary judgment in their favor as to the nondischargeability of the common law punitive damages assessment of $321 million.  This Court has already held that the compensatory and CUTPA punitive damages arose from a willful and malicious injury, and as Jones's admissions highlight, and the undisputed record confirms, the common law punitive damages arose from that same injury and so are necessarily also nondischargeable.

---

[1]   Terms not otherwise defined have the meaning ascribed to them in the Decision as well as in the Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (Dkt. 60, "Pls. Br.").

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs do not recite all the facts that have brought the parties to the current posture, with which the Court is very familiar.  *See* Order at 1–6; Dkt. 60 at 4–15.  As judgment creditors of Jones for a $1.4 billion judgment in Connecticut state court arising from Jones' campaign of harassment and lies after the 2012 Sandy Hook shooting, Plaintiffs filed an adversary complaint and motion for summary judgment seeking a ruling that the Connecticut Judgment was not dischargeable under Section 523(a)(6) because it was a debt for willful and malicious injury by the debtor.  Dkts. 1, 57, 60.  On October 19, 2023, this Court issued the Order granting Plaintiffs summary judgment as to the nondischargeability of the amounts awarded for compensatory damages and CUTPA punitive damages ($1.115 billion), but denying the motion as to common law punitive damages ($321 million).  Dkt. 76.

The parties waited for the outcome of Jones's motion for leave to pursue an interlocutory appeal (which was denied on June 18, 2024) in order to determine next steps with respect to litigating the common law punitive damages claim.  As set forth herein, Plaintiffs now submit that, rather than proceed to discovery and trial on the nondischargeability of the common law punitive damages claim, the Court should reconsider its prior Order and grant summary judgment to Plaintiffs on that claim.

In the Order, in granting summary judgment as to compensatory and CUTPA punitive damages, the Court held that Jones' admission of the truth of the allegations in Plaintiffs' Connecticut complaint—which resulted from Jones's default in the Connecticut case—necessarily determined that Jones caused willful and malicious injury:

> The Plaintiffs' complaints contain multiple well pleaded allegations about Jones's intent to cause the Plaintiffs harm or substantial certainty that Jones's actions would cause harm, all of which are deemed admitted as a result of the default judgment. They, along with the jury award, also constitute fully and fairly adjudicated issues (and actually decided ones) for purposes of collateral estoppel.

Order at 10.  This determination was also "necessary to the judgment":

> [T]here are specific findings about an objective certainty of harm and a subjective motive to cause harm in connection with the defamation and intentional infliction of emotional distress claims. These are findings about a deliberate and intentional act meant to cause injury, not just a deliberate act that leads to injury . . . [T]he damages for defamation and intentional infliction of emotional distress were necessarily awarded based on the finding that Jones intended to harm the Plaintiffs.

Order at 14.

Similarly, in finding that the CUTPA punitive damages were awarded for a willful and malicious injury, the Court held that the Connecticut court "considered the degree of blameworthiness the most important consideration and found that Jones's actions were intentional and malicious, and awarded punitive damages based on these findings.  The state court did not base any of the CUTPA punitive damages on recklessness[.]"  Order at 16.  The Court highlighted the specific factual findings made by the Connecticut court, including that:

> The record clearly supports the plaintiffs' argument that *the defendants' conduct was intentional and malicious*, and *certain to cause harm* by virtue of their infrastructure, ability to spread content, and massive audience including the "infowarriors."  The record also establishes that the defendants repeated the conduct and attacks on the plaintiffs for nearly a decade, including during the trial, wanton, malicious, and heinous conduct that caused harm to the plaintiffs.  This depravity, and cruel, persistent course of conduct by the defendants establishes *the highest degree of reprehensibility and blameworthiness*.

Order at 16 (citing Dkt. 58-2, Ex. 22 at 43–44) (emphasis in original) (internal quotations omitted).

The Court denied summary judgment as to the nondischargeability of the common law punitive damages claim, finding that the state court record did not clearly show that such damages were awarded for "willful and malicious injury."  The Court acknowledged Fifth Circuit precedent holding that "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt," and further acknowledged that "[i]t is logical to presume that the findings of willful and malicious injuries based on defamation and intentional infliction of emotional distress

were necessary to the award of common-law punitive damages." *Id.* at 17.  However, the Court reasoned that the jury charge "instructed that common-law punitive damages could be awarded if the defendants' actions were willful, wanton, or malicious.  A willful and malicious harm is based on an intent without just cause or excuse. . . . But wanton misconduct is defined as 'reckless misconduct.'" *Id.* at 16–17.

On November 2, 2023, Jones moved for leave to pursue an interlocutory appeal of this Court's Order (Dkt. 82) as well as an order based on litigation brought in Texas state court by other parents of children killed in the Sandy Hook shooting (23-03035, Dkt. 49).  In his moving brief, Jones alleged inconsistencies in the Court's Order, claiming that there were "inconsistencies within the Connecticut Order" and that the "Bankruptcy Court's reasoning in denying summary judgment on common-law punitive damages is almost impossible to square with its reasoning on granting summary judgment on compensatory damages for the defamation and IIED claims."  Dkt. 82 ¶¶ 47–48.  Jones claimed that "[h]ere, all the damages at issue are inextricably intertwined with each other."  Dkt. 82 ¶ 55.[2]  Plaintiffs opposed Jones's motion to appeal this Court's Order, but in the alternative, sought leave to cross-appeal the portion of the Court's Order denying summary judgment on their common law punitive damages claim.  4:23-cv-4240, Dkt. 10.

The District Court for the Southern District of Texas held oral argument on June 18, 2024. *See* Ex. A, Tr. of Mot. Hr'g ("Hr'g Tr."), Nos. 4:23-cv-04238 and 4:23-cv-04240 (S.D. Tex.).  At the argument, Jones's counsel also made clear that all the damages should rise and fall together:

> There is no legal principle for why the Bankruptcy Court could have relied on the allegations in the complaint for the claims of defamation and IIED but could not have done the same for the common law punitives.  Hr'g Tr. 19:20–23.

---

[2]    In contrast, Jones previously argued that even if the judgments for IIED or defamation were based on willful or malicious injury, "a finding of willful or malicious misconduct is not needed for the Connecticut Damages Order" regarding punitive damages.  Opp. ¶ 42.

> [I]f the Bankruptcy Court really did rely on the allegations from the complaint and the CUTPA order . . . there's no reason why it couldn't have done so in the common law, punitive damages as well. *Id.* 64:4–9.

The District Court held that the requirements for interlocutory appeal were not met and denied Jones's motion later the same day. 4:23-cv-04240, Dkt. 27. However, the District Court observed at oral argument that both parties believed there to be inconsistencies in the Court's Order between its findings on CUTPA and common law punitive damages, and asked whether the parties would seek reconsideration of this Court's Order. Hr'g Tr. 47:2–6 ("[T]he internal inconsistency though that you're referring to, is that something that you all are just going to leave to one side and go forward as is under the opinion or are you going to seek clarification of it? Are you going to seek reconsideration of it?"). The District Court also noted in its order denying Jones's motion:

> [T]he parties both note what they perceive as potential internal inconsistencies in the Bankruptcy Court's order in the Connecticut case between its rulings as to common-law and CUTPA punitive damages. *Compare* No. 4:23-cv-04240, Dkt 2 at 50–51, with *id*. at 51–52. They also note potential inconsistencies between the orders in the Texas and Connecticut cases as to intentional infliction of emotional distress. *Compare* No. 4:23-cv-04238, Dkt 2 at 48–50, *with* No. 4:23-cv-04240, Dkt 2 at 48–50. The parties indicate that they may raise these issues for further consideration by the Bankruptcy Court as proceedings there continue. The Bankruptcy Court may be well-served to hear and address those issues before it proceeds to trial and final resolution.

4:23-cv-04240, Dkt. 27 at 5–6.

The parties have subsequently conferred and remain unable to mutually resolve the pending common law punitive damages claim that remains at issue in this adversary proceeding.

## **ARGUMENT**

Under Federal Rule of Civil Procedure 54(b) and Bankruptcy Rule 7054, this Court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Puga* v. *About Tyme Transp., Inc.*, 2017 WL 6049244, at *1 (S.D. Tex. Feb. 21, 2017) (quoting *Melancon* v. *Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)).

The Court has complete discretion "to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Austin* v. *Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (quoting *Lavespere* v. *Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).  The Court's discretion is "not cabined by the heightened standards for reconsideration governing final orders." *Id.* at 337 (internal quotations and citations omitted).

This Court has already held in its Order that Jones inflicted a willful and malicious injury on Plaintiffs.  As Jones has now effectively conceded, that holding should be conclusive of ***all*** of Plaintiffs' claims, because all debts arising from a willful and malicious injury are nondischargeable.

In *Cohen* v. *de la Cruz*, the Supreme Court, in addressing the nondischargeability of "any debt . . . for money, property, services, or . . . credit" obtained by fraud under Section 523(a)(2)(A), concluded that the phrase "debt for" is "best read to prohibit the discharge of any liability arising from" fraud, including associated treble damages and attorneys' fees.  523 U.S. 213, 215, 220–21, 223 (1998); *see also id.* at 218 ("Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom is excepted from discharge.").  The Supreme Court even cited Section 523(a)(6), the provision at issue here, which states that a "debt . . . for willful and malicious injury" is nondischargeable, as an example of a provision that "mean[t] 'debt as a result of,' 'debt with respect to,' 'debt by reason of,' and the like,' connoting broadly any liability arising from the specified object."  *Id.* at 220 (citations omitted).

Accordingly, once a debtor has been found to have inflicted a willful and malicious injury—as Jones has—any liability "broadly . . . arising" from that injury is nondischargeable. *See, e.g.*, *Gober* v. *Terra + Corp.* (*In re Gober*), 100 F.3d 1195, 1208 (5th Cir. 1996) ("When the

primary debt is nondischargeable due to willful and malicious conduct, the attorney's fees and interest accompanying compensatory damages . . . are likewise nondischargeable."); *Plains Seafood, Inc.* v. *Thomason (In re Thomason)*, 2018 WL 4354376, at *3 (Bankr. N.D. Tex. Sept. 11, 2018) (finding the entirety of a debt nondischargeable under § 523(a)(6) and noting that "the nature of the primary debt determines whether ancillary debts–punitive damages, attorney's fees, court costs, and interest–are nondischargeable under Section 523"); *Stokes* v. *Ferris*, 150 B.R. 388, 390, 393 (W.D. Tex. 1992), ("[A]ll debts, including statutory damages and legal fees, which flow from the debtor's willful and malicious conduct are nondischargeable."), *aff'd*, 995 F.2d 76 (5th Cir. 1993); *S & S Food Corp.* v. *Sherali (In re Sherali)*, 490 B.R. 104, 125 (Bankr. N.D. Tex. 2013) (finding attorney's fees and exemplary damages non-dischargeable); *Wilson* v. *Ramirez (In re Ramirez)*, 2012 WL 5360963, at *9 (Bankr. S.D. Tex. Oct. 31, 2012) ("If the Court awards exemplary damages at trial, they are not dischargeable."); *Wise* v. *Peterson (In re Peterson)*, 452 B.R. 203, 240 & n.38 (Bankr. S.D. Tex. 2011) (finding punitive damages and pre- and post-judgment interest not dischargeable).

Courts in other jurisdictions also agree.  *See, e.g.*, *In re Scarborough*, 171 F.3d 638, 644 (8th Cir. 1999) ("[W]here the compensatory and punitive damage awards are based on the same underlying conduct, and the judgment for compensatory damages is nondischargeable because it is based on willful and malicious injury to another, then the punitive damages award is likewise nondischargeable."); *In re Abbo*, 168 F.3d 930, 931 (6th Cir. 1999) (holding that punitive damages judgment was nondischargeable because "punitive damages are best understood as arising from the conduct redressed by the underlying judgment"); *Hagan* v. *McNallen* (*In re McNallen)*, 62 F.3d 619, 627 (4th Cir. 1995) ("Here, the conduct giving rise to the award of punitive damages sprang from the same conduct giving rise to compensatory damages and applying [prior cases],

we conclude that the award of punitive damages is not dischargeable."); *St. Laurent* v. *Ambrose* (*In re St. Laurent*), 991 F.2d 672, 679 (11th Cir. 1993) (quoting *TranSouth Fin. Corp.* v. *Johnson*, 931 F.2d 1505, 1507 (11th Cir. 1991)) ("[I]f a creditor is able to establish the requisite elements of Section 523, the creditor is entitled to collect the 'whole of any debt' he is owed by the debtor."); *Johnson* v. *Miera (In re Miera)*, 926 F.2d 741, 745 (8th Cir. 1991) ("We conclude that Miera should not be allowed to discharge the punitive portion of the judgment against him in bankruptcy in light of the fact that both the punitive damage award and the compensatory damage award stemmed from the same willful and malicious injury."); *Guardian Alarm Servs. Inc.* v. *Rossman (In re Rossman)*, 2019 WL 3330781, at *5 (Bankr. D. Conn. July 24, 2019) (applying Connecticut collateral estoppel principles and finding that a determination that a certain course of conduct is nondischargeable renders all claims "based on the same facts . . . likewise nondischargeable").

In its Order, the Court correctly acknowledged these principles, observing that:

> There are bankruptcy cases holding that punitive damages should be found nondischargeable based on findings of willful and malicious injury when the compensatory damages and punitive damages flow from the same conduct. *See, e.g.*, *Macris* v. *Saxton (In re Saxton)*, No. 10-44412, 2011 WL 2293320, at *8 (Bankr. N.D. Tex. June 8, 2011). In *Gober*, the Fifth Circuit held that "the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt. When the primary debt is nondischargeable due to willful and malicious conduct, the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober*, 100 F.3d at 1208.

Order at 17.

We respectfully submit that this is the beginning and the end of the analysis. The common law punitive damages—which under Connecticut law, are "the expense of litigation (attorneys' fees and costs) less taxable costs," *id.* at 16—are nondischargeable precisely because they flow from the same injury and course of conduct as the compensatory damages award.

8

In its Order, however, the Court went on to decline to hold the common law punitive damages nondischargeable because "the jury had a right to award common-law punitive damages based on reckless actions . . . ." *Id.* at 17. Nondischargeability here, however, is *not* controlled by the jury's views on the "willful, wanton, or malicious" instruction when it awarded common law punitive damages. Instead, the nondischargeability analysis is solely focused on the nature of Jones' conduct and resulting injury. No separate jury verdict on common law punitive damages is necessary to establish the relevant injury willful and malicious—the Court's findings on compensatory damages and CUTPA punitive damages already do. Indeed, the point of *Gober* and similar cases is that "ancillary damages" *need not* be independently shown to be nondischargeable—"When the primary debt is nondischargeable due to willful and malicious conduct, the attorney's fees and interest accompanying compensatory damages, including post-judgment interest, are likewise nondischargeable." *Gober*, 100 F.3d at 1208; *e.g.*, *Stanley* v. *Cole (In re Cole)*, 136 B.R. 453, 459 (Bankr. N.D. Tex. 1992) (finding exemplary damages nondischargeable based on the "willful and malicious" actions of debtor, despite jury finding that exemplary damages were based on "wanton or reckless" actions); *Norton* v. *Dean (In re Dean)*, 79 B.R. 659, 663 (Bankr. N.D. Tex. 1987) (finding exemplary damage award based on "reckless disregard" conduct nondischargeable, as debtor's conduct underlying primary debt was "willful and malicious"). The Court should therefore grant summary judgment on the common law punitive damages award just as it did on the compensatory and CUTPA punitive damages awards.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court reconsider its Order to grant summary judgment as to common law punitive damages.

Dated:  New York, New York
        September 16, 2024

**CAIN & SKARNULIS PLLC**                              **KOSKOFF KOSKOFF &**
By: */s/ Ryan E. Chapple*                              **BIEDER PC**
Ryan E. Chapple                                        Alinor C. Sterling
State Bar No. 24036354                                 350 Fairfield Avenue
303 Colorado Street, Suite 2850                        Bridgeport, Connecticut  06604
Austin, Texas  78701                                   Telephone:  (203) 336-4421
Telephone:  (512) 477-5000
Fax:  (512) 477-5011

*Counsel to Plaintiffs*                                *Counsel to Plaintiffs*


**PAUL, WEISS, RIFKIND,**
**WHARTON & GARRISON LLP**
Kyle J. Kimpler
Paul A. Paterson
Daniel A. Negless
Vida Robinson
1285 Avenue of the Americas
New York, New York  10019-6064
Telephone:  (212) 373-3000
Fax:  (212) 757-3990

*Counsel to Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was filed and served on all persons entitled to receive notice via operation of this Court's CM/ECF system on September 16, 2024.

*/s/ Ryan E. Chapple*_____
Ryan E. Chapple

## <u>CERTIFICATE OF WORD COUNT</u>

This document complies with the type-volume limit of Fed. R. Bankr. P. 8015(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 3,048 words.

Dated: September 16, 2024

By: */s/ Ryan E. Chapple*
    Ryan E. Chapple